# TABLE OF CONTENTS

**PAGE NO.**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

POINT I

AS THE INDEMNIFICATION CLAUSE IN
SEPTA'S CONTRACT WITH KRAPFS
IS UNENFORCEABLE ,SUMMARY JUDGMENT
IN FAVOR OF KRAPFS MUST BE GRANTED . . . . . . . . . . . .    6

A.    STANDARDS FOR SUMMARY JUDGMENT . . . . . . . .    6

B.    IN DECIDING WHETHER KRAPFS IS
       ENTITLED TO JUDGMENT, AS A MATTER
       OF LAW, PENNSYLVANIA LAW IS
       CONTROLLING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

C.    AS ENFORCEMENT OF THE
       INDEMNIFICATION CLAUSE WOULD
       BE CONTRARY TO PUBLIC POLICY,
       SUMMARY JUDGMENT MUST BE GRANTED . . . . . .    8

       1.    It Is Well Established That Acts Contrary
              To Public Policy Preclude Indemnification . . . .    8

       2.    The Conduct For Which Indemnity Is
              Sought Herein Is Inimical To The
              Public Good As It Is Contrary To
              Defined, Dominant and
              Unambiguous Expressions Of Law . . . . . . . . . .    10

              a.    Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

              b.    Pennsylvania Criminal History Record
                     Information Act (PCHRIA) . . . . . . . . . . .    11

              c.    State and Federal Equal Protection Clause    12

       3.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

PAGE NO.

D.    AS A MATTER OF LAW, THE INDEMNIFICATION
      CLAUSE BETWEEN KRAPFS AND SEPTA DOES
      NOT SATISFY STANDARDS FOR ENFORCEABILITY . . . . .  14

      1.    Indemnification Clauses Which Lack Requisite
            Specificity Will Not Be Enforced For An
            Indemnitee's Negligent or Intentional Acts . . . . . . . .  14

      2.    SEPTA's TPC Seeks Indemnification For
            SEPTA's Intentional Act. . . . . . . . . . . . . . . . . . . . . . . .  16

      3.    The Indemnification Clause Does Not Meet
            Standards For Enforcement As To The Intentional
            Acts of SEPTA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

            a.    The indemnification clause contains no
                  express language regarding intentional acts    17

            b.    The indemnification clause manifests no
                  intent of the parties to indemnify SEPTA
                  for its intentional acts . . . . . . . . . . . . . . . . . .  18

            c.    An adverse inference should be drawn
                  against SEPTA as drafter of the
                  indemnification clause. . . . . . . . . . . . . . . . . .  18

      4.    Unless Summary Judgment Is Granted,
            Indemnitee Will, Contrary To Law, Benefit
            From Its Own Wrongdoing . . . . . . . . . . . . . . . . . . . .  19

      5.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE  NO.**

Adams v. U.S. EEOC,
932 F. Supp 660 (E.D. Pa. 1996). . . . . . . . . . . . . . . . . . . . . . . . .    11

CISCO v. United Parcel Services, Inc.,
328 Pa. Super. 300, 307 (1984). . . . . . . . . . . . . . . . . . . . . . . . . .    12

Esmond v. Yonkers,
209 Pa. Super 200, 210 (1967). . . . . . . . . . . . . . . . . . . . . . . . . .    13

Garrett v. Mobil Oil Corp.
395 F. Supp 117 (D.C. Mo 1975) aff'd 531 F. 2d 892,
cert denied 429 US 848. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Griggs v. Duke Power Co.,
401 U.S. 424 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Hunter v. Port Authority of Allegheny County
277 Pa. Super 4 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12,13

Koontz v. East Hopewell Junction,
44 Pa D. & C. 2d 589, 571-72 (1968). . . . . . . . . . . . . . . . . . . . . .    14,18

Kraus v. Allstate Insurance,
379 F.2d. 443, 446 (3rd Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . .    13,19

Mahon, M.D. v. City of Bethlehem,
902 F. Supp. 76, 78 (E.D. PA., 1995) . . . . . . . . . . . . . . . . . . . . . .    7,14,15,17,18

