IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS EL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | |
| SOUTH EASTERN PENNSYLVANIA | ) | NO. 02-3591 |
| TRANSPORTATION AUTHORITY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KING PARATRANSIT SERVICE, INC., | ) | |
| et al. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**THIRD-PARTY DEFENDANT COMMUNITY TRANSIT OF DELAWARE COUNTY, INC.
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION                                                    3

II.   FACTUAL BACKGROUND                                              4

      A.   King Paratransit Services                                  4
      Hired and Fired Plaintiff

      B.   There is No Connection Between                             4
      Plaintiff and Community Transit

      C.   Community Transit Took an Assignment of King's             5
      Agreement with SEPTA to Perform Paratransit Services

      D.   SEPTA Controls Community Transit's                         6
      Employment Decisions

III.  SUMMARY JUDGMENT STANDARD                                       7

IV.   ARGUMENT                                                        8

A.   Introduction                                          8

B.   The Indemnification Provisions At Issue              8
Do Not Provide for Indemnification for
Civil Rights Claims Against SEPTA

C.   Pennsylvania Law Construes Indemnification          11
Provisions Against Indemnification

     1.  A Lack of Specificity Within the               11
     Provisions Results in Finding Against
     Indemnification

     2.  As a Factual Matter, the Parties                12
     Did Not Intend to Require Community Transit
     To Indemnify SEPTA Against Claims Alleging
     SEPTA's Own Misconduct

     3. As a Factual Matter, the Assignment              16
     Requires Community Transit to Indemnify
     SEPTA for Community Transit's Acts Beginning
     on July 1, 2001 and Not before That Time

D.   Because Indemnity Provisions Are Not                17
     Insurance Policies, SEPTA Cannot Enforce
     Its Indemnification Language Against
     Community Transit

E.   Indemnification Would be Contrary                   18
     to Public Policy

V.   CONCLUSION                                          20

Exhibits

**Exhibit "A,"** Brandis Deposition Transcript

**Exhibit "B,"** Brandis Deposition Exhibit 2 "Assignment and
          Consent to Assignment" between King, Community
          Transit, and SEPTA"

**Exhibit "C,"** Brandis Deposition Exhibit 3 "Agreement for
Paratransit Services between King and SEPTA."

**Exhibit "D,"** Declaration of David Trout

**Exhibit "E,"** El Deposition Transcript

## I.    INTRODUCTION

Plaintiff Douglas El filed a purported class action complaint against Defendant Southeastern Pennsylvania Transportation Association ("SEPTA") on June 4, 2002 and amended his complaint on November 13, 2002.  Plaintiff claims that SEPTA's requirement, which it imposes on all of its subcontractor paratransit providers, that people who have criminal records be precluded from driving paratransit vehicles discriminates against him on the basis of his race.

On December 23, 2002, SEPTA filed a Third Party Complaint against its paratransit providers, including Third Party Defendant Community Transit of Delaware County, Inc. ("Community Transit").  SEPTA is seeking indemnification from all of its paratransit providers ("Third Party Defendants"), based on general form indemnification language in all of its subcontracts that is intended to provide SEPTA with protection against claims for wrongdoing actually committed by the subcontractors. Notwithstanding the clear intent of the indemnification language, SEPTA is claiming in this lawsuit that when the paratransit providers agreed to their subcontracts, they agreed to become the general liability insurance companies of SEPTA for all claims, including claims for misconduct under the discrimination laws committed by SEPTA alone and for claims

3

against SEPTA for conduct committed by SEPTA before the paratransit provider ever entered into its contract with SEPTA.

Community Transit has repeatedly requested SEPTA to drop its complaint against Community Transit and has advised SEPTA that its Third Party Complaint is frivolous both legally and factually.[1]

## II.  FACTUAL BACKGROUND

### A.  King Paratransit Services Hired and Fired Plaintiff

Douglas El applied to work as a driver for King Paratransit Services, Inc., ("King") in January 2000. Complaint, ¶21. King hired Plaintiff on January 17, 2000. Complaint, ¶24.  In his application, Plaintiff informed King that he had been convicted of homicide.  Complaint, ¶22.  King terminated Plaintiff's employment on January 27, 2000 because Mr. El fell "below SEPTA's General Minimum Criteria for Criminal Background." Complaint, Exhibit F.

