IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| DOUGLAS EL | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 02CV3591 |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : | JURY TRIAL DEMAND |
| Defendant | : | |

---

**SEPTA'S CONSOLIDATED MEMORANDUM OF LAW**

**IN OPPOSITION TO THIRD PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AGAINST SEPTA**

Third Party Plaintiff and Defendant, Southeastern Pennsylvania Transportation Authority (hereafter "SEPTA") submits the within Memorandum of Law in opposition to the motions for summary judgment filed by Third Party Defendants, Edens Corporation, Community Transit of Delaware County, Inc., Krapfs' CPS, Inc., Triage, Inc., Anderson Travel, Inc., King Paratransit Service, Inc. and King Limousine (together "Third Party Defendants").

Third Party Defendants assert that they were improperly joined in this action by SEPTA pursuant to an indemnification agreement because it was SEPTA's intentional wrongdoing alone which gave rise to this action. However, Third Party Defendants have ignored existing precedent which establishes that intent is not a required element of the discrimination claims asserted by Plaintiff

and the class of individuals that he purports to represent. Likewise, Third Party Defendants have ignored the very language of the indemnification agreement which clearly covers the discrimination claims advanced by Plaintiff and the purported class.

For the reasons that follow, Third Party Defendants' motions for summary judgment should be denied.

**I.      PROCEDURAL HISTORY**

Plaintiff commenced this action by filing a Complaint against SEPTA on June 4, 2002. Therein, Plaintiff alleged a single cause of action against SEPTA under Title VII of the Civil Rights Act of 1964, as amended. Specifically, Plaintiff alleged that a provision included in a paratransit contract between SEPTA and King Paratransit Services, Inc. ("King") that prohibited his employment with King because he is a convicted murderer had a disparate impact on him as an African American. The Complaint also included class action allegations that the criminal conviction provision in the agreements between SEPTA and the Third Party Defendants has a disparate impact on African Americans and Hispanics. However, to date, Plaintiff has not identified a single potential member of the class that he purports to represent nor has he moved for class certification.

On or about November 13, 2002, Plaintiff amended his complaint. In addition to alleging a violation of Title VII as above, Plaintiff alleged also that the provision in the agreement between SEPTA and King as it was applied to him by King also violated the United States Constitution, the Pennsylvania Constitution and the Pennsylvania Criminal History Records Information Act. In his Amended Complaint, Plaintiff also alleges that members of the class that he purports to represent were likewise denied rights guaranteed by the United States Constitution and Pennsylvania Constitution. Finally, on behalf of the class, Plaintiff alleges that SEPTA violated the Pennsylvania

2

Criminal History Records Information Act when the class members were denied employment in driving positions with Third Party Defendants because of past criminal convictions.

On December 9, 2002, SEPTA filed its Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint. Therein, SEPTA denied liability to Plaintiff or any member of the class that he purports to represent.

On December 23, 2002, SEPTA filed Third Party Complaints against each of the paratransit providers with whom it does or did business during the period 1991 to present. The basis for the third party actions is a provision in the paratransit agreements that requires the paratransit providers to indemnify and hold SEPTA harmless for any claims that arise in the performance of the paratransit contracts including any claims brought by employees of the Third Party Defendants.

With the exception of Atlantic Paratransit, Inc., every paratransit provider including King, Edens Corporation, Triage, Inc., Community Transit, Inc. P&D Jagicla Enterprises, Krapfs CPS, Inc., Anderson Travel and King Limousine Service, Inc. have filed an answer to the Third Party Complaint, denying any liability to SEPTA.

On August, 25, 2003, Krapfs CPS, Inc. filed its motion for summary judgment against SEPTA. At the Rule 16 Conference on September 17, 2003, this Court directed the remaining Third Party Defendants to file Motions for Summary Judgment on or before October 8, 2003. On October 8, 2003, Third Party Defendants, Community Transit and King moved for summary judgment against SEPTA. Anderson Travel and Triage did not file their motion for summary judgment until October 14, 2003. Edens did not move for summary judgment against SEPTA until October 17, 2003.[1]

---

[1] Because Anderson Travel, Triage and Edens failed to comply with this Court's directive, their motions should be denied on this basis alone.

