## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------------
DOUGLAS EL,                          :
Individually and on behalf of        :
all others similarly situated,       :
            Plaintiff,               :
      v.                             :          CIVIL ACTION
                                     :          NO. 02-CV-3591
SOUTHEASTERN PENNSYLVANIA            :
TRANSPORTATION AUTHORITY,            :
            Defendant.               :
-------------------------------------------------------
```

## ORDER

THIS MATTER having come before the Court on Plaintiff's Motion to Compel Metro

Care, Inc. to Comply With Plaintiff's Subpoena Requiring the Production of Documents,

IT IS, on this _____ day of _____, 2004,

ORDERED THAT Plaintiff's Motion is GRANTED, and that:

1.  Metro Care, Inc. is found to be in contempt of court for failing to comply with

    Plaintiff's Subpoena without objection or excuse;

2.  Metro Care, Inc. shall produce documents in response to Plaintiff's Subpoena

    within seven days;

3.  Metro Care, Inc. shall pay sanctions to Plaintiff's counsel in the amount of

    $500.00 to reimburse them for the time spent preparing, filing and litigating

    this Motion;

_____
THE HONORABLE J. CURTIS JOYNER
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------------
DOUGLAS EL,                            :
Individually and on behalf of          :
all others similarly situated,         :
         Plaintiff,                    :
      v.                               :          CIVIL ACTION
                                       :          NO. 02-CV-3591
SOUTHEASTERN PENNSYLVANIA              :
TRANSPORTATION AUTHORITY,              :
         Defendant.                    :
-------------------------------------------------------
```

## PLAINTIFF'S MOTION TO COMPEL
## METRO CARE, INC.
## TO COMPLY WITH PLAINTIFF'S SUBPOENA
## REQUIRING THE PRODUCTION OF DOCUMENTS

Plaintiff Douglas El ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 45, hereby

moves this Court to compel Metro Care, Inc. ("Metro Care") to comply with Plaintiff's January

12, 2004 Subpoena and produce the documents requested therein. In support of this Motion,

Plaintiff avers as follows:

1.      On May 13, 1996, Metro Care entered into a contract with SEPTA for the

provision of paratransit services.[1]

2.      On November 13, 2002, Plaintiff filed a four-count Amended Complaint against

SEPTA. Plaintiff's claims are based on an allegedly illegal employment policy SEPTA imposed

on its paratransit providers (including Metro Care) that required them to reject all job applicants

with a past criminal conviction and terminate all employees with a past criminal conviction

without conducting any inquiry into when their conviction occurred, the circumstances

surrounding their conviction, or whether their conviction had any relationship to their job

---

[1]  See Metro Care paratransit services contract (Exhibit A).

responsibilities.

3.    Plaintiff's claims are brought as a class action on behalf of "all people who have been denied employment, between January 1, 1991 and the present, by any company that has provided paratransit services for SEPTA as a result of a past felony or misdemeanor conviction." See Complaint, ¶28.

4.    On December 23, 2002, SEPTA filed a Third-Party Complaint against nine companies with which it had contracted for paratransit services during the Class Period but, for reasons unclear to Plaintiff, did not join Metro Care in the case.

5.    On January 12, 2004, Plaintiff prepared a Subpoena for service on Metro Care that compelled the production of documents relevant to Plaintiff's claims by February 2, 2004 and delivered the Subpoena to a process server.[2]  Plaintiff's Subpoena was served on January 14, 2004.

6.    Metro Care did not serve any objections on Plaintiff within 14 days of receipt as required by Fed. R. Civ. P. 45(c)(2)(B).  Indeed, 30 days after service, Metro Care still has not served any objections on Plaintiff.

7.    Metro Care did not produce any documents in response to Plaintiff's Subpoena by the date set for compliance as required by Fed. R. Civ. P. 45.  Indeed, more than more than 30 days after service, Metro Care still has not produced any documents to Plaintiff.

8.    On February 11, 2004, Plaintiff's counsel spoke to Joseph Creighton, the person who accepted service of the Subpoena on January 14, 2004, about whether Metro Care intended to comply with Plaintiff's subpoena.  Mr. Creighton referred Plaintiff's counsel to Metro Care's

---

[2]  See Plaintiff's January 12, 2004 Subpoena (Exhibit B).

Claims Department. On February 11, 2004, Plaintiff's counsel spoke to Roseanne in Metro Care's Claims Department. Roseanne said that she received Plaintiff's Subpoena around January 20, 2004 and sent it to Metro Care's counsel, David Woloshin, on January 23, 2004 with instructions to "handle it" for Metro Care.

9.    Mr. Woloshin entered his appearance in this case in March 2003 as counsel for Anderson and Triage. Since that date, Plaintiff's counsel have had numerous discussions with Jeffrey Killino, an attorney in Mr. Woloshin's office. At no time has Mr. Killino so much as mentioned Metro Care or Plaintiff's outstanding Subpoena, much less discussed his plans to produce the documents it seeks. Mr. Killino's long-standing failure to comply with discovery obligations imposed by the Federal Rules or with this Court's direct order to produce discovery on behalf of his other paratransit clients are detailed more fully in Plaintiff's Second Motion to Compel the Production of Documents from Anderson Travel and Triage, Inc. (filed February 4, 2004).

10.    Plaintiff's counsel left a message on Mr. Woloshin's voice-mail on February 12, 2004 to determine whether he had any plans to comply with the Subpoena served on Metro Care. As of the date of this filing, this message had not been returned.

11.    Plaintiff incorporates by reference his attached Memorandum of Law.

WHEREFORE, plaintiff respectfully requests that the Court: (1) grant this Motion; (2)

order Metro Care to Comply With Plaintiff's Subpoena Requiring the Production of Documents

within seven days; (3) hold Metro Care in contempt of court for failing to voluntarily comply

with Plaintiff's Subpoena without objection or excuse; and (4) order Metro Care to pay

Plaintiff's counsel sanctions in the amount of $500.00 as compensation for the time spent

preparing, filing and litigating this Motion.

