IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS EL | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| v. | : | No. 02CV3591 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | JURY TRIAL DEMAND |
| TRANSPORTATION AUTHORITY | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION**

**TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, Southeastern Pennsylvania Transportation Authority (hereafter "SEPTA") submits the within Memorandum of Law in Opposition to Plaintiff's Motion to Compel SEPTA to produce documents in response to requests that were served on March 18, 2004. For the reasons that follow, Plaintiff's motion should be denied.

**I.      INTRODUCTION**

Plaintiff commenced this action by filing a "Class Action" Complaint against SEPTA on June 4, 2002. On or about November 13, 2002, Plaintiff amended his complaint. Therein, Plaintiff alleges, among other things, that SEPTA violated Title VII of the Civil Rights Act of 1964, as amended, when Plaintiff was denied employment as a paratransit driver for King Paratransit Services ("King"), a contractor with whom SEPTA previously contracted for the provision of paratransit services. It is undisputed that Plaintiff was denied employment with King because of a

substandard criminal history. It is also not disputed that the paratransit agreement between SEPTA and King provided that Plaintiff could not be used as a paratransit driver by King in SEPTA paratransit service because of his criminal history.

On December 9, 2002, SEPTA filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint. Therein, SEPTA denied liability to Plaintiff or any member of the class that he purports to represent.[1]

On January 14, 2003, this Court entered a Scheduling Order. Therein, the Court directed that all discovery was to be completed by July 14, 2003. Motions for summary judgment were required to be filed no later than August 11, 2003. Notwithstanding this deadline, Plaintiff waited until June 11, 2003 to serve initial discovery requests on any of the third party defendants.

On August 4, 2003, this Court entered an Order revising the January 14, 2003 Scheduling Order at Plaintiff's request. Significantly, the Court extended the discovery deadline until October 14, 2003, and extended the period for filing pretrial motions to November 11, 2003. In accordance with this Order, SEPTA filed its timely Motion for Summary Judgment on November 12, 2003.[2]

Following the filing of SEPTA's Motion for Summary Judgment and the expiration of the discovery deadline, a conference call with counsel for SEPTA and counsel for Plaintiff was held

---

[1] On December 23, 2002, SEPTA filed Third Party Complaints against each of the paratransit providers with whom it had contracts for paratransit services during the period 1991 to present. The basis for the third party actions was a provision in the paratransit contracts that required that all paratransit providers indemnify and hold SEPTA harmless for any claims that arise in the performance of the paratransit contracts. The Third Party Complaints were dismissed by the Court by Order dated December 10, 2003.

[2] The District Court was closed on November 11, 2003 in observance of Veteran's Day.

by the Court on November 14, 2003 at the request of Plaintiff. At that time, Plaintiff requested that the discovery deadline be extended – this time to March 15, 2004. Plaintiff claimed that he needed more time to respond to SEPTA's then pending motion for summary judgment. In reality, Plaintiff took no meaningful discovery between June 11, 2003 and November 14, 2003 and let this matter languish. SEPTA opposed Plaintiff's request.

This Court agreed to extend the discovery deadline during the conference call, but made clear to the parties that no further extensions of time would be granted. Thereafter, on November 25, 2003, an Amended Scheduling Order was entered. There, the Court stated that the discovery deadline would be extended to March 15, 2004 and that Plaintiff was required to submit his opposition to SEPTA's pending motion for summary judgment on that day as well.

In early February 2004, Plaintiff requested that SEPTA agree to yet another extension of the discovery deadline so that third party discovery could be completed. Recognizing the difficulty of getting the paratransit contractors to provide information to the parties, SEPTA advised counsel for Plaintiff that it would not oppose any motion made by Plaintiff to extend the discovery deadline to complete third party discovery only.[3] SEPTA's position was memorialized in a letter to Plaintiff dated February 11, 2004. In relevant part the letter stated as follows: "[r]egarding your request for an extension of the discovery deadlines, <u>SEPTA will not oppose any such request to the extent that it is limited to completing third party discovery. You are free to make that representation to the Court in your moving papers</u>." A copy of that letter is attached hereto as Exhibit 1.

---

[3]    SEPTA interpreted the term "third party" to mean the providers with whom it contracted to provide paratransit service to the handicapped and disabled during the alleged class period.

