IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS EL | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 02CV3591 |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : | JURY TRIAL DEMAND |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
EMERGENCY MOTION FOR SANCTIONS**

Southeastern Transportation Authority ("SEPTA"), submits the within memorandum of law in support of its emergency motion for sanctions.

**I.   INTRODUCTION**

On July 16, 2004, SEPTA received the report of William B. Fairley, PHD. Dr. Fairley is a statistician who was engaged by Plaintiff to offer an opinion on whether the criminal conviction policy at issue in this matter has a disparate impact on African Americans and Hispanics. Upon receipt review of this report, SEPTA determined that it required Dr. Fairley's deposition to prepare its Amended Motion for Summary Judgment which was then due on August 16, 2004. The following week, SEPTA contacted counsel for the purpose of scheduling a date for Dr. Fairley's deposition. When SEPTA did not hear back from Plaintiff in a timely manner, SEPTA unilaterally noticed the deposition of Dr. Fairley on July 27, 2004 and attached to the notice a document rider.

Since that time, SEPTA has been unable to get near Dr. Fairley. Indeed, as of the date of this motion, Plaintiff has not confirmed that Dr. Fairley will appear for a deposition on the new date that was selected by SEPTA despite the fact that this deposition was noticed on August 12, 2004. What's more, Plaintiff has not produced a single document that is responsive to the document rider attached to the original notice of deposition. Instead, it has asserted that certain documents have already been produced, others cannot be produced until September 2, 2004, he has no obligation to produce records which SEPTA can obtain from a website and still other documents upon which Dr. Fairley relied over which he asserts a "core" attorney work product privilege.

SEPTA is back to square one when it began the process of attempting to ascertain the basis for Dr. Fairley's conclusions in this case. Indeed, no progress has been made since this Court conducted a conference call with the parties on August 12, 2004. SEPTA still has no firm date for a deposition for Dr. Fairley and has no responsive documents. On August 12, 2004, this Court warned the parties that the kind of gamesmanship that Plaintiff is still engaging in would no longer be tolerated.

## II.    STATEMENT OF FACTS

On July 27, 2004, SEPTA first noticed the deposition of Dr. Fairley. Attached to the notice was a document rider which requested that Plaintiff and Dr. Fairley produce the records that he relied upon, reviewed and created in connection with his engagement. In addition, SEPTA sought the production of workpapers, calculations and data Compilations created or prepared by Dr. Fairley or his staff. Exhibit 1. The date selected for the deposition was August 6, 2004. Id.

Counsel for Plaintiff notified SEPTA by letter that Dr. Fairley was unavailable for a

deposition between August 6, 2004 and August 10, 2004. Counsel suggested that the deposition be held on August 17, 2004 or August 18, 2004 which was after the date that SEPTA's Amended Motion for Summary Judgment was due to be filed. See Exhibit 2.

Because the dates offered by counsel for Plaintiff were after the date set by the Court for SEPTA to file its Amended Motion for Summary Judgment, SEPTA agreed to take the deposition of Dr. Fairley on August 17, 2004 provided that Plaintiff agree to a 10 day extension for the filing of its Amended Motion for Summary Judgment and the submission of its expert reports and CVs. Exhibit 3.

On August 5, 2004, SEPTA noticed the deposition of Dr. Fairley for August 12, 2004 because it did not receive any response to its request for a 10 day extension of the aforementioned deadlines. Exhibit 4. Later that day and after he received the faxed notice, counsel for Plaintiff notified SEPTA that it was now counsel for Plaintiff who was unavailable for a deposition between the dates of August 9, 2004 and August 12, 2004. Exhibit 5.

The parties subsequently agreed that the deposition would take place on August 17, 2004. It was understood that the documents set forth in the notice of deposition would be produced on or before that time. In reliance on these representations, SEPTA filed a motion to extend the case deadlines by ten days so that its Amended Motion for Summary Judgment would be due on August 26, 2004 which would give it sufficient time to review the report of Dr. Fairley and his deposition transcript. This motion was filed on August 9, 2004 and was not opposed by Plaintiff. This Court granted SEPTA's motion on August 10, 2004.

However, Plaintiff's shenanigans continued. On August 10, 2004, Plaintiff advised SEPTA for the first time that it did not intend to even respond to the document rider until 30 days after the date that it was served which would be August 26, 2004 - - the date that SEPTA's Amended Motion for Summary Judgment was due.

Then, SEPTA immediately filed an emergency motion to compel. This Court conducted a conference call with the parties on August 12, 2004. During the conference call, this Court advised Plaintiff that it must produce the records that were requested by SEPTA in the document rider and that it had no right to withhold documents that its expert relied upon in formulating his opinions. This Court also made clear that SEPTA had the right to conduct a deposition of Dr. Fairley.

Following the conference call, this Court entered an Order dated August 12, 2004 again extending the deadlines in this case so that SEPTA would have the opportunity to review the records relied upon and/or created by Dr. Fairley in connection with his expert report, conduct his deposition and file its amended motion for summary judgment which is now due on September 27, 2004.

