IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS EL | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| v. | : | No. 02CV3591 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | JURY TRIAL DEMAND |
| TRANSPORTATION AUTHORITY | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION**

**TO PLAINTIFF'S MOTION FOR SANCTIONS AND IN SUPPORT OF ITS CROSS MOTION FOR SANCTIONS**

Defendant, Southeastern Pennsylvania Transportation Authority (hereafter "SEPTA") submits the within Memorandum of Law in Opposition to Plaintiff's Motion for Discovery Sanctions against SEPTA and in Support of its Cross Motion for Sanctions. For the reasons that follow, Plaintiff's motion should be denied and it is Plaintiff who should be sanctioned for continually delaying these proceedings and for causing SEPTA additional expense in having to respond to yet another frivolous motion.

**I.    INTRODUCTION**

As the deadline for Plaintiff to respond to SEPTA's Amended Motion for Summary Judgment nears, his desperation grows. In his latest effort to avoid the inevitable dismissal of his discrimination claim and other time barred claims, Plaintiff attempts to obtain yet another extension of time and to shift this Court's attention from the issues raised in SEPTA's Amended

Motion for Summary Judgment. But Plaintiff's transparent attempts should be rejected.

Indeed, Plaintiff sinks to new lows by accusing SEPTA and its counsel of withholding evidence. Plaintiff has no facts to support such accusations. To be sure, Plaintiff cannot seem to get his facts straight and this revised motion is only the latest in a long line of misrepresentations made by Plaintiff in this proceeding.

At the outset, it should be emphasized that Plaintiff represented to this Court on October 26, 2004, that SEPTA <u>never</u> identified Vincent Walsh, Esquire or Douglas Carpenter as individuals having knowledge of the facts of this case. This misrepresentation to the Court was brought to the attention of Plaintiff by counsel for SEPTA. Counsel for Plaintiff withdrew that motion at that time to save himself the embarrassment that would have certainly followed. Counsel for SEPTA also advised Mr. Cohen that he had no facts to support his claim that evidence was withheld in this case and that he should not pursue any motion that made these kinds of allegations. Obviously, those words fell on deaf ears because Mr. Cohen's unfounded accusations continue.

Now, Plaintiff claims that he was prejudiced because SEPTA <u>intentionally</u> failed to disclose the identities of two witnesses until after the close of discovery. Of course, Plaintiff provides no explanation for his failure to timely seek a Rule 30(b)(6) deposition of either of these witnesses or to request an extension of the discovery deadline to take additional depositions if he actually believed he needed them. Obviously, SEPTA could not have opposed any such request if Plaintiff had sought to depose any witness first identified on March 22, 2004.

Not to be outdone, Plaintiff then falsely advises this Court that SEPTA failed to produce documents that were attached to the affidavit of Frank Brandis. Of course, Plaintiff has no proof

2

to back up this ridiculous accusation either. Indeed, a review of the relevant responses to Plaintiff's onerous and redundant documents requests reveals that SEPTA directed Plaintiff in June 2003 to obtain records relating to criminal record checks performed to the providers because it is the providers who conduct the checks and make the decisions as to who will be hired and not hired.[1] See Exhibit 1. SEPTA's only role in this process is to ensure that the drivers selected by the providers meet the minimum requirements set for in the paratransit contracts.

Furthermore, the documents about which Plaintiff complains were obtained from third parties in this case and made available to Plaintiff. The facts, which Plaintiff continues to ignore, show also that Plaintiff even supplied his expert witness with some of the very documents about which he now complains.[2]

As we explain more fully below, if Plaintiff was prejudiced at all which SEPTA disputes, it was due to his own lack of diligence and failure to prosecute his claims. It is clear that this latest filing is designed only to buy Plaintiff more time to respond to SEPTA's pending motion for summary judgment and therefore was interposed for an improper purpose.

It should also be emphasized that the evidence adduced in the affidavits of Mr. Walsh, Mr.