McDonough v. United States Fire Insurance Company
1992 WL 70623 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6,20

Stamford Board of Education v. Stamford Education
Association,
697 F. 2d 70, 73 (2nd Cir., 1982) . . . . . . . . . . . . . . . . . . . . . . . . .    11,20

Teti v. Huron Insurance Company
914 F. Supp 1132 (E.D. Pa, 1996) . . . . . . . . . . . . . . . . . . . . . . . .    6,10

**PAGE NO.**

Warren City Lines, Inc. v. Limited Refining Company
220 Pa. Super. 30B (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,13,14,18,19

**STATUTES**

Federal Rules of Civil Procedure §56(c) . . . . . . . . . . . . . . . . . .     6

Pennsylvania Criminal History Record Information Act,
18 Pa. C.S.A. §9125. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

DOUGLAS EL,                                  :

               Plaintiff,

                          :       CIVIL ACTION

     v.

                          :       No. 02CV3591

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,     :

         Defendant and                 :
         Third Party Plaintiff,

                          :

     vs.

                          :

King Paratransit Service, Inc., et al.

                          :

         Third Party Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF KRAPFS' CPS, INC.
MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

      The Third Party Defendant, Krapfs, CPS, Inc., ("Krapfs"), by its attorneys,

Kaufman, Schneider & Bianco, LLP moves for Summary Judgment dismissing

the Third Party Complaint  ("TPC").  The Southeast Pennsylvania Transportation

Authority ("SEPTA") cannot avoid responsibility for acts that it required be

done.  It cannot be indemnified for its own acts, where those acts purport to

violate Title VII, PCHRIA[1]/, and the Pennsylvania and United States

Constitutions.

---

[1] /      Pennsylvania Criminal History Record Information Act, 18 Pa. C.S.A. §9125.

SEPTA brought the instant third party complaint based upon an indemnification clause in the subcontract between SEPTA and Krapfs (as well as all other third party defendants).  The very basis of the underlying First Amended Class Action Complaint (hereafter "Complaint"), however, is a provision required by SEPTA; to wit, Krapfs' agreement to refrain from hiring any driver who had been previously convicted of a violent felony or a felony involving moral turpitude.[2]  It is well settled, as set forth in detail below, that a party cannot indemnify itself from an act that violates a legally mandated duty or defined public policy.  The requirements of Title VII, as well as the PCHRIA and constitutional claims, constitute such a legally mandated duty, as well as defined public policy.

In its simplest form, SEPTA seeks to profit from its own wrongdoing, which it may not do.  A party may not indemnify itself from its own wrongdoing, or transfer responsibility for same, when said wrongdoing violates public safety measures enacted by the Legislature, legally mandated duties or defined public policies relating to health, safety, morals or welfare (The requirements of Title VII meet each of the above).

In addition, it is well settled that a party may not indemnify itself against its own act, unless said indemnification sets forth the specific act in question.

---

[2]    Krapfs does not agree with the Plaintiff's contention that such a provision violates Title VII due to an alleged disparate impact upon certain groups of people.  Krapfs could only be liable for indemnification, however, if the Court accepted the Plaintiff's position.  If that were the case, then SEPTA, by the third party complaint would be seeking to indemnify itself from causing Krapfs to purportedly violate Title VII, PCHRIA etc.

Here, SEPTA impermissibly relies upon a general indemnification clause to protect itself from its own act.

Based upon the above, the subject third party complaint should be dismissed in its entirety.

### STATEMENT OF FACTS

Via the First Amended Class Action Complaint dated November 13, 2002, Douglas El ("El") avers that SEPTA imposed an illegal employment policy on all its paratransit service providers, prohibiting the hiring or continued employment of any person with any felony or misdemeanor conviction.

The Complaint further alleges that SEPTA imposed the aforesaid uniform employment policy on all its paratransit providers pursuant to contract with those providers.