### B.  There is No Connection Between Plaintiff and Community Transit

Plaintiff never applied to work for Community Transit. El Deposition, Exhibit "E," at pp. 197 & 201.  Community Transit never denied Plaintiff employment. El Deposition, Exhibit "E," at p. 201.  Community Transit was not performing any services

---

[1]      Community Transit's Eighth Affirmative Defense is:

SEPTA'S claims are without any factual or legal basis and violate Rule 11 of the Federal Rules of Civil Procedure.

4

for SEPTA at the time King terminated Mr. El's employment. Assignment, Exhibit "B" and Trout Declaration, Exhibit "D," ¶5.

**C. Community Transit Took an Assignment of King's Agreement with SEPTA to Perform Paratransit Services**

On July 1, 2001, (almost a year and a half **after** King terminated Mr. El's employment) Community Transit, King, and SEPTA entered into an Assignment and Consent to Assignment ("Assignment") in which King assigned to Community Transit an Agreement for Paratransit Services between King and SEPTA ("Agreement"). Brandis Deposition, Exhibit "A," at p. 21, Assignment, Exhibit "B," and Agreement, Exhibit "C." The Assignment is the only signed written agreement between SEPTA and Community Transit. Brandis Deposition, Exhibit "A," at p. 21. The Assignment was drafted by SEPTA and had to be accepted with little or no alterations. Trout Declaration, Exhibit "D," ¶9-¶10. Pursuant to the Assignment, Community Transit agreed to assume all of King's obligations and duties arising under the Agreement on and after July 1, 2003. Assignment, Exhibit "B," ¶1. The Assignment and the Agreement both contain general indemnification provisions that are intended to provide SEPTA with protection against claims caused by the paratransit provider. Assignment, Exhibit "B," ¶5 and Agreement, Exhibit "C," PMC-11 – PMC-12 (DCT 0018-0019), Trout Declaration, Exhibit "D," ¶8.

### D.    SEPTA Controls Community Transit's Employment Decisions

The Agreement between King and SEPTA was originally signed on July 1, 1999.  Agreement, Exhibit "C," at PMC-1 (DCT 0008). Under the Agreement, the paratransit provider has to comply with all of SEPTA's requirements, including its Paratransit Regulations. Agreement, Exhibit "C," at PMC-1 (DCT 0008). Included within the Agreement is general indemnification language that is intended to provide SEPTA with protection against claims caused by its subcontractors.  Agreement, Exhibit "C," at PMC-11 - PMC-12 (DCT 0018-0019).

Through the Agreement, which contains SEPTA's Staffing Requirements of the Paratransit Provider ("Requirements"), SEPTA dictates the final staffing levels and minimum qualifications of paratransit personnel.  Agreement, Exhibit "C," p. 15 of Requirements, (DCT 0062-0074).  SEPTA also specifically prohibits the employment of any paratransit driver with a record of driving under the influence, or any crime of moral turpitude or violence.  Agreement, Exhibit "C," p. 21 ¶F2.10.1(e) of Requirements (DCT 0068).  The Agreement requires Community Transit to refuse or terminate the employment of any paratransit driver who had the specified criminal record.  Agreement, Exhibit "C," PMC-1 (DCT 0008).

6

## III. SUMMARY JUDGMENT STANDARD

Upon motion of any party, summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

To survive summary judgment, SEPTA "must present affirmative evidence that it is entitled to indemnification in order to defeat a properly supported motion for summary judgment," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514 (1986), and "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." Id., 477 U.S. at 252, 106 S.Ct. at 2512.