II.     **STATEMENT OF UNDISPUTED FACTS**

On or about July 1, 1999, SEPTA and King entered into a written contract pursuant to which King agreed to provide paratransit services to customers on behalf of SEPTA (hereafter "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit 1.[2] King is an independent contractor under the Agreement and is prohibited from holding itself out as being an agent or representative of SEPTA. Exhibit 1 at PMC-16. Moreover, King may not obligate SEPTA in any manner. Id.

Pursuant to the Agreement, King was required to provide to SEPTA a list of its personnel to be used in providing services. Moreover, the Agreement made clear that all such personnel "shall be considered employees of the Contractor [King] or its subcontractors and in no event shall any of the personnel employed in the performance of the Agreement be considered employees of SEPTA." Exhibit 1 at PMC-2.

With respect to King hiring drivers to effectuate the purposes of the Agreement, SEPTA established general minimum requirements that apply to King's drivers. In relevant part, the Agreement provides that King must complete a background investigation for all of its applicants for driving positions, including an investigation on the applicant's driving record and criminal background. Exhibit 1 at 22. Pursuant to the Agreement, King is prohibited from employing anyone in a driving position that:

    a.     has a current record or conviction for driving under the influence of alcohol or other substance;

---

[2] SEPTA has similar contracts with the other Third Party Defendants which contain identical language as that set forth in Exhibit 1.

b. has a felony or misdemeanor conviction for a crime of moral turpitude or of violence against any person including homicide, rape, robbery, risking a catastrophe, assault, aggravated assault, indecent assault and other crimes of violence including attempts to commit crimes of violence;

c. has a felony conviction in the last seven years preceding employment for crimes of theft or crimes against property.

d. has a misdemeanor conviction in the last seven years preceding employment for crimes of theft and crimes against persons and property, including indecent exposure, misdemeanor indecent assault, trespass, corruption of minors and crimes involving narcotics, alcohol and firearms.

Exhibit 1 at 23.

The Agreement also contains a broad indemnification provision that provides as follows:

> Indemnification. In addition to all other obligations of indemnification specified herein, Contractor agrees to be liable for and to defend, indemnify and save harmless SEPTA, its Board Members, officers, agents, workmen, employees, subsidizers and indemnities, the Pennsylvania Department of Transportation, the City of Philadelphia and any and all government funding agencies providing funds or services in connections with this Project (hereinafter collectively referred to as "SEPTA"), even if SEPTA is negligent in whole or in part, from and against any and all loss, cost, damage, liability, claims suits and expense, including consequential damages, counsel fees, whether or not arising out of any claim, suit or action at law, in equity, or otherwise, of any kind or nature whatsoever, including but not limited to negligence, which may be committed by or asserted against SEPTA and/or all of the aforementioned by reason of any accident, loss or damage to property or injury, including but not limited to death, to any person or persons, including but not limited to employees of SEPTA, which may be sustained either before or during the term of the Agreement, or upon or after completion of the Project, as a result, direct or indirect, of the performance of the Agreement by

<u>Contractor</u>, its officers, subcontractors of any tier and/or their agents, servants, workmen or employees or any other persons working on their behalf.

Contractor assumes all risk of loss, injury or damage to its property and all risk of loss, injury or death to its officers, agents, servants, workmen or employees or any other persons working on their behalf, and Contractor expressly agrees that at all times hereafter to indemnify, protect and save harmless SEPTA, its Board Members, officers, agents, servants, workmen, employees, subsidizers and indemnities, from and against any and all loss, damage, cost and expenses for claims, demands and actions therefore based on injury or damage to the person (including but not limited to death) or property of any of the aforesaid persons, whether brought directly by these persons or by anyone claiming under or through them including but not limited to heirs, dependants and estates, and whether caused in whole or in part by the negligence of SEPTA, or its Board Members, officers, agents, servants, workmen, employees, subsidizers or indemnities.

Contractor, for itself and its employees, Board members, officers, agents, contractors, licensees and invitees hereby releases and agrees to be liable for and to defend, indemnify and save harmless SEPTA, even if SEPTA is negligent in whole or in part, for any claims made by an employee, Board member, officer, agent, workman or servant of Contractor, including claims for compensation or benefits payable to any extent by or for Contractor under any worker's or similar compensation acts or other employee benefit acts, and Contractor expressly waives its statutory protection under §303, as amended, of the Pennsylvania Workers' Compensation Act, 77 P.S. §481 (b).