Respectfully submitted,

Dated: February 13, 2004

Eugene A. Spector
David J. Cohen
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Timothy M. Kolman
Wayne A. Ely
TIMOTHY M. KOLMAN AND ASSOCIATES
225 N. Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

Attorneys for Plaintiff and the Class

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------

|  |  |
|---|---|
| **DOUGLAS EL,** | : |
| **Individually and on behalf of** | : |
| **all others similarly situated,** | : |
| **Plaintiff,** | : |
| **v.** | : |
|  | : |
| **SOUTHEASTERN PENNSYLVANIA** | : |
| **TRANSPORTATION AUTHORITY,** | : |
| **Defendant.** | : |

**CIVIL ACTION
NO. 02-CV-3591**

-----------------------------------------------------------

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL
## METRO CARE, INC.
## TO COMPLY WITH PLAINTIFF'S SUBPOENA
## <u>REQUIRING THE PRODUCTION OF DOCUMENTS</u>

Eugene A. Spector
David J. Cohen
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Timothy M. Kolman
Wayne A. Ely
TIMOTHY M. KOLMAN AND ASSOCIATES
225 N. Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

Attorneys for Plaintiff and the Class

Dated: February 13, 2004

## I.    BACKGROUND INFORMATION

### A.    Summary Of Plaintiff's Allegations

On November 13, 2002, Plaintiff filed a four-count Amended Complaint against SEPTA. Plaintiff's claims are based on an allegedly illegal employment policy SEPTA imposed on its paratransit providers that required them to reject all job applicants with a past criminal conviction and terminate all employees with a past criminal conviction without conducting any inquiry into when their conviction occurred, the circumstances surrounding their conviction, or whether their conviction had any relationship to their job responsibilities.

### B.    Procedural Posture Of The Litigation

On November 12, 2003, SEPTA filed a Motion for Summary Judgment Against Plaintiff. In a phone conference on November 14, 2003, this Court permitted Plaintiff to pursue merits discovery from all Defendants and set March 15, 2004 as the due date for Plaintiff's summary judgment opposition.

### C.    Relevant Facts

On May 13, 1996, Metro Care entered into a contract with SEPTA for the provision of paratransit services.[1]

On December 23, 2002, SEPTA filed a Third-Party Complaint against nine companies with which it had contracted for paratransit services during the Class Period but, for reasons unclear to Plaintiff, did not join Metro Care in the case.

On January 12, 2004, Plaintiff prepared a Subpoena for service on Metro Care that compelled the production of documents relevant to Plaintiff's claims by February 2, 2004 and

---

[1] See Metro Care paratransit services contract (Exhibit A).

delivered the Subpoena to a process server.[2]  Plaintiff's Subpoena was served on January 14, 2004.

Metro Care did not serve any objections on Plaintiff within 14 days of receipt as required by Fed. R. Civ. P. 45(c)(2)(B).  Indeed, 30 days after service, Metro Care still has not served any objections on Plaintiff.

Metro Care did not produce any documents in response to Plaintiff's Subpoena by the date set for compliance as required by Fed. R. Civ. P. 45.  Indeed, more than more than 30 days after service, Metro Care still has not produced any documents to Plaintiff.

On February 11, 2004, Plaintiff's counsel spoke to Joseph Creighton, the person who accepted service of the Subpoena on January 14, 2004, about whether Metro Care intended to comply with Plaintiff's subpoena.  Mr. Creighton referred Plaintiff's counsel to Metro Care's Claims Department.  On February 11, 2004, Plaintiff's counsel spoke to  Roseanne in Metro Care's Claims Department.  Roseanne said that she received Plaintiff's Subpoena around January 20, 2004 and sent it to Metro Care's counsel, David Woloshin, on January 23, 2004 with instructions to "handle it" for Metro Care.

Mr. Woloshin entered his appearance in this case in March 2003 as counsel for Anderson and Triage.  Since that date, Plaintiff's counsel have had numerous discussions with Jeffrey Killino, an attorney in Mr. Woloshin's office.  At no time has Mr. Killino so much as mentioned Metro Care or Plaintiff's outstanding Subpoena, much less discussed his plans to produce the documents it seeks.  Mr. Killino's long-standing failure to comply with discovery obligations imposed by the Federal Rules or with this Court's direct order to produce discovery on behalf of

---

[2]  See Plaintiff's January 12, 2004 Subpoena (Exhibit B).

his other paratransit clients are detailed more fully in Plaintiff's Second Motion to Compel the

Production of Documents from Anderson Travel and Triage, Inc. (filed February 4, 2004).

Plaintiff's counsel left a message on Mr. Woloshin's voice-mail on February 12, 2004 to

determine whether he had any plans to comply with the Subpoena served on Metro Care. As of

the date of this filing, this message had not been returned.

## II.    ARGUMENT

### A.    Rule 45 Permits the Issuance of Document Subpoenas on Non-Parties.

Federal Rule of Civil Procedure 45 expressly permits the issuance of a subpoena

compelling the production of documents from a non-party. Fed. R. Civ. P. 45. See Badman v.

Stark, 139 F.R.D. 601, 603 (M.D. Pa. Aug. 2, 1991) (Rule 45 subpoena is correct mechanism for

compelling the production of documents from non-parties); Macario v. Pratt & Whitney Canada,

Inc., 1991 WL 1004, *1-2 (E.D. Pa. Jan 2, 1991).

### B    Under Rule 45, Objections to a Subpoena must Be Raised Within 14 Days Or Are Considered Waived.

Where, as here, a subpoena has been properly issued and served, the party from whom

production is sought has 14 days to serve written objections concerning the requested production

or is understood to waive any such objections. Fed. R. Civ. P. 45(c). See Wright v. Montgomery

County, 1999 WL 80275, *3-4 (E.D. Pa. Feb. 3, 1999); Barnes Foundation v. Township of

Lower Merion, 1997 WL 169442, *2 (E.D. Pa. Apr. 7, 1997).

Metro Care was personally served with Plaintiff's Subpoena by an authorized process-

server on January 14, 2003. See Plaintiff's January 12, 2004 Subpoena. Metro Care did not

serve any objections on Plaintiff within 14 days of receipt as required by Rule 45(c). Indeed,

more than 30 days after receiving service, Metro Care still has not served any objections on

Plaintiff. As a result, Metro Care has waived its right to object to Plaintiff's Subpoena. See Packer, 1999 WL 1038343 at * 1-2.