Instead of filing a motion to extend the discovery deadline as discussed above, Plaintiff requested that SEPTA participate in a joint stipulation for the purpose of requesting that the discovery deadline be extended for completing third party discovery. Because SEPTA also needed certain documents for its experts that had yet to be produced, it agreed and a joint stipulation was filed and approved by the Court on February 26, 2004 (hereafter the "Stipulation").

The Stipulation provided clearly and unambiguously that the discovery deadline would be extended to allow the parties to complete third party discovery only. Specifically, the Stipulation states, in relevant part, as follows: "[g]iven the ongoing difficulties encountered in obtaining discovery from third parties, the parties have stipulated and agreed, pending the approval of the Court, that Plaintiff may have a ninety (90) day extension (through June 14, 2004), to file his response to the motion, and complete third party discovery." Stipulation at ¶ 7 (emphasis added). Moreover in paragraphs 3 to 6 of the Stipulation, the parties discussed only the difficulty that Plaintiff was having securing discovery from third party contractors.

Significantly, there is no mention of any need for additional discovery being taken from SEPTA and SEPTA would never agree to such an extension given the length of time that Plaintiff has had its motion for summary judgment. To be sure, the Stipulation notes in relevant part that Plaintiff "already issued the discovery it required of Defendant . . ." Stipulation at ¶ 8.

Thus, the Stipulation was consistent with SEPTA's prior representation that it would only agree to an extension for the purpose of allowing Plaintiff to complete third party discovery. See Exhibit 1. In short, there can be no serious dispute as to what the parties intended by the Stipulation and Plaintiff's argument that SEPTA somehow agreed to an extension of time so that

Plaintiff could take even more onerous discovery from it is simply ludicrous.[4]

What's more, this Court recently denied SEPTA's motion to quash what it believed to be to be untimely subpoenas issued to Jack Challenger and Robert Corressel, both former employees of SEPTA, only because it concluded that they were third parties for purposes of discovery.

Notwithstanding the Stipulation, Plaintiff served on SEPTA untimely document requests which are the subject of his latest motion. This time, there is no question that the discovery at issue was directed to SEPTA. There is also no dispute that the discovery was served on March 18, 2004.

### III. ARGUMENT

#### A. THE DISCOVERY DEADLINE HAS EXPIRED WITH RESPECT TO SEPTA.

In support of his motion, Plaintiff first asserts that it never "agreed" to stop taking discovery from SEPTA. Plaintiff's Motion at ¶ 8 and Plaintiff's Memo at 3. Furthermore, Plaintiff asserts that he should not be precluded at this stage from taking discovery because SEPTA has engaged in ongoing discovery since the expiration of the discovery deadline. Plaintiff's Memo at 3-4. Plaintiff is wrong on both counts and has misled this Court by suggesting that SEPTA is taking ongoing discovery from Plaintiff.

First, it is not for Plaintiff to decide when the period for discovery expires. Stated another way, it is irrelevant whether Plaintiff agrees or does not agree to "stop seeking discovery from

---

[4] It should be noted that SEPTA has spent countless man hours having to respond to Plaintiff's onerous and redundant discovery requests in this case. Thus, SEPTA has responded to four sets of document requests, produced over 12,000 pages in documents, responded to almost 50 interrogatories and produced, to date, 5 current SEPTA employees for depositions. Depositions of 3 former SEPTA employees and a representative from Delta Services are scheduled in the next three weeks.

SEPTA . . . ." Plaintiff's Memo at 3. This Court made clear that the discovery deadline for so-called "Merits Discovery" from SEPTA ended on March 15, 2004. This deadline has never been extended by any Order from this Court and the Stipulation to which Plaintiff refers speaks only about discovery from third parties and the date that Plaintiff's response to SEPTA's pending motion for summary judgment is due.[5]

Plaintiff's reliance on language in the Stipulation to the effect that discovery between SEPTA and Plaintiff is ongoing also is misplaced inasmuch as that language merely recognized the fact that certain issues that arose from timely served discovery had not been resolved and that certain additional depositions of SEPTA witnesses including Carla Elliot (scheduled for March 4, 2004) and Frank Brandis (scheduled for March 10, 2004) had not been completed. In Stevens v. Lazzarini, 2002 WL 1584277 *4 (S.D. Ohio), the Court noted that the words "discovery is on-going in this case" could be interpreted in the manner suggested by Plaintiff here. Moreover, it must again be emphasized that Plaintiff represented to SEPTA at the time the Stipulation was signed and to this Court that "Plaintiff [had already] issued the discovery it required of Defendant…" See Stipulation at ¶ 8.