SEPTA immediately noticed the deposition of Dr. Fairley on August 12, 2004 for September 10, 2004 so that it would have sufficient time to review the documents that are responsive to the document rider in advance of his deposition and have sufficient time to review the transcript to complete its amended motion for summary judgment. See Exhibit 6. Eleven days later, counsel for Plaintiff, Wayne Ely, Esquire, requested that the deposition for Dr. Fairley be continued until after September 15, 2004. Mr. Ely explained that he would be on vacation until that time, but that Mr. Cohen, his co-counsel would be available. SEPTA did not agree to move the deposition at that time because of the impending deadlines.

On August 26, 2004, Plaintiff served on SEPTA a cover letter and its written responses and objections to the documents requested in the document rider that was served on Plaintiff thirty days earlier. A copy of the cover letter and response is attached hereto as Exhibit 7. Not a single document was produced by Plaintiff at that time. What's more, Plaintiff raised for the first time Dr. Fairley's possible unavailability for a deposition on September 10, 2004. Id. Thus, the cycle of witness and counsel unavailability continued.

In his response to the document requests, Plaintiff stated that certain documents would not be produced because Plaintiff believed that they were already in SEPTA's possession. Exhibit 7 at 3. When SEPTA explained that the computer print-outs referred to in Plaintiff's response were not in his possession, Plaintiff's delay tactics continued. Thus, Mr. Cohen then stated that he did not have a full set of computer printouts nor did Mr. Ely. According to Mr. Cohen, a full set could only be obtained from Dr. Fairley who, of course, was not then available. Thus, the printouts would likewise not be available for SEPTA's inspection until September 2, 2004.

Plaintiff also refused to produce U.S. Bureau of Justice Statistics upon which Dr. Fairley relied in his report. Exhibit 7 at 5. Instead, Plaintiff directed SEPTA to a website where this information is supposedly available. Id. Presumably, it is Plaintiff's position that SEPTA can guess which data Dr. Fairley specifically relied upon by surfing the web.

With regard to other records that Dr. Fairley created in performing his analysis, these too would have to wait until September 2, 2004 to be produced. Exhibit 7 at 6-8 and cover letter. Of course, no reasonable explanation was provided as to why these documents could not be produced earlier - - on the date they were due of before - - or why production was contingent upon the return

5

of Dr. Fairley. Indeed, Plaintiff was on notice on July 27, 2004 that this information was to be produced, yet took no steps to insure timely production. Moreover, this Court directed Plaintiff to produce these records on August 12, 2004.

Finally, Plaintiff has asserted a work product privilege over coding sheets that Dr. Fairley specifically relied upon in connection with his engagement. Exhibit 8 at 3-4. Thus, on page 2 of his report Dr. Fairly stated, in pertinent part, that "random samples from all personnel records [were collected from Triage and Service Plus] and "personnel records were coded on coding forms for each of the 2 providers." See Exhibit 8 at 2.[1] The coding forms and the data contained therein were used by Dr. Fairley in his analysis and in formulating his opinions that he will testify to at trial. Exhibit 8 at 2-3, Charts 5, 6, and 7. Thus, Plaintiff has no legal basis for asserting a work product privilege over documents that he gave to a testifying expert and upon which that expert relied in forming his conclusions.

Plaintiff's continued dilatory and vexatious conduct should not be tolerated by this Court. It is clear that Plaintiff has no good reason for withholding this information any longer or for blocking SEPTA from taking the deposition of Dr. Fairley. Plaintiff's s weak excuses concerning Dr. Fairley's availability and the availability of his counsel to complete a deposition that should have been taken weeks ago only underscores Plaintiff's inexplicable conduct.

**III.   ARGUMENT**

---

[1]   Counsel for Plaintiff advised SEPTA that the coding forms contained information that was obtained directly from personnel files of individuals who applied for employment as paratransit drivers with Triage and Service Plus. This information presumably includes the race of the applicant, whether the individual was hired, whether the individual had a criminal conviction, and whether the individual was denied employment for reasons other than a criminal record.

### A.   THE CODING FORMS ARE NOT WORK PRODUCT.

On August 12, 2004, SEPTA raised the issue of whether the coding forms relied upon by Dr. Fairley were subject to the attorney work product doctrine during the telephone conference conducted by this Court. At that time, SEPTA cited case law showing that documents considered by an expert, whether or nor relied upon by the expert, could not be withheld from production because of an assertion of a work product privilege. See e.g., Vitalo v. Cabot Corporation, 212 FRD 478, 479 (E.D.Pa. 2002); Caruso v. the Coleman Company, 1994 WL 719759 (E.D.Pa. 1994); see also Corrigan v. Methodist Hospital, 158 FRD 54, 58 (E.D.Pa. 1994) (ordering production of all documents upon which plaintiff's expert relied in forming their conclusions). At that time, this Court warned counsel that if it objects to the production of any documents, he better have a good reason for doing so. SEPTA submits that Plaintiff has no good reason for refusing to produce these records and his argument that the coding forms contain core mental impressions of counsel is so absurd as to be frivolous.[2] Indeed, as explained above, counsel merely recorded information that he took from