---

[1] Moreover, SEPTA does not receive all documentation from the providers. As an example, SEPTA was unaware of Plaintiff's experience with King Paratransit until it was notified that a charge of discrimination had been filed with the EEOC.

[2] The documents were obtained by SEPTA from its on site review of Edens Corporation, Triage and Anderson Travel. As set forth in Mr. Cohen's memo to William Fairley dated June 9, 2004, all of these materials were made available to Plaintiff. Exhibit 2. However, Plaintiff elected not to review any source materials from Anderson, 23 boxes of applications of Edens employees and only randomly selected files for review at Triage. Significantly, in his memo to Dr. Fairley, Mr. Cohen notes also that he received copies of subpoenas that SEPTA served on Anderson and Triage and was aware that an on-site review was taking place at Edens. Id. Thus, copies of all documents that were attached to Mr. Brandis' Affidavit were available for Plaintiff's inspection long before the close of third party discovery.

Carpenter and Mr. Brandis only confirms the other overwhelming evidence that is now before this Court and in the hands of Plaintiff. That evidence demonstrates that King Paratransit was perfectly justified in refusing to hire Plaintiff to transport SEPTA's disabled customers

This litigation must come to an end. It has been pending since June 6, 2002, and Plaintiff should be stopped from further delaying these proceedings. It is time that Plaintiff answered the summary judgment motion instead of making conclusory observations such as those contained in his footnote 7 that SEPTA's policy is not justified by business necessity.

II.     **ARGUMENT**

   A.     **STANDARD FOR DISCOVERY SANCTIONS**

In his revised motion for discovery sanctions, Plaintiff seeks an Order that, among other things, denies SEPTA's Amended Motion for Summary Judgment without consideration of the numerous issues referred to therein including those that have nothing to do with its business necessity defense. This should come as no surprise since Plaintiff has been putting off the inevitable dismissal of his claims for almost one year when SEPTA initially filed its motion for summary judgment on November 11, 2003. However, Plaintiff cannot explain why SEPTA's meritorious motion should be denied or how he may have been prejudiced by the inclusion of additional evidence that refutes his baseless claims.[3]

In short, this Court should not entertain such an outrageous request on this record.

---

[3]     It is amazing that in the face of this overwhelming evidence, Plaintiff continues to represent to this Court that "Plaintiff's claims are based on an illegal policy SEPTA imposed on its paratransit providers that required <u>them to reject any applicant with a past criminal conviction and terminate any employee with a past criminal conviction</u> . . . ." Plaintiff's Memo at 1. (emphasis added) Even Plaintiff's expert testified that there were certain crimes that did not disqualify a candidate for a paratransit driving position in SEPTA service. <u>See</u> Exhibit 3. According to Dr. Fairley, he obtained this information from Mr. Cohen and Mr. Ely. <u>Id</u>.

4

Indeed, this Court should consider the factors considered by courts in determining whether to enter a default judgment for discovery abuses in deciding whether to deny SEPTA's pending motion:

1. the extent of the party's personal responsibility;

2. prejudice to the adverse party caused by the failure to respond to discovery;

3. a history of dilatoriness;

4. bad faith on the part of the attorney or party;

5. the effectiveness of other available sanctions; and

6. whether the claim or defense asserted is meritoriness

<u>Clarke v. Whitney</u> 169 FRD 623, 626 (E.D.Pa. 1996) (citing <u>Poulis v. State Farm Fire and Casualty</u>, 747 F.3d 863, 868 (3d Cir. 1984)). None of those factors weigh in favor of denying SEPTA's meritorious motion for summary judgment and no sanction against SEPTA is warranted.

Alternatively, Plaintiff requests that the evidence at issue here be excluded which is likewise an extreme sanction. <u>Gibson by Gibson v National RR Corp.</u>, 176 FRD 190, 192 (E.D.Pa. 1997). Indeed, this Court has stated that such an extreme sanction "is not normally imposed absent a showing of willful or flagrant violation of court orders." <u>Id</u>.