On December 9, 2002, SEPTA filed its "Answer And Affirmative Defenses To Plaintiff's First Amended Class Action Complaint" ("Answer").  In its Answer SEPTA avers that it provides paratransit services by contracting with outside providers and that each provider is "bound" by a contract with SEPTA (Answer, paragraph 2).   According to SEPTA those contracts all contain job related qualifications which require "that an employee… or … applicant for the position of paratransit driver, have:

> "No record of driving under the influence (DUI) of alcohol or drugs, and no record of any felony or misdemeanor conviction for any crime of moral turpitude or of violence against

any person(s); " (Answer, paragraph 2) See also Answer paragraphs 17, 18, 19 & 20).

On December 23, 2002 SEPTA filed a Third Party Complaint against a number of Third Party Defendants, including Krapfs, alleging that the third party defendants were paratransit service providers under contract with SEPTA. (TPC paragraphs 6 & 7)  The TPC further avers that each contract between SEPTA and third party defendants had indemnity clauses which held SEPTA harmless, *inter alia*, "from and against any and all loss, cost, damage, liability claims, suits and expense arising out of any claim of any kind or nature whatsoever" (TPC paragraph 7).  A full copy of the indemnification clause, of which the foregoing is a portion, is exhibit C to the TPC.  SEPTA, as third party plaintiff, demands judgment against Krapfs for all sums adjudged against it.

In sum, by the TPC, SEPTA seeks to pass to others, Krapfs included, any responsibility for judgments against SEPTA.  According to SEPTA if its mandated policy were illegal, occasioning liability to EL  and others, then its service providers are liable to SEPTA pursuant to indemnity provisions of its service provider contracts.[3]/

Viewing this motion for Summary Judgment in a light most favorable to SEPTA, the limitations on employment or continued employment which SEPTA

---

[3]/    As a finding of legality would relieve third party defendants, this Court need not determine the legality of the limitations imposed by SEPTA as only if they are unlawful could third party liability ensue.  Moreover, the Court need not make factual findings regarding which version of the clause (El or SEPTA) exists as SEPTA's assertion is most favorable to it.

4

mandates in its contracts with paratransit service providers (Answer, paragraph 2) would have to be found unlawful for there to be liability of third party defendants.  In addressing this motion the Court need only determine whether, assuming illegality of the employment conditions acknowledged by SEPTA to exist, it can, as a matter of law, enforce the indemnity provisions of SEPTA's contracts with third party defendants.  Krapfs avers that it cannot.

## POINT I

## AS THE INDEMNIFICATION CLAUSE IN SEPTA'S CONTRACT WITH KRAPFS IS UNENFORCEABLE, SUMMARY JUDGMENT IN FAVOR OF KRAPFS MUST BE GRANTED

### A.    STANDARDS FOR SUMMARY JUDGMENT

Motions for Summary Judgment, pursuant to the Federal Rules of Civil Procedure §56(c), in connection with matters involving indemnification, are nothing novel to this Court.  As in all Section 56(c) motions, Summary Judgment is appropriate when, after viewing the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  McDonough v. United States Fire Insurance Company 1992 WL 70623 (E.D. Pa.), Teti v. Huron Insurance Company 914 F. Supp 1132, 1133 (E.D. Pa, 1996).

For the purpose of this motion, Krapfs agrees that its contract with SEPTA places limits on Krapfs' employment and retention of paratransit drivers; to wit, that it not engage any driver who has a record of DUI or who has a "record of any felony or misdemeanor conviction for any crime of moral turpitude or of violence against any person(s)" (Answer, paragraph 2).  Similarly, Krapfs' agrees that there is an indemnification clause in its contract with SEPTA and that the verbiage of said clause is as averred by SEPTA (TPC, paragraph 7 and Exhibit C to the TPC).  Accordingly, there are no material facts in issue.

The sole issue is whether Krapf's is entitled to judgment as a matter of law.