Fed. R. Civ. P. 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2252 (1986). In opposing this motion for summary judgment, SEPTA "must point to concrete evidence in the record that supports each and every essential element of [its] case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

7

Because there is no genuine issue as to any material fact, Community Transit is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see <u>Long v. New York Life Insurance Co.</u>, 721 F.2d 118, 119 (3d Cir. 1983).

**IV.  ARGUMENT**

    **A.  Introduction**

SEPTA's sole basis for its claim against Community Transit is paragraph 5 of the Assignment and paragraph 20 of the Agreement.  Brandis Deposition at 56 and 57.  However, nothing in these provisions evidence any intent that Community Transit must indemnify SEPTA for claims arising out of SEPTA's own intentional conduct or claimed civil rights violation. Furthermore, such an interpretation would be contrary to public policy.

    **B.   The Indemnification Provisions At Issue Do Not Provide for Indemnification for Civil Rights Claims Against SEPTA**

The two provisions that purportedly form the basis for SEPTA's claims against Community Transit consist of legalese gobbledygook.  Paragraph 5 of the Assignment provides:

> 5.  <u>Indemnification</u>.  [King] shall indemnify and hold harmless SEPTA from any liability, claim or demand made against SEPTA arising out of [King's] performance of its obligations pursuant to the terms of the Agreement through the day prior to the effective date of this Assignment as defined in Paragraph 1 hereof. [Community Transit] shall indemnify and hold harmless SEPTA from any liability, claim or demand made against SEPTA arising out of [Community Transit's] performance under the terms of the Agreement, including, without limitation, any claim, demand, fine or charge of any

8

kind whatsoever that may be made or assessed against
SEPTA as a result of [Community Transit's] assumption
of obligations under the Agreement, pursuant to this
Assignment.  The rights and obligations of [King] and
[Community Transit] arising under this paragraph 5.
shall survive the expiration or early termination of
the Agreement and this Assignment.

Assignment, Exhibit "B," ¶5 (DCT 0002).  Paragraph 20 of the

underlying Agreement provides:

Indemnification.  In addition to all other obligations
of Indemnification specified herein, Contractor agrees
to be liable for and to defend, indemnify and save
harmless SEPTA, its Board Members, officers, agents,
servants, workmen, employees, subsidizers and
indemnities, the Pennsylvania Department of
Transportation, the City of Philadelphia and any and
all government funding agencies providing funds or
services in connection with this Project (hereinafter
collectively referred to as "SEPTA"), even if SEPTA is
negligent in whole or in part, from and against any
and all loss, cost, damage, liability, claims, suits
and expense, including consequential damages, counsel
fees, whether or not arising out of any claim, suit or
action at law, in equity, or otherwise, of any kind or
nature whatsoever, including but not limited to
negligence, which may be committed by or asserted
against SEPTA and/or any or all of the aforementioned
by reason of any accident, loss or damage to property
or injury, including but not limited to death, to any
person or persons, including but not limited to
employees of SEPTA, which may be sustained either
before or during the term of the Agreement, or upon or
after completion of the Project, as a result, direct
or indirect, of the performance of the Agreement by
Contractor, its officers, subcontractors of any tier
and/or their agents, servants, workmen or employees or
any other persons working on their behalf.

Contractor assumes all risk of loss, injury or damage
to its property and all risk of loss, injury or death
to its officers, agents, servants, workmen or
employees or any other persons working on their
behalf, and the officers, agents, servants, workmen or
employees of its subcontractors of any tier or any
other persons working on their behalf, and Contractor

9

expressly agrees at all times hereafter to indemnify, protect and save harmless SEPTA, its Board Members, officers, agents, servants, workmen, employees, subsidizers and indemnities, from and against any and all loss, damage, costs and expenses for claims, demands and actions therefore based on injury or damage to the person (including but not limited to death) or property of any of the aforesaid persons, whether brought directly by these persons or by anyone claiming under or through them including but not limited to heirs, dependents and estates, and whether caused in whole or in part by the negligence of SEPTA, its Board Members, officers, agents, servants, workmen, employees, subsidizers or indemnities.