Contractor shall be expressly liable for any and all injuries (including death) to persons, including, but not limited to, SEPTA's employees, Contractor's employees, or damage to property of whatever kind or nature, resulting directly to indirectly, by reason of any act or omission on the part of SEPTA, its Board members, officers, agents, indemnities, servants and/or employees, the Contractor including its employees, agents, contractors, licensees and invitees in connection with the performance of this Project. Contractor ad/or its insurer shall be solely responsible for selection of counsel and control of litigation, including any settlement of a claim.

Exhibit 1 at PMC-11 to PMC-12.

On January 3, 2000, Plaintiff completed an application for employment with King for a position as a driver. El Dep. at 55-58.[3] The application revealed that Plaintiff had previously been convicted of homicide. Notwithstanding the provision in the Agreement concerning hiring drivers with criminal convictions, Plaintiff was hired as a driver by King and commenced employment there on January 17, 2000. El Dep. at 71-72.

On January 18, 2000, Plaintiff executed a release which allowed King, among other things, to obtain information concerning Plaintiff's criminal background. El Dep. at 87 and Exhibit 6 attached thereto. Following the commencement of Plaintiff's employment, King obtained a criminal history report regarding Plaintiff's criminal background. Fiorillo Dep. at 17-18 and Exhibit 1 and 3 attached thereto.[4] The criminal history report revealed that Plaintiff was a convicted murderer and had other convictions related to drug charges.

With respect to his murder conviction, Plaintiff testified that he brought a gun to a gang fight and fired the weapon at the rival gang. A 16 year old boy named Earl Jones was killed. El. Dep. at 19-21.

On January 27, 2000, Ms. Fiorillo advised Mr. Wieh, Plaintiff's supervisor at King, that Plaintiff could not continue in the employment of King because of his murder conviction. Fiorillo Dep. at 18, 29-30 and Exhibit 3 attached thereto. Plaintiff was thereafter removed from King's payroll and paid only through January 27, 2000. Id. at 51.

Ms. Fiorillo did not discuss her decision to separate Plaintiff's employment with King with

---

[3] Copies of the relevant pages of Plaintiff's deposition transcript are attached hereto as Exhibit 2.

[4] Pamela Fiorillo is the Human Resource Manager for King. Fiorillo Dep. at 5. Copies of the relevant pages of Ms. Fiorillo's deposition transcript are attached hereto as Exhibit 3.

anyone from SEPTA. Id. at 25. Moreover, Mr. Wieh advised Plaintiff that he could not work at King in any capacity because of his conviction of homicide, although the Agreement precluded him from working as a driver only. El. Dep. at 103-104; Exhibit 1 at 22-23.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Therefore, summary judgment is proper if the party opposing the motion fails to establish an essential element of his or her case. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In evaluating a motion for summary judgment, the court must read the facts in the light most favorable to the nonmoving party. Anderson v. Liberty Lobbys, Inc., 477 U.S. 242 at 255 (1986). Summary judgment should not be granted if the evidence is such that a "jury could return a verdict for the nonmoving party." Id. at 250.

Genuine issues of material fact exist here which precludes the entry of summary judgment in favor of any Third Party Defendant. Moreover, this Court should find that the indemnification provision is enforceable against Third Party Defendants for the employment discrimination claims made by Plaintiff and the class that he purports to represent as a matter of law.

### IV. ARGUMENT

    **A.  SEPTA CAN BE FOUND LIABLE UNDER TITLE VII WITHOUT ANY SHOWING THAT IT INTENDED TO DISCRIMINATE AGAINST AFRICAN AMERICANS AND HISPANICS.**

In their moving papers, the Third Party Defendants maintain that the indemnification

provision in the Agreement is not enforceable because Plaintiff has alleged that SEPTA committed intentional acts of discrimination. In that regard, Third Party Defendants' moving papers are based upon a faulty premise.