### C.    Compliance with a Subpoena is Required Where a Reasonable Time has been Provided for Compliance.

A subpoena must permit the receiving party reasonable time for compliance. Fed. R. Civ. P. 45(c). See Packer v. Hansen, 1999 WL 1038343, *1 (E.D. Pa. Nov. 12, 1999); Donahoo v. Ohio Dept. of Youth Services, 211 F.R.D. 303, 305 (N.D. Ohio 2002). Courts generally apply the 14-day window relating to the time for objections under Rule 45(c)(2)(A) as a guideline for determining whether a reasonable time was provided for compliance. See Packer, 1999 WL 1038343 at *1 (18 days is reasonable time for compliance); Donahoo, 211 F.R.D. 303 at 305 (14 days is reasonable time for compliance).

Metro Care received Plaintiff's Subpoena on January 14, 2004. See Plaintiff's January 12, 2004 Subpoena. Plaintiff's Subpoena directed Metro Care to produce documents in response to nine limited areas relevant to his claims against SEPTA. Id. Plaintiff's Subpoena allowed Metro Care 19 days for compliance. Id. Metro Care not only failed to produce any documents within that time, but it still has not produced a single document more than 30 days after service. Metro Care, without providing any justification or excuse, has failed to comply with Plaintiff's Subpoena.

### D.    Metro Care Has Failed to Comply with Plaintiff's Subpoena Without Excuse or Justification and Should Be Sanctioned.

Where any person fails to comply with a properly-issued subpoena without providing an adequate excuse, they may be deemed in contempt of court. Fed. R. Civ. P. 45(e). See Ingersoll-Rand Co. v. Donovan, 540 F. Supp. 222, 226 (M.D. Pa. 1982). Plaintiff's Subpoena

-4-

was properly drafted and served; it was limited in scope and provided a reasonable time for compliance. Metro Care did not raise any timely objections to the Subpoena, and has not raised any objections in the weeks since the time for compliance passed. Metro Care did not timely produce any of the documents sought by the Subpoena, and has not produced any documents in the weeks since the time for compliance passed. Metro Care's counsel has repeatedly failed to comply with the discovery obligations imposed by the Federal Rules of Civil Procedure in this case and are presently in direct violation of this Court's order with respect to discovery sought from Anderson and Triage. Under these circumstances, an award of sanctions would be appropriate.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant this Motion; (2) order Metro Care to Comply With Plaintiff's Subpoena Requiring the Production of Documents within seven days; (3) hold Metro Care in contempt of court for failing to voluntarily comply with Plaintiff's Subpoena without objection or excuse; and (4) order Metro Care to pay Plaintiff's counsel sanctions in the amount of $500.00 as compensation for the time spent preparing, filing and litigating this Motion.

Dated: February 13, 2004

Eugene A. Spector
David J. Cohen
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Timothy M. Kolman
Wayne A. Ely
TIMOTHY M. KOLMAN AND ASSOCIATES
225 N. Flowers Mill Road
Langhorne, PA 19047
(215) 750-3134

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I, David J. Cohen, hereby certify that, on this 13th day of February, 2004, a true and correct copy of Plaintiffs' Motion to Compel Metro Care, Inc. to Comply With Plaintiff's Subpoena Requiring the Production of Documents was served upon the following counsel by First Class U.S. mail:

David Woloshin, Esquire
42 S. 15th Street, Suite. 810
Philadelphia, PA 19102

Robert J. Haurin, Esquire
Saul H. Krenzel and Associates
the Robinson Building Suite 800
42 South 15th Street
Philadelphia, PA 19102

Wayne A. Ely, Esquire
Timothy M. Kolman & Associates
The Shoppes at Flowers Mill
225 Flowers Mill Road
Langhorne, PA 19047

David J. Cohen
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Attorney for Plaintiff and the Class

# EXHIBIT A

CONTRACT
FOR PHILADELPHIA PARATRANSIT SERVICES

THIS AGREEMENT, entered into this _13th_ day of _May_ , 19_96_ _, by and between the Southeastern Pennsylvania Transportation Authority (hereinafter called "SEPTA"), an agency and instrumentality of the Commonwealth of Pennsylvania, and _____ Metro-Care, Inc._____ (hereinafter called "CONTRACTOR"), a __Corporation_____ organized under the laws of _Pennsylvania_____, with principal offices located at _333 Jenkintown Commons, Jenkintown, PA 19046_____ _____.

WITNESSETH:

WHEREAS, SEPTA needs to acquire certain paratransit services in connection with an undertaking known as _City of Philadelphia Paratransit Services_ as set forth in the Scope of Services (hereinafter called the "PROJECT");

WHEREAS, Contractor, pursuant to SEPTA's Request for Proposal, has submitted a Proposal to perform those services described in the Scope of Services.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

I.    Contractor shall perform those services and supply those products described in the Request for Proposal, which is attached hereto and made a part of the Contract, and hereinafter called the "Work".

II.    SEPTA shall pay to the Contractor, in consideration for performing the Work in conformity with the Exhibit 1, the rates set forth in the Exhibit II, attached hereto and made a part hereof.

III. THE CONTRACT
    A. The Contract Documents form the Contract and represent the entire and integrated agreement between the parties and, except for substantial representations made by the Contractor upon which SEPTA was entitled to rely in making the decision to award the Contract to the Contractor, supersede all prior negotiations, representations, or agreements, either written or oral.    The Contract Documents which form the Contract consist of the following:

Exhibit VIII - 1

7127

1)  Contract, including any amendment, modification or
    change order to the Contract mutually agreed to in
    writing and signed by proper officials of both
    parties;
2)  Any other attachment or exhibit attached hereto;
3)  Performance Bond;
4)  Request for Proposal/Proposal, finalized by the
    parties; and
5)  Insurance Requirements.

B.  Order Of Precedence.  In the event of any conflicts among
the Contract Documents listed in III.A. above, the terms and
requirements of the document which appears earliest in the
listing shall govern.