Stated simply, if the parties had intended to extend the discovery deadline for all purposes, they would have so stipulated. The fact that the parties carved out third party discovery forecloses Plaintiff's argument that the parties actually meant to extend the discovery deadline for all purposes. The legal maxim inclusio unius est exclusio alterius (the inclusion of one thing

---

[5] The proper procedure for seeking an extension of time is by filing a Rule 6(b) Motion with the Court. Plaintiff did not seek an enlargement of time here and was well aware of the fact that SEPTA would never agree to any further extensions of the discovery deadline for discovery directed at it. See Exhibit 1.

suggests the exclusion of all others) is particularly appropriate here. <u>Dugan v. Coastal Industries</u>, 95 F. Supp. 2d 481, 484 (E.D. Pa. 2000). Thus, the inclusion of third party discovery only in the Stipulation only confirms the obvious - - the deadline for taking discovery from SEPTA expired on March 15, 2004.

In short, Plaintiff's assertion that he should be able to proceed because the Stipulation "does not contain any language that limits or precludes Plaintiff from seeking further discovery from SEPTA" is incongruous. The issue is not whether there is limiting language, but whether there is an Order from the Court pursuant to Rule 6(b) of the Federal Rules of Civil Procedure extending the time to take additional discovery. As Plaintiff well knows, there is not.

What's more, there can be no doubt that a litigant may not take discovery after the expiration of the discovery deadline. In <u>Leach v. Quality Health Services, Inc.</u>, 162 FRD 40 (E.D.Pa. 1995), this Court held that a subpoena that was issued only ten days after the discovery deadline should be quashed. Similarly, in <u>Mines v. City of Philadelphia</u>, 1994 WL 376914 (E.D.Pa. 1994), the court held that subpoenas that were issued after the discovery deadline established by the court in its scheduling order should be quashed. Significantly, the <u>Mines</u> Court observed that it would modify a scheduling order upon good cause if the party seeking the extension can "demonstrate that a more diligent pursuit of discovery was impossible." <u>Id</u>. at * 3. (citing <u>McElyea v. Navistar International Transportation Corp.</u>, 788 F.Supp. 1366, 1371 (E.D.Pa. 1991), <u>aff'd without opinion</u>, 950 F.2d 723 (3d Cir. 1993)). Here, Plaintiff cannot show any reason for not completing discovery from SEPTA in a timely manner and its motion to compel responses to untimely discovery should be rejected outright. See <u>Laborer's Pension Fund v. Blackmore Sewer Construction</u>, 298 F.3d 600, 605 (7th Cir.) (party has no obligation to respond

to untimely requests for admission); <u>Trouver v. Healthcare Acquisition, Inc.</u>, 2000 WL 1689712(E.D. Pa. 2000) (noting an Order granting Defendant's Motion for a Protective Order on the grounds that plaintiff's requests for documents was untimely); <u>Beller v. Credit Alliance</u>, 106 FRD 557 (N.D. Ga. 1985) (motion to compel responses to untimely discovery is improper).

As demonstrated above, the discovery deadline with respect to SEPTA expired on March 15, 2004. Plaintiff never sought, nor did the parties ever agree, to extend the discovery deadline except as specifically set forth in the Stipulation. Moreover, as discussed below, Plaintiff cannot offer any reasonable explanation as to why he could not timely serve the document requests that are at issue now.

Not to be outdone, Plaintiff next contends that SEPTA has continued to engage in discovery after the deadline, apparently asserting that SEPTA has waived the right to object to untimely discovery. However, Plaintiff neglects to advise the Court that the documents that were produced by SEPTA after March 15, 2004, were in response to timely served discovery requests. Indeed, Plaintiff even agreed to provide SEPTA with additional time to respond to this discovery. <u>See</u> Exhibit 2. SEPTA's so-called discovery requests that were issued on March 31, 2004 and April 27, 2004 involved reminders to Plaintiff to supplement his responses to discovery as he is required to do under the Federal Rules of Civil Procedure and to produce Plaintiff's tax returns. <u>See</u> Exhibit 3. To date, Plaintiff has not produced this information, most likely because it does not exist. The request for production of the tax returns was initially made in June 2003.