---

[2]   If, in fact, the coding forms do contain core work product, Plaintiff should have produced the forms with the so-called mental impressions of counsel being redacted. This was the approach taken by the Court in Bogosian v. Gulf Oil Corporation, 738 F.2d 587, 595 (3d Cir. 1984). There, the Court noted where the same document contains both facts and legal theories of the attorney, it was necessary to redact the legal theories so that a full disclosure is made of the facts presented to the expert. Id. It should be emphasized, however, that Bogosian was decided long before the 1993 Amendments to Rule 26 of the Federal Rules of Civil Procedure which now vitiates any claim "of attorney work product with respect to any information considered by a party's expert, whether or not relied upon by that expert." Vitalo v. Cabot Corp., 212 FRD 478, 479 (E.D.Pa. 2002). Indeed, as the Caruso Court explained the Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2) of the Federal Rules of Civil Procedure made clear "the obligation to disclose the data and other information considered by the expert, including any exhibits or charts that summarize or support the expert's opinions should defeat any assertion that privilege or work product protection bar inquiry into materials furnished by the party for consideration by the expert." Id. at *1 (internal quotations omitted) (emphasis added).

personnel files on the coding sheets which formed, in part, the factual basis for Dr. Fairley's conclusions. How or in what manner this constitutes work product cannot be rationally explained.

This Court is not alone in holding that a party cannot withhold production of documents that were considered by a testifying expert on the basis of a work product objection. Thus, for example, in <u>Manufacturing Administration v. ICT Group</u>, 212 FRD 110, 115 (E.D.N.Y. 2002), the court stated "the text of Rule 26 mandates disclosure of work product given to a testifying expert." The court there required the plaintiff to produce what it labeled "core attorney work product" which consisted of notes of the expert which were based on conversations with plaintiff's counsel concerning applicable legal principles. Thus, unlike the facts presented here, the <u>ICT</u> case actually involved work product that was required to be produced because it was considered by an expert.

In <u>Karn v. Ingersoll-Rand</u>, 168 FRD 633 (N.D.Ind. 1996), the Court likewise held that documents provided by counsel to a testifying expert must be produced. As that Court noted, "Counsel can easily protect genuine work product by simply not divulging it to the expert." <u>Id</u>. at 641.

Plaintiff's claim of privilege here is so frivolous as to be absurd. First, it is not even genuine work product that Plaintiff seeks to withhold. Second, even if it was work product, it is not entitled to protection from disclosure. Stated simply, Plaintiff should be precluded from using the report of Dr. Fairley and calling him as a witness at trial because he has refused to disclose the facts upon which his expert relied in formulating his opinions.

**B.    SEPTA SHOULD BE AWARDED ITS COSTS FOR HAVING TO FILE THIS MOTION AND PLAINTIFF SHOULD BE PRECLUDED FROM CALLING DR. FAIRLEY AS A WITNESS <u>AT TRIAL.</u>**

Plaintiff's bad faith here is obvious. Since July 27, 2004, Plaintiff has intentionally refused to do that which he is obligated to do by the Federal Rules of Civil Procedure and that which he was ordered to do by this Court during the conference call on August 12, 2004. Indeed, the history cited above compels a finding that Plaintiff has continually refused to cooperate with SEPTA's exhaustive efforts to conduct expert discovery in this case. Finally, Plaintiff has asserted a frivolous objection over documents which clearly must be disclosed. This Court should no longer tolerate this behavior.

Plaintiff should be sanctioned by the Court pursuant to Rule 37(a)(4)(B) which authorizes the court to grant to a party its costs and attorneys' fees incurred in having to bring yet another motion concerning expert discovery. No finding of bad faith is required for such an award; but it is abundant on this record. Indeed, this Court need only refer to the recitation of events summarized above which led to this motion being filed to grant the relief requested by SEPTA.

But that is not enough. During the conference call on August 12, 2004, this Court warned Plaintiff that he would consider precluding Dr. Fairley from being called as a witness at trial if his dilatory conduct continued. Such conduct has continued for no good reason. This Court should also enter an Order in the form attached precluding Dr. Fairley from testifying at trial as well.

### III.    <u>CONCLUSION</u>

For all of the foregoing reasons, SEPTA's Motion for Sanctions should be granted and SEPTA should be awarded its attorneys' fees and costs incurred in having to file this

9

motion. This Court should also preclude Dr. Fairley from being called as a witness at trial.

                                                                  Respectfully submitted,

                                                          **ROBERT J. HAURIN, ESQUIRE**
                                                          **SAUL H. KRENZEL & ASSOCIATES**
                                                          Attorney for Defendant, SEPTA

DATED:  August 27, 2004