Here, there has been no violation of a court order, no bad faith on the part of SEPTA or its attorneys, no history of dilatoriness on the part of SEPTA (it is Plaintiff who is dilatory), SEPTA's defenses including business necessity, Plaintiff's failure to timely his exhaust administrative remedies, the applicable statutes of limitations, SEPTA's immunity from suit under Criminal Record Information Act and Plaintiff's inability to meet his prima facie case are

meritorious defenses. Most important, Plaintiff cannot possibly demonstrate that he has been prejudiced as a result of any conduct by SEPTA or its attorneys in this case.

### B. AFFIDAVIT OF VINCENT J. WALSH, JR., ESQUIRE.

#### 1. Mr. Walsh Was Not Identified Late.

In his motion for sanctions, Plaintiff complains that Mr. Walsh was identified late by SEPTA as someone having knowledge of the facts of this case and, as a result, he suffered some unexplained prejudice. Apparently, Plaintiff claims that SEPTA intentionally withheld Mr. Walsh's identification to gain an unfair advantage in this litigation. Plaintiff's Memo at 16. But even Plaintiff's tortured recitation of the record in this case falls short of showing any bad faith here.

Moreover, completely absent from Plaintiff's filing is any explanation for Plaintiff's failure to avail himself of an opportunity to request a 30(b)(6) deposition of the person who **originally drafted** the driver requirements for paratransit driver applicants after the incidents in August 1994. Similarly, Plaintiff provides no explanation for his failure to request an extension of the discovery deadline to conduct such a deposition. Had he followed either course, Plaintiff would have the deposition that he now claims is so vital to his case.

To begin to understand the frivolity of Plaintiff's argument, it is necessary to recite some of the facts as they actually transpired. First, Plaintiff suggests that SEPTA should have identified Vincent Walsh as the person who was "most knowledgeable about paratransit policies" at SEPTA. Plaintiff's Memo at 2, footnote 1. Mr. Walsh is certainly not that person. Indeed, Mr. Walsh's only role was penning the policy that is at issue in this case over 10 years ago. The policy was implemented after two incidents in 1994 that are well documented in this case and

supported by other evidence now before this Court. Furthermore, SEPTA identified the person most knowledgeable in its response to Plaintiff's interrogatory and Plaintiff never requested supplementation or moved to compel any further response. See Exhibit 4 at Question No. 6. It should also be noted that the individual there identified, Frank Brandis, was deposed two times in this case.

As for the Merits Interrogatories, Plaintiff also misleads by inferring that Mr. Walsh's name was intentionally withheld. The history of the Merits Interrogatories confirms that this is not the case. Plaintiff served his Merits Interrogatories on November 20, 2003. On November 25, 2003, SEPTA advised Plaintiff that he had no intention of responding to the Merits Interrogatories to the extent that they exceeded the number permitted by Rule 33(a) of the Federal Rules of Civil Procedure. See Exhibit 5. On December 22, 2003, SEPTA answered the first nine interrogatories which were contained within the first five numbered requests based on the information that it had available at the time. See Exhibit 6. With regard to Merits Interrogatory No. 2, SEPTA identified 21 persons who had knowledge of the policy. Id. [4]

On January 13, 2004, this Court granted Plaintiff's motion for leave to propound more than 25 interrogatories. SEPTA then timely answered and objected to the remaining merits interrogatories on February 17, 2004 in accordance with Rule 34(b) of the Federal Rules of Civil Procedure. At that time, SEPTA stated that various individuals in SEPTA's purchasing and legal

---

[4]    Plaintiff also states that SEPTA did not identify Mr. Walsh in response to Merits Interrogatory No. 6 which is correct. SEPTA did not identify anyone in response to this interrogatory because SEPTA never barred paratransit providers from hiring anyone. Plaintiff need only to refer to deposition transcripts of numerous witnesses that he deposed in this case that demonstrate that SEPTA's concern related only to ensuring that paratransit drivers in SEPTA service met the minimum requirements set forth in the paratransit contracts.