**B.    IN DECIDING WHETHER KRAPFS IS ENTITLED TO JUDGMENT, AS A MATTER OF LAW, PENNSYLVANIA LAW IS CONTROLLING.**

Prior to its decision in <u>Mahon, M.D. v. City of Bethlehem</u>, 902 F. Supp. 76, 78 (E.D. PA., 1995), there were no cases "addressing contracts for indemnity in the context of intentional torts or civil rights violations." The <u>Mahon</u> decision provides guidelines for this Court's consideration of the legal issues herein presented. First, Pennsylvania law is implicated <u>Id</u> at 79. Second, cases involving contracts for insurance are "sufficiently analogous to contracts for indemnification "to warrant use in the court's consideration, <u>Id</u> at 78. Similarly, the policies behind common-law rights to indemnification are appropriate for consideration. <u>Id</u>.

Moreover, to assess the enforceability of an indemnification clause the standards and rules of construction of Pennsylvania courts control. <u>Id</u> at 79.

Lastly, the <u>Mahon</u> court noted, as here, that there is no basis to distinguish civil rights cases from other types of cases in addressing the enforceability of an indemnity clause. The <u>Mahon</u> court rejected moving defendants assertion that a federal statutory claim (in that case under 42 USC 1983) has nothing to do with claims of "negligence and other intentional torts."

7

**C.    AS ENFORCEMENT OF THE INDEMNIFICATION CLAUSE WOULD BE CONTRARY TO PUBLIC POLICY, SUMMARY JUDGMENT MUST BE GRANTED**

    **1.    It Is Well Established That Acts Contrary To Public Policy Preclude Indemnification**

In <u>Warren City Lines, Inc. v. Limited Refining Company</u> 220 Pa. Super. 30B (1971) the defendant created an unacceptable risk to life by violating regulations of the state Fire Marshall intended for the protection of the public. Plaintiff a garage owner entered into an equipment loan agreement with defendant in connection with an oil and gas dispensing system. A gas explosion occurred as a result of negligence by one of defendant's repairmen. The loan agreement contained an indemnity clause in favor of defendant. On appeal the court held that summary judgment, releasing defendant from liability, was error.

Of particular importance was the court's consideration of whether the indemnity clause could exculpate the defendant for its violation of a governmental regulation. Noting that it found no material differences between violation of a regulation or statute <u>Id</u> 313, the court observed that the validity of an indemnity clause[4]/ initially requires that the clause:

> … does not contravene any policy of the law, that is, if
> it is not a matter of interest to the public or State."
> <u>Id</u> 311, 312.

Recognizing the widespread use of insurance, the court observed that the enforceability of an indemnity clause is more than just a matter of transferring

---

[4]/    The Court, footnote 1, utilized the terms "exculpatory clause" and "indemnity clause" interchangeably.

risk by contractual agreement when public health, welfare or safety is involved. <u>Id</u> 313-314. Were it otherwise the party transferring risk would have no incentive to use reasonable care.

> "This creates a particularly dangerous situation for the public where 1) the party transferring the risk is better able to prevent loss… or 2) where the party to whom the risk has been transferred does not fully realize the responsibility which it has received." <u>Id</u> 314

The Court concluded that the "defendant could not contractually relieve itself of liability for resulting… damage proximately caused thereby." <u>Id</u> 315.

For a number of reasons, the <u>Warren City</u> decision is particularly instructive herein. First, SEPTA's TPC can not, in the first instance, be viewed solely as a routine contractual indemnification matter. Rather, before contractual issues and standards for enforcement are considered, this Court must determine whether SEPTA's attempt for indemnification contravenes public policy. Second, this is not even a routine public interest case because SEPTA, the entity seeking to transfer risk, is not merely "better able to prevent loss" it has mandated the very conditions which create the public harm. In colloquial parlance, SEPTA stands before this Court like the child that murders his/her parents and then cries s/he is an orphan. Here there is no factual issue regarding whether SEPTA mandated the action for which it now seeks indemnification.