Contractor, for itself and its employees, Board members, officers, agents, contractors licensees and invitees hereby releases and agrees to be liable for and to defend, indemnify and save harmless SEPTA, even if SEPTA is negligent in whole or in part, for any claims made by an employee, Board member, officer, agent workman or servant of Contractor, including claims for compensation or benefits payable to any extent by or for Contractor under any workers' or similar compensation acts or other employee benefit acts, and Contractor expressly waives its statutory protection under §303, as amended, of the Pennsylvania Workers' Compensation Act, 77 P.S. §481 (b).

Contractor shall be expressly liable for any and all injuries (including death) to persons, including, but not limited to, SEPTA's employees, Contractor's employees, or damage to property of whatever kind or nature, resulting directly or indirectly, by reason of any act or omission on the part of SEPTA, its Board members, officers, agents, indemnities, servants and/or employees, the Contractor, including its employees, agents, contractors, licensees and invitees in connection with the performance of this Project. Contractor and/or its insurer shall be solely responsible for selection of counsel and control of litigation, including any settlement of a claim.

Agreement, Exhibit "C " at PMC-11 - PMC-12 (DCT 0018-0019).

**C.   Pennsylvania Law Construes Indemnification Provisions Against Indemnification**

In Pennsylvania, the construction of an indemnity contract is a question of law for the court to decide.  _Jacobs Constructors, Inc., v. NPS Energy Services, Inc._, 264 F.3d 365, 371 (3d Cir. 2001); _citing_ _Hutchinson v. Sunbeam Coal Corp._, 519 A.2d 385, 390 (1986).  It is a well-established principle that an indemnity clause is to be construed against the party seeking indemnification.  _Jacobs_, 264 F.3d at 373.

**1.   A Lack of Specificity Within the Provisions Results in Finding Against Indemnification**

It is well settled in Pennsylvania that, to be enforceable, an indemnity agreement must be clear and unequivocal.  _Jacobs_, 264 F.3d at 371 _citing_ _Perry v. Payne_, 217 Pa. 252, 66 A. 553 (1907) and _Ruzzi v. Butler Petroleum Co._, 527 Pa. 1, 588 A.2d 1 (1991).  In order for an indemnification provision to be enforceable, the indemnity obligations must be stated plainly, in clear unequivocal language, with the expressed intention of the parties spelled out in unambiguous terms, _Jacobs_, 264 F.3d at 372 and 374, with the language narrowly construed against the party seeking indemnification.  _Jacobs_, 264 F.3d at 371 and 373, _citing_ _Brown v. Moore_, 247 F.2d 711, 722 (3d Cir. 1957).

There is nothing in either Paragraph 5 of the Assignment or Paragraph 20 of the Agreement that provides for the indemnification of SEPTA for discrimination claims caused by SEPTA's own conduct.   _See_ Assignment, Exhibit "B," ¶5 (DCT

0002); Agreement, Exhibit "C," at PMC-11 - PMC-12 (DCT 0018-0019). Furthermore, SEPTA's corporate designee on the meaning of the indemnification clauses admitted under oath that Paragraph 20 of the Agreement fails to contain such specific language. Brandis Deposition at 46.

Since neither paragraph 5 of the Assignment nor paragraph 20 of the Agreement state that Community Transit is obligated to indemnify SEPTA against its own alleged misconduct, SEPTA is not entitled to indemnification.

**2.  As a Factual Matter, the Parties Did Not Intend to Require Community Transit to Indemnify SEPTA Against Claims Alleging SEPTA's Own Misconduct.**

When interpreting indemnification clauses, the court must determine the intentions of the parties. <u>Jacobs</u>, 264 F.3d at 371 <u>citing</u> <u>Metzger v. Clifford Realty Corp.</u>, 476 A.2d 1, 4 (1984). Furthermore, if the indemnification clause is ambiguous, the court can consider the circumstances under which the contract was signed. <u>Jacobs</u>, 264 F.3d at 371 <u>citing East Crossroads Ctr.,v.</u> <u>Mellon-Stuart Co.</u>, 205 A.2d 865, 866 (1965).