In Count I of the Amended Complaint, Plaintiff alleges that SEPTA violated Title VII because the provision in the Agreement concerning the hiring of drivers with criminal convictions has a *disparate impact* on African Americans and Hispanics. Amended Complaint at ¶ 36. It is well recognized that to establish a prima facie case of disparate impact discrimination, Plaintiff must demonstrate that a facially neutral policy caused a significant disparate impact on a protected group and cannot be justified by business necessity.[5] Lawton v. Sunoco, 2002 U.S. Dist. Lexis 13039 (E.D.Pa. 2002), aff'd, 2003 U.S. App. Lexis 8802 (3d Cir. 2003); Duffy v. Halter, 2001 WL 253828 (E.D.Pa. 2001).

Significantly, proof of a discriminatory motive or an intention to discriminate is not necessary to sustain the claim made. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988). "[T]he necessary premise of the disparate impact approach is that some employment practices, *adopted without a discriminatory motive*, may in operation be functionally equivalent to intentional discrimination." Id. (emphasis added)

In Griggs v. Duke Power Co., 401 U.S. 424, 430-432 (1971), the Court observed that an employer may have good intentions or a complete absence of discriminatory intent and still run afoul

---

[5] It is SEPTA's position that Plaintiff cannot possibly show that the policy at issue here had a disparate impact on African Americans because there is no evidence of a racial disparity with respect to the position that Plaintiff applied for. See El Dep. at 81, 100. In addition, Plaintiff's claims all fail as a matter of law because the criminal conviction policy in the Agreement is justified by business necessity. See New York Transit Authority v. Beazer, 440 U.S. 568, 586 (1979) (transit authority's exclusion of persons who use drugs furthered the legitimate goals of public safety and efficiency).

9

of Title VII in a disparate impact case. Thus, Griggs noted that Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Id. at 431.

Here, the implementation of the criminal conviction provision into the Agreement was based solely on the good intentions of SEPTA. In fact, the only reason for the policy at issue in this case is to protect the disabled public who rely on paratransit services from, among others, violent felons like Plaintiff. Nevertheless, under existing precedent, SEPTA could still potentially violate Title VII assuming that Plaintiff could make a threshold prima facie showing of disparate impact discrimination - - which he cannot - - and SEPTA could not demonstrate that the provision was justified by business necessity - - which it can. Thus, any argument made by Third Party Defendants that the indemnification provision of the Agreement does not cover intentional acts or that it is against the public policy of this Commonwealth to allow a party to indemnify itself against its own intentional wrongdoing is misplaced because SEPTA's intent is not a necessary element of the employment discrimination claim made.

What's more, there is not a shred of evidence in the record to suggest that SEPTA acted with intent to discriminate against African Americans or Hispanics. Certainly, no Third Party Defendant has come forward with any such evidence.

Here, it is merely alleged that SEPTA acted with an intentional purpose to discriminate. However, SEPTA should not be precluded from seeking indemnification if it is later determined that it did not act with such intent, but rather acted in good faith. Cf. Mace v. Atlantic Refining, 567 Pa. 71, 785 A.2d 491, 496 (2001) (parties charged with negligence, even though later found not to be negligent, should not be precluded from recovering defense costs pursuant to an indemnification agreement).

Accordingly, Third Party Defendants' Motions should be denied.

### B.   IT IS NOT CONTRARY TO THE PUBLIC POLICY OF THIS COMMONWEALTH TO INDEMNIFY AGAINST A NEGLIGENT OR INNOCENT VIOLATION OF A STATUTE.

The Third Party Defendants also assert that enforcement of the indemnification provision would be contrary to public policy because the Amended Complaint alleges violations of Title VII, the Criminal History Record Information Act and the Constitutions of the United States and Pennsylvania. According to Defendants, there is a strong public policy against discrimination in employment and the stigmatization of criminal convicts. However, as noted above, a violation of Title VII could potentially be found even if SEPTA acted in good faith and not intentionally or negligently. Thus, the cases upon which Third Party Defendants to support their proposition that it is against the public policy of Pennsylvania to allow indemnification for intentional violations of statutes and Constitutions are inapposite.