C.  No change, modification, or amendment to the Contract
shall be binding upon either party unless set forth in writing
and signed by the proper officials of both parties and, where
applicable, concurred in or approved by any government of
agency or instrumentality thereof which provided financial
assistance for the Project.  Variations, additions, or
exceptions to the terms and conditions set forth in the
Contract Documents shall not be considered part of the
Contract unless expressly agreed to in a writing signed by
SEPTA and by a proper official of Contractor, if necessary,
and incorporated herein.

IV.  <u>CONTRACT STANDARD</u>

The Request for Proposal shall provide the standard for determining
whether the Work meets Contract requirements.

V.  <u>CONTRACTOR TO COOPERATE WITH SEPTA's DESIGNATED PROJECT
REPRESENTATIVES</u>

Contractor shall cooperate with SEPTA's Project Representatives,
namely SEPTA's Project Manager, who shall be responsible for
technical direction provided by SEPTA, and SEPTA's Contract
Administrator, who shall be responsible for the administration of
this contract on SEPTA's behalf.

This shall include but not be limited to:

The parties understand and agree that SEPTA may be installing
"Swipe Readers" into any or all vehicles at SEPTA's cost and
expense.  Contractor shall make the vehicles available to SEPTA for
installation and maintenance of the "Swipe Readers" upon twenty-
four (24) hours notice to Contractor.  Contractor agrees to secure
insurance to cover the value of the equipment due to loss,
repossession or vandalism.

Exhibit VIII - 1 ~

7128

VI.  TIME OF PERFORMANCE

A. Contractor shall commence performance under the Contract within five (5) days of receipt of SEPTA's Notice to Proceed and shall fully complete performance, including submission of all required reports, of the Contract within the time specified in the Request for Proposal.  All time limits contained in the Contract Documents are of the essence.

B. The Contract shall expire three (3) years from Contractor's receipt of Notice to Proceed from SEPTA, unless the Contract is terminated earlier for any reason or SEPTA exercises its option to extend the term of the Contract under Paragraph XXXIV.

VII.  LIQUIDATED DAMAGES AND MONTHLY ON-TIME PERFORMANCE DAMAGES

Liquidated Damages and Monthly On-Time Performance Damages shall be assessed by SEPTA in accordance with Section XI, Liquidated Damages, and Section XII, On-Time Performance Damages, which are part of the Contract as identified in Exhibit  I .  All such Damages shall remain the property of SEPTA.

VIII.     DELAY IN COMPLETION BEYOND CONTRACTOR'S CONTROL

If Contractor shall be delayed in the completion and performance under the Contractor by reason of unforeseeable causes beyond his control and without his contribution, neglect, fault, or negligence, including but not restricted to acts of God, acts of neglect of SEPTA, acts of neglect of any other contractor, fires, floods, epidemics, quarantines, strikes, or freight embargoes, the time herein specified for completion of Contract Performance may be extended at the reasonable discretion of SEPTA, by such time as shall be fixed by SEPTA in writing.  The Contractor shall not be entitled to any damages, compensation, or adjustment from SEPTA on account of any delay or delays, including delays in payment to Contractor, resulting from any of the aforesaid causes.

IX.  EXTENSION OF TIME, NOT WAIVER OF TIMELY PERFORMANCE

A.  Any extension of time granted by SEPTA pursuant to Section VIII above shall operate only to mitigate Liquidated Damages; no such extension of time shall be deemed a waiver by SEPTA of its right to terminate the Contract for delay by the Contractor, nor shall such extension relieve Contractor from full responsibility for performance of his obligations hereunder.

B.  All requests for extensions of time for the performance of the contract pursuant Section VIII above, shall be made to SEPTA in writing within 48 hours after the occurrence of any delay or the Contractor's knowledge of the possibility of any

Exhibit VIII - 2

such delay.  The request for an extension of time shall state in detail the reason for the delay, the duration or estimated duration of such delay, steps planned or taken to mitigate or cure the delay and the time within which performance of the Contract can be completed.  The failure to advise SEPTA of any such delay in accordance with this to advise SEPTA of any such delay in accordance with this paragraph will preclude the grant of any extension of time of performance and subject the Contractor to the immediate assessment of liquidated damages.

X.    INSPECTION

If SEPTA so elects, SEPTA or its representatives may inspect the Work.

XI.    MONTHLY REPORTS

Contractor shall render monthly progress reports in such form and detail as SEPTA may require.

XII.    LOCATION OF WORK AND DELIVERY OF DOCUMENTS

A.    The location of the Work shall be as set forth in the Request for Proposal.

B.    Unless specified elsewhere in the Contract Documents, any reports, records or other documents shall be delivered to SEPTA's General Offices, 1234 Market Street, Philadelphia, PA 19107.

XIII.    INDEMNIFICATION

Contractor agrees to be liable for and to defend, indemnify and save harmless the Southeastern Pennsylvania Transportation Authority (SEPTA), its Board members, agents, indemnities, servants and/or employees, the Pennsylvania Department of Transportation, the City of Philadelphia, and/or any government funding agency providing funds or services in connection with this Project from and against any and all liability cost and expense, including consequential damages, counsel fees, whether or not arising out of any claim, suit or action at law, in equity, or otherwise, of any kind or nature whatsoever, including negligence, which may be brought against the Southeastern Pennsylvania Transportation Authority and/or any or all of the aforementioned on account of any loss to property or injury to person or persons (including death) which may be sustained either during the term of the Contract, or upon or after completion of the Project, as a result, direct or indirect, of the performance of the Contract.

Exhibit VIII - 3

The Contractor shall be expressly liable for any and all injuries to persons (including death) or damage to property of whatever kind or nature, resulting directly or indirectly, by reason of any act or omission on the part of the Contractor or any of its Subcontractors at any tier in connection with the performance of the Contract.

The Contractor shall be expressly liable for any and all damages to property (including the work site) or injury to person or person(s) (including death) arising out of the inherent nature of work performed by Contractor in this Project.

Contractor agrees for himself and on behalf of his agents, servants, subcontractors, materialmen and employees to defend, indemnify or hold harmless SEPTA from and against any and all claims of any kind or nature whatsoever including but not limited to any action, claim, suit, lien or judgement arising directly or indirectly from any aspect of the Contract and including but not limited to disputes of any kind or nature whatsoever arising out of any claims regarding subcontractors and materialmen at any time and agrees to assume the defense of SEPTA to any such suit at his sole cost and expense.