As for the deposition of Ms. Spicer, SEPTA agreed not to object Ms. Spicer's deposition because efforts to schedule this deposition were ongoing before the March 15, 2004 deadline. <u>See</u> Exhibit 4. In any event, this Court has already held that former SEPTA employees are third

8

parties for the purposes of discovery so that SEPTA has no basis for objecting to this deposition. Thus, to the extent that Plaintiff is suggesting that SEPTA somehow waived the right to object to untimely discovery, he is wrong.

### B. PLAINTIFF'S DOCUMENT REQUESTS WERE NOT TIMELY SERVED BECAUSE OF HIS LACK OF DILIGENCE.

Plaintiff next argues that he should be allowed the discovery sought by the Brandis Requests because of information that he allegedly first obtained at Mr. Brandis' deposition on March 10, 2004. Plaintiff's Memo at 1. This also is not correct and Plaintiff's failure to attach any evidence to support this representation to this Court is telling.

First, it must be emphasized that it is Plaintiff who waited until five (5) days before the close of discovery to take Mr. Brandis' deposition. Thus, even if it were true that Mr. Brandis testified about matters that involved new and relevant evidence, Plaintiff has only himself to blame for not filing a timely motion to enlarge the discovery period with respect to this so-called new evidence. Thus, Plaintiff had five days to move for an extension of time, but wisely chose not to do so for the reasons described below.

Stated simply, Plaintiff incorrectly states to the Court that it was newly discovered evidence that came to light at Mr. Brandis' deposition which led to the need for the documents sought by the Brandis Requests. The first 2 Brandis Requests seek information about field audits that SEPTA completed at its paratransit locations. Plaintiff knew about these audits no later than January 30, 2004. Indeed, Warren Montague testified on January 30, 2004, that SEPTA completed audits of drivers records including reviewing criminal record information. Montague Dep. at 117; attached hereto as Exhibit 5. The paratransit contracts which were first produced in

May 2003 also contain provisions which give SEPTA the right to inspect its contractors files. A copy of SEPTA's contract with King Paratransit was attached to its motion for summary judgment that was filed with this Court in November 2003. Thus, it is absurd for this Plaintiff to suggest to the Court that it first learned about field audits of driver records on March 10, 2004.

      Brandis Requests 3, 4, 5, 7, and 8 relate to files that SEPTA maintains for paratransit drivers employed by third party contractors.[6] Information related to SEPTA driver files was first produced in this case in May 2003 when a list of individuals who were denied employment with paratransit providers because of a substandard criminal history was sent to Plaintiff. See Exhibit 6. This document was shown to nearly every SEPTA witness that has been deposed in this case including Mr. Montague. Montague Dep. at 157-159. Furthermore, Mr. Montague advised Plaintiff that the document was generated by SEPTA's contract compliance group. Id. Richard Krajewski, another SEPTA employee, advised Plaintiff that the list most likely came from SEPTA's driver files at his deposition on February 9, 2004. Krajewski Dep. at 122-123; attached hereto as Exhibit 7. Finally, counsel for Plaintiff was advised on November 25, 2003 that SEPTA maintained records for paratransit drivers and that the list previously produced in May 2003 was a condensed version of another list. See Exhibit 8. The bottom line is that Plaintiff knew or should have known about the existence of this information by no later than November 25, 2003.

---

[6]     In request No. 6, Plaintiff seeks documents related to SEPTA's consideration of arrests records in determining whether to remove a paratransit driver. This request was clearly made for the purpose of harassing SEPTA because the paratransit contracts that were produced months ago state how arrest records are used. Moreover, Mr. Brandis made clear at his deposition that SEPTA has never denied employment to anyone as a paratransit driver in SEPTA service because of an arrest record. Brandis Dep. at 47-48; attached hereto as Exhibit 9. Finally, all information concerning criminal records (including arrests) for paratransit drivers and hiring decisions for paratransit drivers in SEPTA service have already been produced.

Brandis Request Nos. 9, 10 and 11 involve Delta Services. Information concerning Delta Services was disclosed for the first time at Mr. Krajewski's deposition on February 9, 2004. Krajewski Dep. at 98. What's more, SEPTA produced its entire file for Delta Services related to its work for SEPTA on the scope of services section of the paratransit contracts in response to a timely request made by Plaintiff. See Exhibit 10. These subsequent, untimely requests for Delta Services information are not only redundant of the prior Krajewski Document Requests, but underscore the bad faith that has been exhibited by counsel throughout this litigation.[7] Indeed, Counsel had the entire Delta file in his possession 6 weeks before filing this frivolous motion. Not surprisingly, no mention of this fact made its way into Plaintiff's moving papers either.