7

departments employed there from 1994 to the present also had knowledge of SEPTA's criminal conviction policy. See Exhibit 7 at Response 10. [5]

On March 4, 2004, Plaintiff requested additional supplementary responses including the identification of all individuals in the legal department who had knowledge of issues related to this case. Plaintiff's Motion at Exhibit D. Furthermore, Plaintiff agreed that SEPTA's responses to his request for supplementation could be served on or before March 19, 2004. See Exhibit 9. At that time, Plaintiff did not request an agreement to extend the discovery deadline which was scheduled to expire four days earlier. SEPTA was admittedly one business day late with its responses to Plaintiff's request for supplementation to the Merits Interrogatories, but it identified everyone in the Legal Department who had any knowledge of the claims and defenses asserted in this case including Vincent Walsh, Esquire – whose involvement in this case was limited to drafting the initial driver requirements in 1994.

Thus, contrary to Plaintiff's representation to this Court, SEPTA did not withhold information. Indeed, no decision was made by SEPTA to include in its Amended Motion for Summary Judgment an affidavit from Mr. Walsh until days before the motion was filed and after the entire record was reviewed. That record includes thousands of pages of documents, 16 deposition transcripts, 4 expert reports and other written discovery. In short, it was decided in October 2004, that an affidavit from Mr. Walsh was needed to place the general minimums in

---

[5] Robin Lewis, Esquire an attorney in SEPTA's legal department was identified as someone who had knowledge of the paratransit contracts in February 2004. See Exhibit 7. Plaintiff did not seek to depose Ms. Lewis until almost two months after the discovery deadline expired. See Exhibit 8.

context and to testify as to the reasons as they existed in 1994 for their revisions. In this regard, it should be recalled that Mr. Walsh did not provide an affidavit in support of SEPTA's original motion which has been in Plaintiff's hands now for almost one year. On this record, it is simply preposterous for Plaintiff to claim prejudice.[6]

It must also be emphasized again that Plaintiff made no effort to take a Rule 30(b)(6) deposition of the author of the policy. In addition, Plaintiff could have requested that the discovery deadline be extended if he actually believed that he needed to depose a SEPTA lawyer in this case. Plaintiff's failure to seek the deposition of Robin Lewis, Esquire until May 3, 2004 speaks volumes about his claimed need for such a deposition. See Exhibit 8. In short, any prejudice that Plaintiff has suffered is due to his own neglect in prosecuting his claims.

---

[6] For reasons unknown, Plaintiff seems also to suggest that Mr. Walsh should have been identified in Krajewski Document Request Nos. 8 and 22. Plaintiff's Memo at footnote 1. This contention is untenable. First, all relevant documents in response to these requests were produced long ago and SEPTA has no documents that would have identified Mr. Walsh's involvement in this matter in 1994. Furthermore, the identification of potential witnesses is not contemplated by Rule 34 of the Federal Rules of Civil Procedure.

### 2. **Plaintiff Was Not Prejudiced**

Relying on the weakest of reeds, Plaintiff claims that "he has suffered prejudice" because he did not have an opportunity to depose Mr. Walsh. Plaintiff's Memo at 4. Characteristically, Plaintiff never explains how he was prejudiced. This is not surprising because the Affidavit of Mr. Walsh largely confirms the other overwhelming evidence in this case which SEPTA has submitted in support of its affirmative defense that the conviction policy is supported by business necessity. Indeed, Plaintiff deposed numerous witnesses and received numerous other documents produced by SEPTA and third parties that establish the following:

1. The conviction policy was implemented in 1994 after the incidents involving Michael Graham and Michael Donaldson. SEPTA's Memorandum of Law in Support of its Amended Motion for Summary Judgment, Statement of Undisputed Facts at ¶¶ 9-14 (hereafter "Statement of Undisputed Facts").

2. Prior to the incidents referred to above, the paratransit providers were not required to conduct criminal record checks of driver applicants. Statement of Undisputed Facts at ¶¶ 13-14.

3. Following the incidents referred to above, the public demanded that SEPTA take measures to make its paratransit program safer. Statement of Undisputed Facts at ¶ 11.