In <u>Teti v. Huron Insurance Company</u> 914 F. Supp 1132 (E.D. Pa, 1996) this Court articulated the requisite conditions for invalidating a contract for indemnification on public policy grounds. The Court observed:

> "... in order to invalidate a contract on the basis of public policy, the Court must identify in the sovereign's positive law a defined dominant, and unambiguous expression that the performance of the thing agreed to by the parties is inimical to the public good." <u>Id</u> at 1140.

The freedom of contract may be limited for the good of the community. <u>Id.</u> Indeed, in matters involving public health, safety, morals or welfare the court may and should "constitute itself the voice of the community."

### 2. <u>The Conduct For Which Indemnity Is Sought Herein Is Inimical To The Public Good As It Is Contrary To Defined, Dominant and Unambiguous Expressions Of Law.</u>

The Complaint alleges that SEPTA's limitations on hiring or retention of employees violates two statutes and both the United States and Pennsylvania constitutions. Each cause of action implicates a defined, dominant and unambiguous expression of law which, *in toto*, constitutes public policy.

### a. <u>Title VII</u>

Congress' concern in enacting Title VII, and courts interpreting and applying it, make it abundantly clear that Title VII is a defined, dominant and unambiguous expression of public policy. The U.S. Supreme Court has noted that the congressional objective in enacting Title VII is to achieve equality of employment opportunities and to remove the barriers which have operated in

the past in favor of white employees over other employees.  <u>Griggs v. Duke</u>
<u>Power Co.</u>, 401 U.S. 424 (1971).  Congress sought to assure equality of
employment opportunities by eliminating those practices and devices that
discriminate on the basis of race, color, etc.  <u>Garrett v. Mobil Oil Corp.</u> 395 F.
Supp 117 (D.C. Mo 1975) aff'd 531 F. 2d 892, cert denied 429 US 848.  This Court
succinctly noted that Title VII was designed to eradicate unlawful employment
discrimination and to provide a private remedy for said conduct.  <u>Adams v. U.S.</u>
<u>EEOC</u>, 932 F. Supp 660 (E.D. Pa. 1996).  The court in <u>Stamford Board of</u>
<u>Education v. Stamford Education Association</u>, 697 F. 2d 70, 73 (2nd Cir., 1982)
noted that Title VII reflects a "strong federal public policy against
discrimination."

As Title VII and judicial decisions on the subject manifest a defined,
dominant and unambiguous intent, Title VII must be viewed as a public policy
intended to protect, *inter alia*, public welfare by ensuring equality of employment
opportunity.

  **b.** **<u>Pennsylvania Criminal History Record Information Act</u>**
**<u>(PCHRIA).</u>**

PCHRIA §9125(b) declares:

> "Use of information.  Felony and misdemeanor
> convictions may be considered by the
> employer <u>only</u> to the extent to which they
> relate to the applicant's suitability for
> employment in the position for which he has
> applied." (emphasis added).

Aside from the obvious statutory purpose of prohibiting employment decisions based on convictions unless the decisions reflect consideration of the applicant's suitability for employment, there are but a few decisions which illuminate the underlying public policy. Given the clarity of the statute there can be no dispute that PCHRIA is a defined and unambiguous expression of legislative intent. Decisional law manifests the dominant expression of sovereign concern.

In <u>CISCO v. United Parcel Services, Inc.</u>, 328 Pa. Super. 300, 307 (1984) the Superior Court of Pennsylvania concluded that the limited circumstances in which prior convictions may be considered pursuant to PCHRIA constituted an expression of public policy. The court also noted, citing <u>Hunter v. Port Authority of Allegheny County</u> 277 Pa. Super 4 (1980), that it is "a deeply ingrained public policy of the State to avoid unwarranted stigmatization of former offenders."

In light of the foregoing, the cause of action of the Complaint, alleging SEPTA's violation of PCHRIA, implicates public policy.