Paragraph 20 of the Agreement is broken down into three subparagraphs. A review of the plain meaning of each subparagraph clearly indicates that there was no intention by the parties for indemnification of civil rights lawsuits arising out of SEPTA's own alleged misconduct.

The first subparagraph of paragraph 20 states that Community Transit will indemnify SEPTA in lawsuits arising "by

reason of any accident, loss or damage to property or injury, including but not limited to death, to any person or person . . . as a result . . . of the performance of the Agreement." This paragraph is clearly intended to cover property damage and personal injury claims arising out of the provision of paratransit services to the public. SEPTA itself has admitted that the intention of practically identical language regarding injuries to persons and damage to property within the third subparagraph of paragraph 20 exclusively covers property damage and personal injury claims. Brandis Deposition, Exhibit "A," at 46-47. As SEPTA's corporate designee testified:

> Q.        Would you agree that that paragraph [third subparagraph of paragraph 20 of the Agreement] is intended to protect SEPTA from personal injury and property damage claims?
>
> A.        I would say it includes that, yes.
>
> Q.        Would you agree with me that the intention of that paragraph is to cover exclusively property damage and personal injury claims arising out of the performance of this contract?
>
> A.        I believe so, yes.

Furthermore, the plain language of the first subparagraph makes clear that it is intended to provide SEPTA with indemnification against personal injury and property damage claims caused by Community Transit (such as when a Community Transit employee or representative physically injures another person or damages property in the course of providing paratransit

13

services), rather than civil rights lawsuits based upon discrimination claims arising out of SEPTA's own misconduct.

SEPTA's Rule 30(b)(6) representative testified that SEPTA never discussed any contention that this general personal injury and property damage language also applied to claims that SEPTA's own conduct violated the discrimination laws:

> Q.        Were there any discussions between SEPTA and Community Transit of Delaware County, Inc. to the effect that SEPTA believed that its indemnification language required Community Transit of Delaware County, Inc. to indemnify SEPTA for things that SEPTA did wrong in respect of discrimination laws, but for which Community Transit of Delaware County, Inc. played no part?
>
> A.        None that I'm aware of.

Brandis Deposition, Exhibit "A," at 24. Nor were there any side agreements or side letters that might evidence such an intent. SEPTA's representative testified:

> Q.        So the combination of Paragraph 5 of Brandis 2 and Paragraph 20 on Pages PMC-11 and PMC-12 of Brandis 3 are the sole basis for the understanding that you just testified to; is that correct?
>
> A.        Yes.
>
> Q.        There is no side agreement or side conversation with anybody at Community Transit that has given you that understanding, correct?
>
> A.        No.
>
> Q.        By no, you mean it is correct that there is no side?
>
> A.        I have no knowledge of side agreements or conversations.

14

Brandis Deposition at 57.

The second subparagraph of paragraph 20 is equally inapplicable to this case. That subparagraph provides that Community Transit assumes the risk of personal injury to its employees and damage to its own property, and that it will indemnify SEPTA if Community Transit employees bring a lawsuit against SEPTA based upon their personal injuries or damage to their property. Since Douglas El was never an employee of Community Transit, this paragraph is completely irrelevant. As the SEPTA representative testified:

> Q.      What do you mean by that answer, that SEPTA is not relying on that paragraph, the second paragraph of Paragraph 20, for the proposition that Community Transit is liable to SEPTA in this case, correct?
>
> A.      I'm not a legal expert, but I believe this is for damage to property and injury.
>
> Q.      There is nothing in this case that involves any damage to property or injury, correct?
>
> MR. HAURIN:   I object to the form.   You can answer.
>
> THE WITNESS:   Not that I'm aware of.