More relevant to this case is the decision of the Supreme Court of Pennsylvania in Blast Intermediate Unit 17 v. CNA Insurance Companies, 544 Pa. 66, 674 A.2d 687 (1996). There, the Court considered whether it would contravene the public policy of this Commonwealth to allow a party to be indemnified pursuant to a contract of insurance for a violation of the Equal Pay Act, 29 U.S.C. §§ 206 et seq. The Court held that it did not violate the public policy of Pennsylvania for a party to insure itself against negligent violations of discrimination statutes. 674 A.2d at 691.

Significantly, the Court reiterated:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute

11

> itself the voice of the community in so declaring. There must be a positive, well-defined, universal sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right in the interests of the public weal . . . . <u>Only in the clearest cases, therefore may a court make an alleged public policy the basis of a judicial decision.</u>

674 A.2d at 689 (emphasis added) (quoting <u>Hall v. Amica Mut. Ins. Co.</u>, 538 Pa. 337, 348, 648 A.2d 755, 760 (1994)). Here, the criminal conviction provision in the Agreement serves to advance public health and safety and, accordingly, cannot be contrary to the public policy of this Commonwealth. Therefore, if it is determined that SEPTA is liable at all to Plaintiff in this case, which SEPTA expressly denies, it is not for engaging in conduct that is contrary to the public good. Indeed, the criminal conviction policy is designed solely for the purpose of protecting the disabled public who rely on a paratransit services, not to discriminate against any individual seeking employment as a paratransit driver because of his race.

Most importantly, the application of the Agreement in this case advanced those goals. Indeed, King refused to hire a convicted murderer as a driver who otherwise would have been employed in a stressful environment in which he would have constant contact with the disabled public.

### C. THE INDEMNIFICATION PROVISION OF THE AGREEMENT COVERS THE DISCRIMINATION CLAIMS MADE BY PLAINTIFF AND THE CLASS HE PURPORTS TO REPRESENT.[6]

Third Party Defendants also assert that the indemnification provision does not apply to any of the claims made by Plaintiff in the Amended Complaint. Similarly, Third Party Defendants also

---

[6] In the event that the Court certifies a class of convicted felons like Plaintiff, which SEPTA believes is inappropriate, the other Third Party Defendants would also be liable to SEPTA for any claims of employment discrimination made against SEPTA for the reasons stated herein.

assert that the language in the indemnification provision is not specific enough to cover such claims.  See e.g., Community Transit Memo at 11; Krapfs Memo at 4.  Simply stated, Third Party Defendants are wrong.

As noted above, a disparate impact claim can be found without any finding of intent.  As a result, the act about which Plaintiff complains in Count I of the Amended Complaint can be sustained even if SEPTA acted in good faith or negligently.  In either case, the language of the indemnification clause makes clear that SEPTA should be indemnified by King for the discrimination claim made by Plaintiff in the Amended Complaint.

In Ruzzi v. Butler Petroleum Company, 527 Pa. 1, 588 A.2d 1, 4 (1991), the Court noted that the law in Pennsylvania has long recognized that "if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's negligence, they must do so in clear and unequivocal language."  Ruzzi held that words of general import were not sufficient to establish such indemnification.  Id.  Thus, courts in Pennsylvania hold only that an indemnity provision does not cover claims of negligence unless it so states in the contract. Mahon v. City of Bethlehem, 902 F. Supp. 76, 79 (E.D.Pa. 1995).

In relevant part, the indemnification clause of the Agreement provides:

> In addition to all other obligations of indemnification specified herein, Contractor agreed to be liable for and to defend, indemnify and save harmless SEPTA, its Board Members, officers, agents, workmen, employees, subsidizers and indemnities, the Pennsylvania Department of Transportation, the City of Philadelphia and any and all government funding agencies providing funds or services in connections with this Project (hereinafter collectively referred to as "SEPTA"), <u>even if SEPTA is negligent in whole or in part, from and against any and all loss, cost, damage, liability, claims suits and expense, including consequential damages, counsel fees, whether or not arising out of any claim, suite or action at law, in equity, or otherwise, of any kind or</u>

> nature whatsoever, including but not limited to negligence, which may be committed by or asserted against SEPTA and/or all of the aforementioned by reason of any accident, loss or damage to property or injury, including but not limited to death, to any person or persons, including but not limited to employees of SEPTA, which may be sustained either before or during the term of the Agreement, or upon or after completion of the Project, as a result, direct or indirect, of the performance of the Agreement by Contractor, its officers, subcontractors of any tier and/or their agents, servants, workmen or employees or any other persons working on their behalf.