In claims against SEPTA by an employee of Contractor, its subcontractors at any tier, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation of Contractor shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for Contractor or its subcontractors at any tier, under workers' or workmens' compensation acts, disability benefit acts or other employee benefit acts.

In any claim, suit or action at law or in equity or in any administrative/regulatory proceeding against SEPTA by any employee of Contractor, its subcontractors at any tier, anyone directly or indirectly employed by them or anyone for whose acts they may be liable (all hereinafter in this paragraph referred to as "employees and other persons"), or by any federal, state or local regulatory or administrative agency whether or not on behalf of such employees and other persons, Contractor agrees to be liable for and to defend, indemnify and save harmless SEPTA from and against all liability, cost and expense in such claim, suit or action at law or in equity or administrative/regulatory proceeding arising out of any obligation of SEPTA resulting from Contractor's (and/or subcontractors' work at any tier) work under this contract, either under the Americans with Disabilities Act (and/or any other federal, state and local laws relating to the disabled), the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law (and/or any other federal, state and local laws relating to workers' hours, pay, the environment and working conditions) towards such employees and other persons, or the public.

Exhibit VIII - 4

Contractor agrees to assume the defense of SEPTA to any claim, suit or action referenced in the indemnifications in this Paragraph XIII, at Contractor's sole cost and expense.

XIV. <u>INSURANCE</u>

Contractor shall comply with the Insurance Requirements set forth in Appendix III in this Contract attached hereto and incorporated herein, and shall furnish satisfactory evidence of such insurance simultaneously with the execution and delivery of the Contract. Such insurance shall be maintained by Contractor in full force and effect until the Work has been completed and accepted by SEPTA.

XV. <u>METHOD OF PAYMENT</u>

    A.    To obtain payment of a portion of the Contract Sum, Contractor once service is initiated may submit to SEPTA, not more than once each calendar month, a requisition for payment ("Invoice") for services rendered in the preceding month, in such form and reasonable detail as SEPTA may require. In such requisition Contractor shall:

    1.    Certify that the services described were performed in conformity with the terms of the Contract and that it is entitled to receive the amount specified under the terms of the Contract in accordance with that description.

    2.    Itemize all costs incurred for the requisition period in accordance with Exhibit VI of the Contract, less liquidated damages.

    3.    SEPTA shall pay Contractor only for actual trips provided and documented in accordance with the Contract. No-shows and cancellations shall not be reimbursed.

    4.    SEPTA shall be empowered to withhold payment in an amount equal to the full value of the disputed charges, in the event of a dispute between SEPTA and the Contractor over charges. SEPTA will make payment of the undisputed balances of such invoices, less liquidated damages. Contractor shall provide all documentation required by SEPTA pertaining to the amount in dispute. SEPTA will review such documentation and render its determination of the amount due, if any, to Contractor within thirty (30) days after receipt of all requested documentation. SEPTA's determination of the amount owed, if any, shall be final.

Exhibit VIII - 5

B.  Subject to XV.C., payments, calculated in accordance with XV.A., shall be made within thirty (30) days after approval of a Invoice by the Project Manager.

C.  The parties expressly agree that SEPTA shall not be obligated to make payment to Contractor hereunder if any one or more of the following conditions exists and the parties expressly agree that the below-stated provisions are express conditions subsequent to the payment obligation and that payments under XV.A. of the Contract are made expressly subject to the following limitations:

1.  Contractor is in default of any of its obligations hereunder or otherwise is in default under any of the Contract Documents; and

2.  Contractor has failed to make payments promptly to Contractor's subcontractors or for material or labor used in the Work for which SEPTA has made payment to Contractor.

D.  SEPTA shall have the right to take advantage of any discounts offered by Contractor for prompt payment of full invoiced amount.

XVI. ASSIGNMENT OF RIGHTS:  DELEGATION OF DUTIES

A.  The parties understand that SEPTA may, during the term of the Contract, lose its status as Philadelphia Shared Ride Coordinator.  In such event, the Contract for Shared Ride Services only may be assigned, in whole or in part, at SEPTA's discretion, to the new Philadelphia Shared Ride Coordinator. Contractor herein agrees to this assignment and that it shall continue performance of this Contract on behalf of the new Philadelphia Shared Ride Coordinator.  The parties hereto also understand that in the event the new Philadelphia Shared Ride Coordinator does not agree to an assignment, SEPTA shall have the right, in its sole discretion, to terminate the Shared Ride portion of this Contract only in accordance with Paragraph XVIII of this Contract.

B.  Contractor, however, shall not sell, assign, transfer, or dispose of any interest in the Contract without the prior written consent of SEPTA thereto.  SEPTA shall not be obligated to give such consent.

C.  Contractor shall not delegate any duty to be performed under the Contract without prior written consent of SEPTA thereto.

Exhibit VIII - 6

7133

D.   Any attempt by Contractor to make such assignment or delegation shall give SEPTA the right to terminate the Contract with no further obligation to Contractor or anyone to whom the Contractor has attempted to assign, transfer, or delegate rights or obligations under the Contract.

XVII.    TERMINATION FOR CAUSE

A.   If Contractor fails to remedy to SEPTA's satisfaction the breach or default of any of the terms, covenants, or conditions of the Contract within ten (10) days after receipt by Contractor of written notice from SEPTA setting forth the nature of said breach or default, SEPTA shall have the right to terminate the Contract without any further obligation to Contractor. Any such termination for cause shall not in any way operate to preclude SEPTA from also pursuing all available remedies against Contractor and its sureties for said breach or default.

B.   In the event that SEPTA elects to waive its remedies for any breach by Contractor of any covenant, term or condition of the Contract, such waiver by SEPTA shall not limit SEPTA's remedies for any succeeding breach of that or of any other term, covenant, or condition of the Contract.

XVIII. TERMINATION FOR CONVENIENCE

In addition to any other rights of termination which may exist, SEPTA shall have the right to terminate the Contract for SEPTA's convenience.  Termination notice shall specify the effective date of termination.    Termination for convenience shall create no obligations on the part of SEPTA other than the following:

A.   Payment to Contractor for any Work performed by Contractor in conformity with the Contract Documents, prior to the effective date of termination.