Brandis Document Request Nos. 12, 13 and 14 seek information related to paratransit contracts and the dates that SEPTA commenced paratransit work in Philadelphia and the counties surrounding Philadelphia. These requests certainly did not relate to any information that was first gleaned at the deposition of Frank Brandis on March 10, 2004. What's more, Plaintiff has been advised over and over again that all contracts that could be located (which indicate not only dates but their geographic scope) were provided including those involving the performance of paratransit services in Philadelphia and it surrounding counties.

Finally, Brandis Document Request No. 15 also does not seek information gleaned from newly discovered evidence at the Brandis deposition. Moreover, Plaintiff has been numerous times advised that information relating to any meetings that were held involving criminal records were produced or could not be located after a reasonable search.

---

[7]   On May 11, 2004 and May 12, 2004, Plaintiff served two sets of Requests for Admission consisting of 573 numbered request 5. See Exhibit 11. Plaintiff cannot possibly justify the need for serving this onerous discovery on SEPTA almost two months after the discovery deadline has expired.

As the foregoing discussion makes clear, Plaintiff's representation to this Court that it needs additional records from SEPTA as the result of newly discovered evidence is preposterous. In short, Plaintiff's failure to timely seek discovery sought by the Brandis Document Requests can be attributed only to his own neglect. Accordingly, this Court should deny the motion.

### C. MOST OF THE INFORMATION THAT PLAINTIFF SEEKS IS IRRELEVANT AND ALL RELEVANT INFORMATION HAS ALREADY BEEN PRODUCED.

Nowhere in Plaintiff's motion to compel does he even attempt to address the numerous other objections raised by SEPTA with regard to the Brandis Document Requests. Instead, in typical conclusory fashion, Plaintiff states that the information sought is relevant. Thus, Plaintiff never explains how or in what manner the information sought by the Brandis Requests is relevant to the claims and defenses asserted by the parties in this action. For this reason alone, the motion should be denied.

In actuality, all information that SEPTA has that could be located after a reasonable search and that is relevant to this case has already been produced. Thus, among other things, SEPTA has produced all of its contracts with paratransit providers, all information that it maintained in its files regarding individuals with criminal records including arrest records who applied with paratransit providers, SEPTA's EEOC file, SEPTA's Delta Services file (although this information is not relevant either), documents related to the origination of the criminal conviction policy, documents related to the reasons for the criminal conviction policy and SEPTA's business necessity defense, documents related to SEPTA's internal hiring policy, records relating to David DeSouza, the individual who brutally raped Lisa Pokalsky, and records related to Michael Graham and Michael Donaldson.

Plaintiff's latest requests directed at audit files, driver's license records, motor vehicle reports and SEPTA's entire paratransit driver database (and software) contain no additional data that have to do with whether Mr. El was lawfully denied employment with King Paratransit because of his conviction for murder. Nor do these additional records have anything to do with the class that Mr. El purports to represent. Indeed, as noted above, all of the information that relates to criminal records for paratransit drivers which are subsets of the audit files, driver files and paratransit driver database that Plaintiff now seeks have already been produced.

Producing every driver's licenses and MVR report on every driver that SEPTA has a file for would also subject SEPTA to undue burden and expense. SEPTA maintains over 1,000 driver files. To produce this information, each file would have to be examined to ascertain whether it contained information related to drivers' licenses and motor vehicle reports. Before SEPTA is put to this kind of unnecessary expense, Plaintiff should at least be required to explain why this information is even needed.

## IV. <u>CONCLUSION</u>

Plaintiff has been given sufficient time to complete discovery against SEPTA. Indeed, SEPTA's motion for summary judgment has been in Plaintiff's possession now for over six months. It is time that an end be put to this litigation and that Plaintiff be required to respond to SEPTA's pending motion and move for class certification.[8] For all of the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully submitted,

---

[8]   SEPTA intends to oppose any motion made by Plaintiff to certify a class in this case, and will request that this Court strike from the Amended Complaint all class action allegations at the appropriate time.

                                                                _____  
                                                                Robert J. Haurin  
                                                                SAUL H. KRENZEL & ASSOCIATES  
                                                                42 South 15th Street, Suite 800  
                                                                Philadelphia, PA 19102  
                                                                (215) 977-7230

Dated: May 21, 2004