4. The reasons for the criminal conviction policy's implementation was a concern for the safety of the disabled public who use SEPTA paratransit. Statement of Undisputed Facts at ¶¶ 5,13.

5. The policy also required that individuals with more recent convictions for property related and other crimes be denied the opportunity to drive in SEPTA paratransit service due to

10

the job functions performed by paratransit drivers. Statement of Undisputed Facts at ¶14.

In short, the only facts added by the Affidavit of Mr. Walsh were his identification as the author of the conviction policy and his good faith belief that the policy complied with applicable laws. See Walsh Affidavit at ¶¶ 12, 16-17. SEPTA's belief that the policy was necessary for the protection of the disabled was voiced by numerous other witnesses as well. Statement of Undisputed Facts at ¶ 25.

Thus, Mr. Walsh's Affidavit merely places the policy in context. It certainly should not have resulted in any surprise to Plaintiff given the other overwhelming evidence that supports SEPTA's position that its implementation and enforcement of the criminal conviction policy is supported by business necessity. Indeed, this Court need only consider the reports of Dr. Sobsey and Dr. Blumstein for which Plaintiff apparently has no answer to conclude that SEPTA has a very compelling reason for its policy.

In any event, Mr. Walsh's or SEPTA's belief as to whether the policy complied with Title VII goes only to the issue of intentional discrimination, not to whether the policy is supported by business necessity. That question will be decided by this Court once Plaintiff is directed to file his response to SEPTA's pending motion.

Stated simply, Plaintiff has no right to the relief requested in his motion. He has not shown that SEPTA withheld evidence. He has not shown that SEPTA violated any Court Order. He has not shown that SEPTA or its attorney acted in bad faith. Instead, Plaintiff has shown only that he will go to any lengths to save his baseless claims including wasting this Court's time with

yet another motion that lacks a factual and legal basis.[7] Plaintiff's motion for discovery sanctions should be denied.

### C. AFFIDAVIT OF DOUGLAS CARPENTER

Plaintiff's next contention of prejudice involves the affidavit of Douglas Carpenter who is employed by SEPTA as a recruiter. In sum, Mr. Carpenter testified that he screens for hire SEPTA bus driver applicants and that SEPTA does not hire violent felons like Plaintiff. The reason that SEPTA excludes violent offenders for consideration for employment as bus drivers is that the incumbents have contact with the public. Only counsel for Plaintiff could claim surprise by this revelation.

Like the affidavit of Mr. Walsh, Plaintiff states that SEPTA intentionally delayed identifying Mr. Carpenter as a potential witness and that he has somehow been prejudiced by SEPTA's reliance on Mr. Carpenter's affidavit in support of its pending motion for summary judgment. But a review of the facts reveals that Plaintiff is wrong on both counts.

---

[7]    SEPTA refers the Court to its Order dated May 26, 2004 (Docket No. 111) in which Plaintiff's motion to compel was denied because Plaintiff attempted to renege on an agreement between counsel for the parties that was approved by this Court on February 26, 2004 (Docket No. 92). The parties' stipulation clearly extended the discovery deadline for taking third party discovery only. Notwithstanding this agreement, Plaintiff continued to serve untimely discovery on SEPTA.

This kind of conduct is also characteristic of the way counsel for Plaintiff misleads to gain an advantage. To be sure, in his memo in support of his motion for sanctions, Plaintiff also attempts to deceive this Court by claiming that SEPTA agreed to produce criminal records for 3,000 bus drivers. Plaintiff's Memo at 7, footnote 3. In reality, SEPTA agreed to produce criminal records for the approximately 800 bus drivers that it hired on or after July 1, 1999 and are still employed by Plaintiff. SEPTA has searched its files and produced all such documents that could be located. Evidence of this agreement between counsel is attached hereto as Exhibit 10.