**c.      State and Federal Equal Protection Clause**

The protections of the Fourteenth Amendment to the United States Constitution and Article 1, Section 1 of the Pennsylvania Constitution must be accorded, without more, the status of expressions of public policy. Lest this be

disputed, Article 1, Section 1 of the Pennsylvania Constitution has been expressly held to be an expression of public policy.[5]/

### 3.    Conclusion

SEPTA provides paratransit services by contracting with outside providers. Each provider is "bound" by contract. Several relevant provisions of provider contracts are identical. First, SEPTA requires each provider to indemnify SEPTA and the language of said indemnity clauses is the same. Second, each provider is contractually obligated to not employ or retain individuals with, *inter alia*, felony or misdemeanor convictions involving a crime of moral turpitude or of violence against any person(s).

The Complaint alleges numerous causes of action (e.g. Title VII, PCHRIA, etc.) but the common nucleus of operative facts is the same for each; to wit, that SEPTA engages in unlawful hiring and retention practices.[6]/ As each cause of action also implicates public policy, SEPTA is not, as a matter of law, entitled to enforcement of its indemnification clause with Krapfs.

---

[5]/    Both the right to be fairly considered for public employment and the avoidance of unwarranted stigmatization of former offenders were found to be public policy of the State of Pennsylvania. <u>Cisco</u> and <u>Hunter</u>, *supra*.

[6]/    That a paratransit services provider actually hires or fires is irrelevant. By mandating conditions for hiring and retention, SEPTA is responsible. An entity need not engage in the act if it encourages or directs the unlawful acts of others. <u>Warren City Lines</u>, <u>supra</u> at 315. See also, <u>Esmond v. Yonkers</u>, 209 Pa. Super 200, 210 (1967) and <u>Kraus v. Allstate Insurance</u>, 379 F.2d. 443, 446 (3rd Cir. 1967).

**D.    As A Matter Of Law, The Indemnification Clause Between Krapfs And Septa Does Not Satisfy Standards For Enforceability.**

Even if this Court did not grant Summary Judgment to Krapfs based upon public policy grounds, it would do so on other grounds.   Specifically, as indemnification clauses are not viewed with great favor by the courts, the party seeking indemnification has a heavy burden of proof.  SEPTA, as a matter of law, cannot meet that burden and the indemnification clause must be found unenforceable.

**1.    Indemnification Clauses Which Lack Requisite Specificity Will Not Be Enforced For An Indemnitee's Negligent or Intentional Acts**

Whether indemnification is sought for an indemnitee's negligence or intentional acts "words of general import are not enough."   <u>Mahon v. City of Bethlehem</u>, <u>supra</u> at 79.  In the context of the enforceability of an indemnification clause for an indemnitee's negligent actions, Pennsylvania courts impose a heavy burden on the indemnitee:

> "It is the law of Pennsylvania that a party may contract for indemnity against the results flowing from his own acts, but no inference from words of general import can establish it.   The intent of both parties must be made apparent by clear, precise and unequivocal language before the contract will be construed to indemnify against the consequences of the indemnitee's own negligence."   <u>Koontz v. East Hopewell Township</u>, 44 Pa D. & C. 2d 589, 571-72 (1968).

The court in <u>Warren City Lines, Inc.</u>, <u>supra</u> at 316 also had occasion to recite the standards for assessing the validity of indemnity clauses.   In viewing

14

indemnification as a form of immunity from liability, the Court required

significant specification stating:

> "The Supreme Court of this Commonwealth has held
> that where an exculpatory clause is valid, it still must
> meet the following standards:  (1) contracts providing
> for immunity from liability for negligence must be
> construed strictly since they are not favorites of the
> law … (2) such contracts must spell out the intention
> of the parties with the greatest of particularity … and
> show the intent to release from liability 'beyond
> doubt by express stipulation' and no inference from
> words of general import can establish it … (3) such
> contracts must be construed with every intendment
> against the party who seeks the immunity from
> liability … (4) the burden to establish immunity from
> liability is upon the party who asserts such immunity
> …"

When protection is sought against the consequences of an indemnitee's

intentional acts the burden upon the indemnitee is greater than if the acts were

negligent.  In <u>Mahon M.D. v. City of Bethlehem</u> *supra*.  Mahon was beaten by the