Brandis Deposition at 36.

Therefore, it is clear that the second subparagraph of paragraph 20 applies to personal injury and property damage claims of Community Transit employees which arise in the course of providing paratransit services, not to discrimination claims arising out of SEPTA's own misconduct.

15

The third subparagraph is also clearly inapplicable because, as SEPTA admits, the sole purpose of this paragraph is to hold SEPTA harmless against personal injury and property damage claims, rather than discrimination claims. <u>See</u> Brandis Deposition, Exhibit "A," at 46-47. That subparagraph also indemnifies SEPTA against Workers' Compensation claims brought by Community Transit employees. <u>See</u> Brandis Deposition, Exhibit "A," at 34. There is obviously no such claim in this case.

Nowhere in the Agreement's or the Assignment's indemnification clauses is there any evidence of any intent that Community Transit indemnify SEPTA against civil rights lawsuits arising out of SEPTA's own misconduct and discriminatory practices. Nor is there anything outside the four corners of the contracts that evidence such an intent.

**3.    As a Factual Matter, the Assignment Requires Community Transit to Indemnify SEPTA for Community Transit's Acts Beginning on July 1, 2001 and Not before That Time.**

Plaintiff has no claim against Community Transit, nor could he. Plaintiff never applied to work for Community Transit, and Community Transit never denied him employment. El Deposition, Exhibit "E," at 197 and 201. Furthermore, King terminated Plaintiff's employment in January 2000, <u>see</u> Complaint, while the effective date of the Assignment was July 1, 2001. Assignment, Exhibit "B."

16

The Assignment provides for the allocation of indemnification responsibility between King and Community Transit as follows:

> 1. <u>Acceptance and Effective Date</u>. Assignee [Community Transit] hereby accepts the foregoing assignment of rights and obligations under the Agreement by Assignor. Assignee hereby assumes all of Assignor's obligations and duties arising under the Agreement on and after the date hereof.

Assignment, Exhibit "B," ¶1.

In light of this language, SEPTA's claim that Community Transit should indemnify SEPTA for a lawsuit arising from King's discharge of Plaintiff (in accordance with SEPTA's Requirements) a year and a half **before** Community Transit signed the Assignment and started performing paratransit duties for SEPTA is frivolous.

**D.    Because Indemnity Provisions Are Not Insurance Policies, SEPTA Cannot Enforce Its Indemnification Language Against Community Transit.**

SEPTA's position is that pursuant to paragraph 5 of the Assignment and paragraph 20 of the Agreement, Community Transit must indemnify SEPTA for "all claims brought against SEPTA." Brandis Dep at 52. However, Pennsylvania courts have repeatedly held that provisions which require indemnification for "any and all claims" are too broad and ambiguous to include an indemnitee's own negligence or willful misconduct, and that they are not to be interpreted to cover every imaginable claim. <u>See</u> <u>Perry</u>, <u>Ruzzi</u>, <u>Britt v. May Dept. Stores Co.</u>, 1994 WL 585930, *2

(E.D. Pa. 1994) and <u>Mahon v. City of Bethlehem</u>, 898 F. Supp. 310 (E.D. Pa. 1995).

Furthermore, courts have frowned upon all inclusive interpretations of indemnity provisions as being tantamount to transforming "definitive indemnification agreements into open-ended guarantees in the nature of insurance policies." <u>Jacobs</u> at 374. For example, the Court in <u>Fox Park Corporation v. James Leasing Corp., et al.</u>, 641 A.2d 315, 318 (Pa. Super 1994), rejected such an argument and stated that, if taken literally, an indemnification clause requiring indemnification for "all claims . . . and lawsuits" would "constitute a policy of comprehensive liability insurance, since it would require [indemnification] for any act whatsoever. . . . To do so would make the indemnitor liable for any act . . . of the [indemnitee] whatsoever, which our indemnification laws will not allow." Community Transit is not, and should not be, SEPTA's insurance carrier for any lawsuit brought against SEPTA whatsoever.