Exhibit 1 at PMC-11. Thus, by its clear and unambiguous language, the indemnification clause of the Agreement protects SEPTA in the event that it acts in a negligent manner. Moreover, there can be little doubt that the indemnification provision in the Agreement applies to actions brought by employees of King like the Plaintiff. Indeed, the Agreement expressly states that the Contractor (King) "agrees to be liable for and defend, indemnify and save harmless SEPTA, even if SEPTA is negligent in whole or in part, for any claims made by any employee, Board member, officer, agent, workman or servant of Contractor, including claims for compensation or benefits payable . . . ." Id. (emphasis added).[7]

---

[7] In Mutual Insurance Company v. Darden, 503 U.S. 318, 323 (1992), the Court applied a common law agency test for purposes of determining whether an employment relationship exists. There can be no doubt that Plaintiff was an employee of King, not SEPTA. Here, King hired Plaintiff, supervised Plaintiff, set his schedule, paid him, withheld taxes from his paycheck and terminated his employment without any input from SEPTA. Fiorello Dep. at 9-13. Plaintiff also testified that he was denied any employment with King because of his murder conviction, although the provision in the Agreement is much narrower in that it applies only to driving positions because drivers have constant contact with disabled patrons who rely on paratransit services. See El Dep. at 103-104, 107. Plaintiff testified that he requested that he be assigned to another position at King, but was told "to leave the premises." Id. at 102-104. Moreover, Plaintiff testified that he never applied for or was denied employment with SEPTA. Id. at 38.

Thus, SEPTA had no right to control the manner and means in which Plaintiff performed services for King. SEPTA also had no right to assign projects to Plaintiff or any control over the hours that Plaintiff worked or the schedule that he worked. Under Darden, it is clear that SEPTA is not a statutory employer of Plaintiff. It should also be noted that the Agreement specifies that

Here, the indemnity provision of the Agreement does state specifically that SEPTA's acts of negligence are covered. As noted above, the parties certainly contemplated that the paratransit providers would indemnify and hold SEPTA harmless for any acts of negligence on the part of SEPTA in connection with the performance of the Agreement. Indeed, the words negligent and negligence of SEPTA are included 4 times in the indemnification clause of the Agreement. Exhibit 1 at PMC-11. More to the point, the Agreement specifies also that the Third Party Defendants would indemnify SEPTA "for any claims made by an employee, Board member, officer, agent, workman or servant of Contractor . . . " Id. Thus, the clear and unequivocal language required for the enforcement of an indemnification provision regarding a party's own negligence is present. This case involves an employee of King whose employment was terminated by King because he is a convicted violent offender.

Because Plaintiff was at all times relevant to this proceeding an employee of King, his claims against SEPTA are the very type of claims that the parties agreed would be the financial responsibility of the Third Party Defendants. It was certainly SEPTA's intent that such claims would be covered by the Agreement. See Brandis Dep. at 28-30, 77-78. [8] In such circumstances, it would defy logic and reason to allow Third Party Defendants to escape their contractual obligations in the manner that they suggest.

**IV.    CONCLUSION**

---

King is a contractor for SEPTA and is also the employer of all individuals hired to perform the services contained therein. Exhibit 1 at PMC-2. See Holtzmann v. The World Book Company, 174 F. Supp. 2d 251, 254 (E.D.Pa. 2001) (although an agreement is not dispositive, it is strong evidence that an individual was an independent contractor and not an employee).

[8] Copies of relevant pages of Mr. Brandis' deposition transcript are attached hereto as Exhibit 4.

For all of the foregoing reasons, the Third Party Defendants' Motions for Summary Judgment should be denied

Respectfully submitted,

_____
Robert J. Haurin
SAUL H. KRENZEL & ASSOCIATES
The Robinson Building
42 South 15th Street, Suite 800
Philadelphia, PA 19102
(215) 977-7230

DATED:    October 29, 2003