B.   Reasonable termination charges arising out of the termination        of subcontracts and material purchase orders let in connection with the Contract, subject to audit by SEPTA or its representatives.

The total sum to be paid to Contractor under this section shall not exceed the amount of the Contract Sum or any remaining portion thereof for the calendar year in which termination is effective, as reduced by the amount of previous payments.

Exhibit VIII - 7

XIX.  CHANGES

    A.    A Change Order is a written order to the Contractor, signed by SEPTA's Contract Administrator, issued in accordance with SEPTA's standard procedures and, authorized either by its General Manager or by its Board, as appropriate, after the execution of the Contract, which makes a Change in the Work or an adjustment in the Contract Sum or the Contract Time.  A

Change Order shall also be signed by the Contractor if he agrees to the adjustment in the Contract Sum or the Contract Time.  The Contract Sum and the Contract Time may be changed only by Change Order.

    B.    SEPTA hereby reserves the right, at any time, to make additions, deletions or revisions to the Work.  Any such changes will be authorized in writing by Change Order issued by SEPTA and sent to the Contractor who shall proceed to execute the necessary changes.  Increases or decreases in contract process that will result in any change order shall be determined by SEPTA in accordance with the Federal Acquisition Regulation, Part 31.2.  Extensions of time or acceleration of performance by the Contractor as a result of the issuance of the Change Order shall be determined in accordance with Section IX.

XX.  AUDIT AND INSPECTION OF BOOKS AND RECORDS

Contractor shall keep written records in reasonable detail of all the Work performed by it under the Contract.  All written records, reports, work sheets, data and information prepared, generated, or obtained in connection with Contractor's performance of the Work shall be made available during the term of the Contract and for a period of five years thereafter, together with all books and other data or information, in whatever form contained, relating to Contractor's performance under the Contract.  Contractor shall permit the audit and inspection of the aforementioned material by appropriate officers or representatives of SEPTA and any governmental funding agency providing assistance for this Project, including the United States Department of Transportation, the Office of the Comptroller General of the United States, and the Pennsylvania Department of Transportation.

Contractor shall also maintain access for appropriate officers or representatives of SEPTA to all medical test results (including also, body fluid test results), whether in the actual possession of Contractor or of any physicians, medical personnel laboratories or other third parties, and to all other personnel records, whether in the actual possession of Contractor or other parties, of all employees and former employees used in Contractor's work for SEPTA.

Exhibit VIII - 8

Contractor shall obtain the written authorization and agreement of all third parties generating and/or having possession of such medical and other personnel records to keep and maintain such material throughout the term of this contract and for a period of five years thereafter, so as to permit the auditing by appropriate officers or representatives of SEPTA of such medical and other personnel records at any time or times throughout such term and period thereafter. Contractor shall keep on file a copy of all such third parties' agreements and authorizations, and releases from all Contractor employees authorizing SEPTA to obtain and review such records, and provide copies of such agreement and authorization from each third party and copies of such employee releases to SEPTA upon request at any time from SEPTA.

## XXI. CONTRACT SECURITY

The Contractor shall furnish and maintain properly executed Performance Bonds written by a good and sufficient surety and in a form acceptable to SEPTA, in the amount of one hundred thousand dollars ($100,000.00), renewable annually. If any surety shall become insolvent or bankrupt in a technical or equitable sense, or otherwise become unqualified to underwrite these bonds for one hundred thousand dollars ($100,000.00), or the Contract Sum is adjusted so as to exceed the penalties of such bonds, SEPTA may require, or ten (10) days written notice, the Contractor to furnish new or additional bonds from the same or different sureties so as to be fully secured at all times for one hundred thousand dollars ($100,000.00).

## XXII. FEDERAL, STATE AND LOCAL CONTRACT REQUIREMENTS

Contractor shall abide by all requirements attached hereto and made a part hereof in Appendices I and II in this Contract for all the work performed in connection with the Project.

## XXIII. COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS

Contractor shall comply with all applicable laws, ordinances, and regulations of Federal, State and Local governments in effect during the term of the Contract. All material furnished hereunder shall comply with said provisions.

## XXIV.      NOTICES

All notices given by either party to the other shall be effective only if given in writing and sent to the following addresses of the parties, or to such other addresses as may be designated by the parties in writing. Notice shall be effective upon receipt.

Exhibit VIII - 9 Revised 12/21/95

TO SEPTA:
        J. Philip Johnson
        Assistant General Manager - Materiel and Contracts
        Southeastern Pennsylvania Transportation Authority
        1234 Market Street, 11th Floor
        Philadelphia, PA 19107

    TO CONTRACTOR:
        Brian Sommerman - President
        Metro Care, Inc.
        333 Jenkintown Commons
        Jenkintown, PA  19046

XXV.  CLAIM AGAINST SEPTA BOARD OR SEPTA EMPLOYEE
    A.  Contractor shall make no claim against any of the members
    of the SEPTA Board or its officers, servants, agents, or
    employees.

    B.   Third Party Contract Rights

    It is agreed that SEPTA, neither by this clause nor by any
    other provisions in the Contract or other statements prior to
    or contemporaneous with the Contract creates any right or
    expectation in any third party or third parties (including,
    without    limitation,    subcontractors    and    SEPTA    DBE
    subcontractors) enforceable at law or in equity or any other
    proceeding against SEPTA, its officers, board, subsidizers,
    employees, agents or assigns.

XXVI.  GOVERNING LAW

The Contract shall be governed by the laws of the Commonwealth of
Pennsylvania and shall be enforceable in its courts, both state and
federal, located in the City of Philadelphia.

XXVII.   SEPTA  EQUAL  EMPLOYMENT  OPPORTUNITY/AFFIRMATIVE  ACTION
CONTRACTUAL   REQUIREMENT

Contractor shall abide by all requirements attached hereto and made
a part hereof in Appendices I and IV in this Contract for all work
performed in connection with the Contract.

XXVIII. PROJECT FINDINGS

    A. SEPTA shall have the right to use, for any purpose and
    in any manner it deems appropriate, all reports, project
    findings,  and  information  prepared  or  obtained  by
    Contractor in connection with the Project.