Throughout this proceeding, SEPTA has, in good faith, taken the position that its internal policy for screening applicants for hire had no relevance to this proceeding. As a result, it objected to Merits Interrogatory No. 5 which sought the identification of individuals with knowledge of SEPTA's internal policy. See Exhibit 10. However, on February 26, 2004, this Court entered an Order directing SEPTA to produce records related to its hiring policy, SEPTA Policy Instruction 6.29.1. In light of this ruling, SEPTA concluded that its prior objection to the interrogatory requesting the identification of individuals with knowledge of the policy was no longer valid. As a result, Mr. Carpenter and others having knowledge of this policy were identified on March 22, 2004, 1 business day after the extension of time to respond to this interrogatory pursuant to an agreement of the parties. See Plaintiff's Motion at Exhibit D and Exhibit 9 attached hereto.

Thus, Plaintiff's claim that SEPTA intentionally withheld this information is preposterous and it is Plaintiff who should be sanctioned for filing this motion with this Court. Again, Plaintiff could have certainly requested a Rule 30(b)(6) deposition of an individual who had knowledge of SEPTA's internal policy, but chose not to do so. It should also be recalled that Plaintiff did not seek to extend the discovery deadline for the purpose of conducting such a deposition, nor did he take any action with regard to this issue until he belatedly tried to take the deposition of Jacob Aufschauer on May 3, 2004. See Exhibit 11. Like Mr. Carpenter, Mr. Aufschauer has knowledge of SEPTA's hiring polices and was also identified by SEPTA on March 22, 2004. Plaintiff's Motion at Exhibit D.

More important, there is no prejudice here. Indeed, as SEPTA has shown in its Amended Motion for Summary Judgment, the job of driving a bus for SEPTA is simply not comparable to

13

driving a paratransit van for reasons obvious to everyone but Plaintiff. Statement of Undisputed Facts at ¶¶ 5, 8, 70-73. SEPTA also submitted other additional evidence that is merely confirmed by the Affidavit of Douglas Carpenter showing that SEPTA does not hire violent felons like Plaintiff. Statement of Undisputed Facts at ¶¶ 68-69. To be sure, SEPTA produced in this litigation records related to some 800 bus drivers hired by SEPTA in the last 5 years and not one had a conviction that would have resulted in being disqualified from consideration as paratransit driver in SEPTA service under the policy at issue here. SEPTA's Amended Motion for Summary Judgment at Exhibit W. Even now Plaintiff claims that documents related to bus drivers employed by SEPTA are being withheld from production despite making an agreement with SEPTA on this issue on July 28, 2004. See supra, note 7 at 11. Not surprisingly, Plaintiff has no answer for these facts.

There is no reason for this Court to sanction SEPTA based on the Carpenter Affidavit either. Neither SEPTA nor its counsel was involved in any wrongdoing with respect to the identification of Mr. Carpenter. The motion should be denied.

### D. AFFIDAVIT OF FRANK BRANDIS

Plaintiff's final argument for discovery sanctions is that involving the Second Affidavit of Frank Brandis. According to Plaintiff, he was surprised to learn that Mr. Brandis approved for hire certain individuals who have criminal records. How Plaintiff could possibly be surprised by this testimony and the inclusion of the attached documents is puzzling. Indeed, witness after witness testified in depositions that SEPTA does not bar the hire of individuals with any criminal conviction as a paratransit driver. Statement of Undisputed Facts at ¶¶ 15, 21-24. Each of the numerous contracts that were produced in this case establish guidelines which provide that

14

individuals with certain convictions (including some felonies) could be used by providers as paratransit drivers in SEPTA service. SEPTA even produced a matrix that it sent to paratransit drivers which provides a crime by crime analysis of whether an individual can be used by a provider to transport SEPTA's disabled customers. Furthermore, Plaintiff's expert, Dr. Fairley, testified that an individual who was convicted of certain crimes could work as a paratransit driver in SEPTA service. See Exhibit 3. Dr. Fairley also testified that he received this information from Mr. Cohen and Mr. Ely. Id. Thus, Plaintiff's claim of surprise is nonsensical.

Then, without citation to any authority, Plaintiff argues that SEPTA has an obligation to produce records that it obtained from the paratransit providers in this case. According to Mr. Cohen, this is so because he believes that "SEPTA undoubtedly received and possessed them during the course of this litigation." No factual basis exists to support this baseless contention either, and the record shows that Plaintiff was directed to the providers for this information on June 2, 2003. See Exhibit 1.