Bethlehem police officers at a music festival.  The festival sponsor had a lease

with the city of Bethlehem.  The lease had an indemnity clause.  When the city

was sued for the actions of its police officers, the city looked to the festival

sponsor via a third-party action.  Summary judgment was granted to the third-

party defendant.  Motion for reconsideration was denied.  The court rejected the

notion that the police officers' actions were negligent.  In so doing the court had

an opportunity to reflect the different standards for negligent versus intentional

indemnification.   Recognizing that specificity in indemnification clauses is

required before an indemnitee's negligence is covered, the court articulated a higher standard for intentional acts:

> "There is even more reason to demand specificity when the indemnitee seeks to be indemnified for his or her own intentional conduct." Id at 79.

The foregoing cases mandate that SEPTA establish that its indemnity clause with Krapfs contains specific language reflecting the parties mutual intent to indemnify SEPTA for its intentional acts. SEPTA cannot meet this burden.

### 2.    SEPTA's TPC Seeks Indemnification For SEPTA's Intentional Act.

Should this Court need to determine whether, as alleged by Krapfs, SEPTA's action[7]/constitutes an intentional act, several points are undeniable. First, SEPTA contractually required, or imposed upon, its paratransit services providers the employment policies which are the subject matter of the Complaint. Second, Krapfs could only be liable to SEPTA if the contractually required policies are found unlawful.

SEPTA's mandate to its service providers is clear, unequivocal and without exception: individuals convicted of crimes of a prescribed nature were not to be employed or retained. By its own admission, SEPTA's purpose in insisting that those convicted of certain crimes not be employed or retained was to "meet SEPTA's job related safety concerns, including the business necessity of

---

[7] / SEPTA's action is the contractual requirement that Krapf's not hire or employ individuals with, *inter alia*, felony or misdemeanor convictions involving a crime of moral turpitude or of violence against any person(s)

providing safe paratransit services to members of the disabled public who use paratransportation." (Answer, paragraph 2).  In this context SEPTA's action must be deemed intentional.

Having mandated conditions of employment to meet a stated purpose SEPTA cannot avoid the consequences of its intentional act "by careful word-choice or artful pleading." <u>Teti</u> *supra* at 1136.

### 3. The Indemnification Clause Does Not Meet Standards For Enforcement As To The Intentional Acts of SEPTA

For SEPTA to enforce its indemnification clause for its intentional acts more than words of general import are required.  The additional standards are not present and the clause may not be enforced.

### a. The indemnification clause contains no express language regarding intentional acts.

The indemnification clause herein is noteworthy for a number of reasons. First, it is lengthy.  Second, it repeatedly references negligence. Third, it is devoid of the word "intentional."

This Court cannot, as a matter of law, enforce an indemnification clause for an indemnitee's intentional acts unless the clause so specifies.  <u>Mahon v. City of Bethlehem</u> at 79.  As there is no express statement regarding the intentional acts of SEPTA, the clause lacks requisite specificity and SEPTA cannot avail itself of protection thereunder.

**b.      The indemnification clause manifests no intent of the parties to indemnify SEPTA for its intentional acts.**

For SEPTA to enforce the indemnification clause for its intentional acts it has the burden to establish immunity.  Warren City Lines, Inc. at 316.  The courts have recognized that only the words of the indemnification clause, not any other or extrinsic evidence are to be considered in determining the scope or enforceability of such a clause.  Indeed, a court's review of indemnification language is extremely limited:  "the intent of both parties must be made apparent by clear, precise and unequivocal language. . . "Koontz v. East Hopewell at 572.  The parties intention must be spelled out "with the greatest of particularity" Warren City Wines, Inc. supra at 316.

Examination of the instant indemnification clause reveals no language which particularly, clearly, precisely, unequivocally or even vaguely imposes responsibility on Krapfs for SEPTA's intentional acts.  As such there is no requisite manifestation of intent and the clause must be found unenforceable as a matter of law.