### E.  Indemnification Would be Contrary to Public Policy

Even if the provisions within the Agreement and the Assignment could be interpreted to include coverage of intentional conduct and civil rights violations committed by SEPTA alone, to do so would be contrary to public policy. It is well established in Pennsylvania that public policy precludes indemnification clauses from covering intentional or wrongful conduct of the indemnitee. <u>Mahon v. City of Bethlehem</u>, 898 F.

18

Supp. 310 (E.D. Pa. 1995); Nationwide Mut. Ins. Co., v. Hassinger, 473 A.2d 171, 173 (Pa. Super. 1984). Furthermore, "[a]s a predicate for recovery under basic indemnification principles, it is requires that . . . the indemnitee not have contributed to [the injured's] injuries by its own improper or unlawful conduct." Britt v. May Dept. Stores Co., 1994 WL 585930, *2 (E.D. Pa. 1994).

Plaintiff is suing SEPTA for committing "deliberate, repeated and ongoing violation" of Title VII, the PCHRIA, the Equal Protection Clause, and the Pennsylvania Constitution. Complaint ¶¶ 37-41, 46, 50, & 54-55. The only way in which SEPTA can be found liable to Plaintiff would be if SEPTA were found to have engaged in unlawful discriminatory practices by imposing employment conditions on its paratransit providers. It would simply be contrary to public policy to hold Community Transit responsible for indemnifying SEPTA against claims arising from SEPTA's own discriminatory practices. See Canavin v. Naik, 648 F. Supp. 268, 269 (E.D. Pa. 1986) (indemnification is unavailable to an intentional tort-feasor because it would permit him to escape liability for his own deliberate acts).

SEPTA drafted the paratransit agreement and made compliance with its regulations an absolute condition of the agreement. See Trout Declaration, Exhibit "D," ¶9-¶11. SEPTA requires its paratransit providers to adhere to the Agreement and its regulations with little or no alterations. Trout Declaration,

19

Exhibit "D," ¶10-¶11.  In light of this background, if the regulations that SEPTA imposes on its paratransit providers are illegal and discriminatory, it would contravene public policy for SEPTA to be able to obtain indemnification against such conduct. Britt, 1994 WL 585930 at *3 citing National Railroad Passenger v. Consolidated Rail, 698 F. Supp. 951, 971 (D.D.C. 1988) (It is well established that contractual provisions which "appear to indemnify against willful, wanton, reckless, or intentional misconduct by the indemnitee are contrary to public policy").

## V.    CONCLUSION

SEPTA's joinder of Community Transit in this lawsuit is not warranted by existing law or by any legitimate argument for the extension, modification, or reversal of existing law.  There is nothing within the Assignment or Agreement or the facts alleged in Plaintiff's Complaint that could support the proposition that Community Transit should act as SEPTA's insurance company on a civil rights claim that is the result of SEPTA's own allegedly illegal hiring regulations and policies.

Accordingly, Third Party Defendant Community Transit respectfully requests that the Court grant its motion for summary judgment and dismiss the Third Party Complaint against Third Party Defendant Community Transit.

_____
Neil J. Hamburg, Esquire
Thomas Moshang III, Esquire

I.D. Nos. 32175 & 78902
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1433
Counsel for Third Party Defendant
Community Transit of Delaware
County Inc.

<u>CERTIFICATE OF SERVICE</u>

     I, Thomas Moshang III, certify that, on October 7, 2003, I served, by first class mail, postage prepaid, a copy of the Motion for Summary Judgment of Community Transit of Delaware County, Inc. on:

Dennis L. Scanlon, Esquire
Robert J. Haurin, Esquire
Saul H. Krenzel & Associates
42 South 15th Street,
Suite 800
Philadelphia, PA  19103

Attorneys for Third Party
Plaintiff SEPTA

Wayne A. Ely, Esquire
Timothy M. Kolman &
Associates
225 North Flowers Mills Road
Langhorne, PA 19047