    B.  No  reports,  graphics,  or  other  material  produced
    specifically for SEPTA under the Contract shall be the subject
    of an application for copyright or trademark by or on behalf
    of Contractor.

XXIX.    DISPUTES

Disputes arising in the performance of this contract which are not
resolved by agreement of the parties shall be decided in writing by
the authorized representative of SEPTA's Assistant General Manager
- Materiel & Contracts.  This decision shall be final and

Exhibit VIII - 10

conclusive unless within ten (10) days from the date of receipt of its copy, the Contractor mails or otherwise furnishes a written appeal to the Assistant General Manager - Materiel & Contracts. In connection with any such appeal, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its position. The decision of the Assistant General Manager - Materiel & Contracts shall be binding upon the Contractor and the Contractor shall abide by the decision.

## XXX. PERFORMANCE DURING DISPUTES

Unless other wise directed by SEPTA, Contractor will continue performance under the Contract while matters in dispute are being resolved.

## XXXI.    REMOVAL OF EMPLOYEES

Promptly upon SEPTA's request, the Contractor shall remove from activities associated with the Contract any employees whom SEPTA considers unsuitable for the Work.

## XXXII. INDEPENDENT CONTRACTOR

The Contractor's relationship to SEPTA in the performance of the Contract is that of an independent contractor. The personnel performing services under the Contract shall at all times be under the Contractor's exclusive direction and control and shall be employees of Contractor and not employees of SEPTA. The Contractor shall pay all wages, salaries, and other amounts due its employees in connection with the Contract and shall be responsible for all reports and obligations respecting them, such as social security tax, income tax withholding, unemployment compensation, worker's compensation, and similar matters.

## XXXIII. OPERATING AUTHORITY

The Contract and performance of Work hereunder are contingent and expressly conditioned upon the ability of Contractor to provide perform the Work consistent with the laws and regulations of the United States and of the Commonwealth of Pennsylvania, including, but not limited to, operating authority, the maximum hours of service of employees, the safety of operations, and the standards of equipment that may be applicable to the Work. The Contractor shall bear full responsibility to comply with such requirements and will defend, protect, and hold harmless SEPTA, its board members, officers, agents, employees, and subsidizers, in the event of any civil, criminal, or administrative action(s) or proceeding(s) arising out of or related to any violation(s) or alleged violation(s) by the Contractor of such federal and Commonwealth requirements. Furthermore, it is understood and agreed by Contractor that any permits, licenses, or authority utilized or secured to operate the service shall not be considered an asset of the Contractor in any negotiations resulting from termination or any condemnation action involving the parties. Contractor specifically covenants and agrees that it shall not claim or

Exhibit VIII - 11

7138

initiate any legal action to establish that SEPTA is obligated to purchase or condemn such permits, licenses, or authority and equipment utilized or secured for services performed in connection with the Contract.

XXXIV. OPTION TO EXTEND CONTRACT TERM

A. SEPTA may unilaterally extend the term of the Contract by one (1) additional year by written notice to Contractor prior to the expiration of the Contract. If feasible, SEPTA shall give the Contractor a preliminary
written notice of its intent to extend at least ninety (90) days before the Contract expires. SEPTA's failure to provide preliminary written notice shall not affect the validity of any exercise of the option to extend the term of the Contract.

B. If SEPTA exercises the option, the total duration of the Contract, including the option period, shall not exceed four (4) years.

XXXV. SUBCONTRACTORS

A.   Definition

1.   A subcontractor is an individual or organization who enters into a Contract to furnish labor or materials or apparatus in connection with the Work directly or indirectly for or in behalf of the Contractor and whether or not in privity of contract with the Contractor.

The term "Subcontractor" is referred to throughout the Contract documents as if singular in number and neuter in gender and means a Subcontractor or its authorized representative.

2.   Nothing contained in the Contract Documents shall create any contractual relationship between SEPTA and any Subcontractor.

B.   Award of Subcontracts

1.   If, after the award, SEPTA refuses to accept any Subcontractor approved by it prior to award, the Contractor shall promptly submit an acceptable substitute and the Firm Fixed Price(s) set forth in Cost Proposal shall be increased or decreased by the difference in cost occasioned solely by such substitution, and an appropriate Change Order shall be issued. However, no increase in the Firm Fixed Price(s) set forth in Cost Proposal shall be allowed for any such substitution unless the Contractor has acted in good faith promptly and responsively in submitting a name with respect thereto after notice is given that a proposed Subcontractor is unacceptable.

2.   Any new additional or substituted Subcontractor proposed to be used by Contractor after the award shall be subject to SEPTA's prior written approval.

Exhibit VIII - 12

3.   The Contractor shall not make any substitution for any Subcontractor or for any person or for any organization which has been previously accepted by SEPTA as part of the Contract unless and until requested to do so by SEPTA and/or unless such substitution is expressly approved by SEPTA in writing.

4.   Within ten (10) days of receipt of written request from SEPTA's Project Manager the Contractor shall furnish to SEPTA copies of all contracts, bonds, insurance certificates and other similar documents between Contractor and any Subcontractor for the Work.

C.   Subcontractor Relations

The Contractor shall deal with each Subcontractor according to the terms and conditions of a written agreement between the Contractor and such Subcontractor.  Said written agreement shall not be inconsistent with any term or condition of the Contract, shall include all terms and conditions required by the Contract and shall in every respect protect SEPTA's interests.

In the absence of good and sufficient reasons, within twenty (20) days of the receipt of payment from SEPTA by the Contractor, the Contractor shall pay each Subcontractor with whom he has contracted its earned share of the payment the Contractor received.

With regard to any claim or dispute with respect to payment of a Subcontractor or supplier at any tier, Contractor expressly agrees to defend, indemnify and hold SEPTA harmless in the event any suit is brought on account of a dispute between any of the parties including but not limited to subcontractors, suppliers and materialmen and in particular, Contractor shall assume the defense affirmatively at its sole cost whenever such suit is brought in any jurisdiction.