The fact of the matter is that SEPTA obtained the records from conducting on-site reviews of paratransit applicant files and were not withheld by SEPTA. These documents were made available to Plaintiff as well and Plaintiff is in possession of some of these records already. Indeed, SEPTA has identified 10 employees whose criminal records were attached as exhibits to the Second Brandis Affidavit that were used by Dr. Fairley in connection with his suspect analysis. They are: Joseph Bell, Glenn Butler, Lamonte Campbell, Anthony Chandler, Kathleen Dennis, Frank Edmonds, Alfonso Garvin, Hilton Peele, Edward Perry and Kelvin Washington. Not surprisingly, despite documentation showing these individuals were hired by Triage, Dr. Fairley included these applicants in his count of individuals who were denied employment because of a

criminal conviction.

Mr. Cohen, moreover, stated that Plaintiff chose not to pursue other records that SEPTA obtained from Edens and Triage despite being provided access to these records.  See Exhibit 2.  SEPTA also served subpoenas on Plaintiff regarding these documents and offered to provide a copy of the documents about which he now complains.  See Exhibit 12.  Finally, in Plaintiff's responses to SEPTA's expert discovery requests regarding documents obtained from the providers, Plaintiff states that "the parties agreed in writing that their reviews of these records would proceed independently, that the parties would be free to review and/or copy the subject files in whatever way they saw fit, and that <u>neither side had any obligation to share the results of their reviews with opposing counsel</u>."  (emphasis added).  See Exhibit 13.  In short, Plaintiff knowingly decided that he did not need the information that he now claims that SEPTA intentionally withheld because of some unexplained prejudice.

Moreover, Plaintiff had the opportunity to depose Mr. Brandis.  At that time, Mr. Brandis testified as to the manner in which the criminal conviction policy is enforced and confirmed that the policy does not act as a bar to individuals who have a conviction of any crime.  Statement of Undisputed Facts at ¶¶ 21-22.  Other witnesses who work for the paratransit providers confirmed that they hired individuals with criminal records as drivers in SEPTA service too.  Statement of Undisputed Facts at ¶¶ 21-24.  Thus, Plaintiff's claim of surprise and/or prejudice finds no support in this record.  The records attached to the Second Brandis Affidavit only provide documentary confirmation of Mr. Brandis' testimony, the testimony of several other witnesses in this

16

proceeding and of other documents that are in Plaintiff's hands. [8]

Finally, in its responses to Plaintiff's discovery requests that are identified in this section of his brief, SEPTA specifically advised Plaintiff that it would produce a list of individuals who were removed from service by providers for having a substandard criminal history and that all other documents should be obtained directly from the providers. See Exhibit 1. Thus, Plaintiff was on notice on June 2, 2003 to obtain other records directly from the providers. Plaintiff never moved to compel SEPTA to produce other documents that might be responsive to these requests. Indeed, Plaintiff's only concern was that records related to individuals denied employment be produced which is exactly what he received from SEPTA.

The bottom line is that Plaintiff had 2 years to conduct on-site reviews at Triage, Edens, Anderson and all other providers. His failure to avail himself of that opportunity is not the fault of SEPTA, and he should not now be heard to complain about documents that were used by SEPTA in support of its Amended Motion for Summary Judgment. This is particularly true in this case because Plaintiff already possesses some of the documents attached to the Brandis affidavit that were apparently obtained from his own on-site reviews.

On these facts, only one conclusion can be reached. Plaintiff turned a blind eye to overwhelming evidence that was produced in this litigation which shows that the conviction policy was not an absolute bar to being employed as a paratransit driver in SEPTA service. This evidence closes the door on Plaintiff's argument that the conviction policy is unnecessarily overbroad.

---

[8]     For example, Community Transit of Delaware County produced records showing that it hired some 20 individuals with criminal records as paratransit drivers.