**c.      An adverse inference should be drawn against SEPTA as drafter of the indemnification clause.**

This court, in Mahon v. City of Bethlehem supra, at 79, had occasion to assess whether intentional acts were encompassed within  an indemnification clause.  The court examined the clause and as here, found no reference to intentional torts.  The court also noted, as here, that the clause contained specific

18

language regarding negligence.  In denying enforcement for intentional acts the Court noted:

> "The drafters could have included terms relating to intentional torts if they had so desired and as they did for negligent torts.  They did not and we hold that as a matter of law the clauses do not indemnify… for intentional torts" Id.

As drafter[8]/of the indemnification clause, SEPTA must bear the burden of failing to expressly address coverage for its intentional acts.  Moreover, in light of the specificity utilized in connection with negligence it must bear the adverse inference that its intentional acts were not covered.

### 4.    **Unless Summary Judgment Is Granted, Indemnitee Will, Contrary To Law, Benefit From Its Own Wrongdoing.**

In Kraus v. Allstate Insurance Company, *supra*, the insured had an automobile insurance policy with exclusions for intentional acts.  The insured dynamited his car killing himself, his wife (passenger) and a pedestrian (Kraus).  The insured's estate assigned insured's policy to Kraus' estate.   The court affirmed summary judgment in favor of the insurer noting that it is:

> "contrary to public policy to permit an insured to profit by his own wrongdoing or to encourage the commission of unlawful acts by relieving the wrongdoer of financial responsibility therefore. . . Id. At 446.

---

[8] /    By its own admission each paratransit provider is "bound" by contract (Answer paragraph 2) and each has the same indemnity clause (TPC paragraph 7).  The validity of the clause, under these circumstances, establishes that Krapfs was not a free bargaining agent and the clause is unenforceable as a contract of adhesion.  Warren City Lines at 312.

This court in <u>McDonough v. United States Fire Insurance Company</u>, *supra* observed that it is a "common law principle that a person should not profit from his own wrongdoing." <u>Id</u>.

Other courts have made it clear that less than criminal behavior may be the basis to deny indemnification to a wrongdoer if the conduct of indemnitee is "willful" or "reckless." <u>Stamford Board of Education</u>, *supra* at p. 74.

Wholly apart from SEPTA's inability to meet established standards for enforcement of an indemnification clause, due to the lack of any specific and manifested intent to be relieved for its intentional acts, this Court, must, as a matter of law reject indemnification.  SEPTA willfully, recklessly and/or intentionally imposed allegedly illegal hiring and retention policies upon Krapfs. Unless enforcement of the indemnification clause is denied, SEPTA will be relieved of the financial responsibility for the purportedly unlawful acts that it directly occasioned.  This, in itself, is violative of public policy recognized by Pennsylvania and federal courts.

**5.    <u>Conclusion</u>**

The undisputed facts establish that SEPTA contractually mandated that Krapfs adhere to certain hiring and retention policies.  When those policies were alleged unlawful, SEPTA looked to Krapfs for indemnification, pursuant to its contractual indemnity clause, via third party complaint.

Applying Pennsylvania law, the indemnification clause does not meet requisite standards for enforceability.  Additionally, this is not a routine case, as

the party seeking indemnification has willfully or intentionally encouraged or directed the acts for which indemnification is sought.  In such circumstances under Pennsylvania, and federal, common law it would be contrary to public policy to enforce an indemnification clause in favor of a wrongdoer.  The indemnification clause herein is unenforceable and, as a matter of law, Summary Judgment dismissing the TPC must be granted.

WHEREFORE, for all of the foregoing reasons, Krapfs respectfully submits that Summary Judgment be granted in favor of Krapfs.

Kaufman, Schneider & Bianco, LLP
Attorneys for Krapfs, CPS, Inc.


By_____
     Philip Voluck
     600 West Germantown Pike
     Suite 400
     Plymouth Meeting, PA 19462-1046
     (610) 940-1720

Krapfs/memooflaw.rmh:bl