Attorney for Plaintiff
Douglass El and Purported
Class

Eugene A. Spector, Esquire
Spector, Roseman & Kodroff,
P.C.
1818 Market Street,
Suite 2500
Philadelphia, PA  19103

Attorney for Plaintiff
Douglass El and
Purported Class

Robyn Rachelle Ray, Esquire
Schubert Bellwoar Cahill &
Quinn
Two Penn Center, Suite 1400
1500 John F. Kennedy Blvd.
Philadelphia, PA  19102

Attorney for Third Party
Defendant J&D Jagicla
Enterprises, Inc., t/a
Liberty Vans

David L. Woloshin, Esquire
42 South 15th St., Suite 810
Philadelphia, PA 19102

Attorney for Third Party
Defendant Triage, Inc., and
Anderson Travel

Joseph M. Labuda, Esquire
Milman & Heidecker
3000 Marcus Avenue, Suite 3W3
Lake Success, NY  11042

Attorney for for Third Party
Defendant Atlantic Paratrans,
Inc.

Philip R. Voluck, Esquire
Kaufman, Schneider, & Bianco
600 West Germantown Pike
Suite 400
Plymouth Meeting, PA 19462

Attorney for Third Party
Defendant Krapfs CPS, Inc.

Frank Rivas, Esquire
Rivas Law Office
257 W Uwchlan Avenue, Suite A
Downingtown, PA 19335

Attorney for Third Party
Defendant Edens Corporation

Reginald A. Krasney, Esquire
717 Constitution Drive
Suite 100
Exton, PA 19341

Attorney for Third Party
Defendants King Paratransit
Service, Inc. and King
Limousine Service, Inc.

_____
Thomas Moshang III

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
DOUGLAS EL                        )
                                  )    CIVIL ACTION
          v.                      )
                                  )
SOUTHEASTERN PENNSYLVANIA         )    NO. 02-3591
TRANSPORTATION AUTHORITY          )
                                  )
          v.                      )
                                  )
KING PARATRANSIT SERVICE, INC.,   )
     et al.                       )
_____  )
```

**ORDER**

          AND NOW, this    day of        , 2003, upon
consideration of the Motion for Summary Judgment of Third Party
Defendant Community Transit of Delaware County Inc. and any
response thereto, it is hereby ORDERED that the Motion is
GRANTED.[2] Judgment is ENTERED in favor of Third Party Defendant
Community Transit of Delaware County, Inc. and against Third
Party Plaintiff Southeastern Pennsylvania Transportation
Authority.


                              BY THE COURT:


                              _____
                              J. Curtis Joyner, J.

---

          [2] SEPTA had neither a reasonable basis in fact nor a
reasonable basis in law for its Third Party Complaint; nor could
the Third Party Complaint be justified as a reasonable attempt
to extend or change existing law.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
DOUGLAS EL                        )
                                  )
            Plaintiff,            )
                                  )    CIVIL ACTION
        v.                        )
                                  )
SOUTHEASTERN PENNSYLVANIA         )    NO. 02-3591
TRANSPORTATION AUTHORITY          )
                                  )
        Defendant,                )
                                  )
        v.                        )
                                  )
KING PARATRANSIT SERVICE, INC.,   )
     et al.                       )
                                  )
        Third-Party Defendants.   )
_____
```

**THIRD-PARTY DEFENDANT COMMUNITY TRANSIT OF DELAWARE COUNTY, INC.
MOTION FOR SUMMARY JUDGMENT**

For the reasons set forth in the accompanying memorandum of law, Third Party Defendant Community Transit of Delaware County Inc., ("Community Transit") the proper corporate name of Community Transit, Inc., moves for summary judgment in its favor on the Third Party Complaint.

_____
Neil J. Hamburg, Esquire
Thomas Moshang III, Esquire

I.D. Nos. 32175 & 78902
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1433

Counsel for Third Party Defendant
Community Transit of Delaware
County, Inc.