C.   Special Requirements for DBE Subcontractors

1.   Upon receipt of Notice to Proceed from SEPTA, Contractor shall enter into written agreement(s) with DBE(s) listed in its DBE Participation Schedule. Copies of Contractor's executed agreement(s) with DBEs shall be provided to SEPTA's Office of Civil Rights by Contractor immediately upon execution.

2.   Contractor shall submit a work schedule outlining when the DBE subcontractor(s) will commence and complete services on the Project, at such times as prescribed by SEPTA's Office of Civil Rights.

3.   Contractor shall submit periodic reports of the status of agreement(s) with DBEs in such form and manner, and at such times, as prescribed by SEPTA's Office of Civil Rights. Of particular interest are actual contract expenditures to DBEs by Contractor. The DBE Business Utilization Report and the DBE Invoice Payment Report

Exhibit VIII - 13

(see samples attached to the Contract) shall be submitted with each Invoice.

4.  Contractor shall immediately notify SEPTA's Office of Civil Rights in writing of any situation in which Contractor within twenty (20) days of receipt of payment from SEPTA fails to pay each DBE subcontractor the DBE earned share of the payment Contractor received. Such notification shall set forth, with appropriate documentation, the full details of the reasons upon which Contractor based its actions.

5.  Please note that the requirements set forth in Section XXXV. b. above with regard to subcontractors must also be complied with herein.  In the event that Contractor wishes to modify its DBE Participation Schedule, then Contractor must notify in writing SEPTA's Office of Civil Rights and request approval for the modification. This shall include any changes to items or work, material, services and/or DBE firms which differ from those identified on the latest DBE Participation Schedule for the Contract approved by SEPTA's Office of Civil Rights. Contractor must provide SEPTA's Office of Civil Rights with any and all documents and information as may be requested with respect to the requested modification. If the modification involves a substitution and if it is approved by SEPTA's Office of Civil Rights, then Contractor must make every reasonable effort to replace that DBE firm with another DBE firm. Such efforts must be documented to the satisfaction of SEPTA's Office of Civil Rights in the event Contractor is unable to contract with another DBE firm. The substitute DBE firm must be certified by SEPTA's Office of Civil Rights in order for Contractor to receive credit towards fulfilling its DBE Goal for the Contract.

XXXVI. <u>USE OF MINORITY OWNED BANKS</u>

The Contractor is encouraged to utilize the services of minority owned banks.

Exhibit VIII - 14

7141

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by the undersigned duly authorized officers, under seal, as of the day and the year first above written.

ATTEST·

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY

_Mary C Donahue_
(SECRETARY)

_Louis J. Gambaccini_
LOUIS J. GAMBACCINI
GENERAL MANAGER

ATTEST:

CONTRACTOR:    METRO CARE, INC.

_Annemarie E Malcolm_
(SECRETARY OR TREASURER)
(Assistant Secretary)

BY
PRESIDENT OR VICE PRESIDENT

_Brian D Sonnenborn_
(please type name)

(SEAL)

APPROVED AS TO FORM:

BY: _S. Roy G Kanveso_ Esq.
General Counsel

Exhibit VIII - 15

7142

# EXHIBIT B

Issued by the

# UNITED STATES DISTRICT COURT

EASTERN                                    DISTRICT OF _____PENNSYLVANIA_____
DOUGLAS EL

## SUBPOENA IN A CIVIL CASE

V.

CASE NUMBER: [1]

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY

TO:    Metro Care Inc.
       3111 Grays Ferry Ave.
       Philadelphia, PA 19146

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Non-Party Subpoena Document Requests.

| PLACE  Spector Roseman & Kodroff | DATE AND TIME |
|---|---|
| 1818 Market Street, Suite 2500, Philadelphia, PA 19103 | February 2, 2004   10am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | January 12, 2004 |

| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | David J. Cohen, Spector Roseman & Kodroff |
|---|---|
| (215) 496-0300 | 1818 Market Street, Suite 2500, Philadelphia, PA 19103 |

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | *1-14-04* | *3111 Grays Ferry Ave Phila Pa* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| *Joseph Creighton* | *Who accepted "on" Behalf of Metro Care* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Jim Connell* | *Process Server.* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___*1-14-04*___
DATE

*Jim Connell*
SIGNATURE OF SERVER

*First Class Subpoena*
AO *1420 Walnut St*
*Suite 718*
*Phila Pa 19102*

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)   (A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)   (A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance,

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## NON-PARTY SUBPOENA DOCUMENT REQUESTS [1]

**Subpoena Request 1.**
All documents[2] related to any SEPTA policy concerning the application, hiring or termination of employees with past criminal convictions.

**Subpoena Request 2.**
All contracts for the provision of paratransit services between you[3] and SEPTA.

**Subpoena Request 3.**
All documents related to the number and identity of people with past criminal convictions you refused employment as a paratransit driver.

**Subpoena Request 4.**
All documents related to the number and identity of people with past criminal convictions you hired for the position of paratransit driver.

**Subpoena Request 5.**
All documents related to the number and identity of people with past criminal convictions you terminated from the paratransit driver position.

**Subpoena Request 6.**
All documents related to the racial composition of people who applied to work for you as a paratransit driver.

**Subpoena Request 7.**
All documents related to the racial composition of people you hired to work as a paratransit driver.

**Subpoena Request 8.**
All documents related to the racial composition of people you terminated from the paratransit driver position.

**Subpoena Request 9.**
All EEO-1 forms you filed from January 1, 1993 to the present.

---

[1] Each of these Requests seeks documents from the time period January 1, 1993 to the present.

[2] For purposes of this Subpoena, the term "document" includes, but is not limited to: all inter- and intra- office communications, correspondence, memoranda, notes, reports, summaries, messages, records, minutes, studies, contracts, agreements, press releases, brochures, pamphlets, circulars, bulletins, notices, charts, e-mail, computer disks, and print-outs of information stored or maintained by electronic data processing or word processing equipment. This definition also includes all preliminary versions, drafts, revised versions, duplicates and copies of any of the foregoing documents that have any non-conforming notes, changes or other markings.

[3] For purposes of this Subpoena, the term "you" is used in the broadest possible sense and includes, without limitation, the non-party on whom this Subpoena has been served, all of its divisions, subsidiaries, affiliates, officers, employees, representatives, and all other persons or entities acting on its behalf.