Having failed to show either that SEPTA intentionally withheld evidence or that it violated any Court Order, Plaintiff's motion for discovery sanctions against SEPTA should be denied.

### D. SEPTA SHOULD BE AWARDED ITS COSTS AND FEES FOR HAVING TO RESPOND TO THIS MOTION.

Throughout his motion, Plaintiff accuses SEPTA and its counsel of intentional wrongdoing. Plaintiff's accusations lack any factual basis and he knows it. This kind of inexplicable conduct should not be countenanced by this Court.

Thus, in Plaintiff's brief, he states that the law firm, Saul H. Krenzel & Associates "has a history of discovery abuse" and that this Court has "entered two adverse, case ending, rulings against Mr. Krenzel in the last 10 years for failure to comply with discovery rulings." Plaintiff's Memo at 11-12 and Footnote 7. In support of this blatant misrepresentation, Plaintiff refers the Court to two cases, the most recent of which was decided 8 years ago.

In Clarke v. Whitney, 169 FRD 623 (E.D.Pa. 1996) (Joyner, J.), this Court entered a default judgment against the defendants because of the party's failure to comply with discovery orders. Had Mr. Cohen actually read this case or done some investigation before accusing Mr. Krenzel of wrongdoing, he would have learned that Mr. Krenzel had nothing to do with the issues regarding violations of discovery orders. To the contrary, this Court goes to great lengths describing the actions that Mr. Krenzel undertook to convince his client to comply with Orders of the Court. Significantly, this Court notes also that the defendant even disconnected her phone and refused to take Mr. Krenzel's phone calls regarding the need for her to appear for a deposition. 169 FRD at 625. "In all, Krenzel has sent in excess of ten (10) letters to Whitney from September 1996 to the present regarding her refusal to cooperate in the defense of Plaintiff's

18

claims." Id. Finally, on the eve of trial, this Court granted Mr. Krenzel's petition to withdraw as counsel. See Exhibit 14 at Docket #51. In short, this case stands for the proposition directly opposite to that advocated by counsel for Plaintiff which confirms his bad faith here.

ATX v. U.S. Wats, 1994 WL 698057 (E.D.Pa. 1994), likewise involved no sanction directed at Mr. Krenzel. Instead, this Court stated that it was the plaintiffs who "are entirely responsible for the non-compliance with" discovery orders. Moreover, the case indicates that the documents sought to be produced were not available. 1994 WL 698057 *2. There is no mention of Mr. Krenzel anywhere in this case and Plaintiff's reliance on this case as justification for his blatant misrepresentations to this Court is likewise inexcusable.

Mr. Cohen's failure to even read the cases upon which he relies is characteristic of the manner in which he and Mr. Ely have conducted themselves throughout this litigation. Indeed, two months ago counsel for SEPTA directed correspondence to Mr. Ely stating that he found the continued accusations of wrongdoing to be distasteful and unprofessional. See Exhibit 15. But counsel's conduct continues to this day.

Rule 37(a)(4)(B) authorizes the court to grant to a party who opposes a discovery motion his costs and attorneys' fees incurred in responding to a motion to compel that is denied. No finding of bad faith is required for such an award; but it is abundant on this record. Indeed, Plaintiff has no factual or legal basis to support his motion for sanctions against SEPTA. Counsel's appalling conduct in accusing this firm and SEPTA of wrongdoing further warrants the imposition of sanctions. Finally, SEPTA has been put to great expense in having to review 2 years' worth of pleadings, discovery and correspondence to reply to this motion. For all of these reasons, Plaintiff should be required to reimburse SEPTA for its costs and fees that it incurred in

having to respond here.

## IV.   CONCLUSION

For all of the of the foregoing reasons, Plaintiff's motion should be denied and SEPTA should be awarded its costs and fess for having to respond to this motion.

                                            Respectfully submitted,

                                            _____
                                            **ROBERT J. HAURIN, ESQUIRE**
                                            **SAUL H. KRENZEL & ASSOCIATES**
                                            Attorney for Defendant, SEPTA

DATED:   November 3, 2004