IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS EL | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 02CV3591 |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : | JURY TRIAL DEMAND |
| Defendant | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**

**EMERGENCY MOTION TO PRECLUDE EVIDENCE**

Defendant, Southeastern Pennsylvania Transportation Authority (hereafter "SEPTA") submits the within Memorandum of Law in Support of its Emergency Motion to Preclude Evidence.

**I.   INTRODUCTION**

This case involves Plaintiff's claim that he was discriminated against on the basis of his race when he was denied employment with King Paratransit Services ("King") because he is a convicted murderer. Plaintiff maintains that King denied him employment based on the application of a conviction policy contained in an agreement between King and SEPTA for the provision of paratransit services.

The criminal conviction policy along with certain other minimum requirements contained in the agreement specified minimum qualifications for paratransit drivers in SEPTA service.

One such minimum qualification provides that no driver could be hired as a paratransit driver in SEPTA service if they had a prior conviction for a violent crime. Plaintiff claims that the application of this policy, which is admittedly facially neutral, has a disparate impact on African Americans and Hispanics.

## II.    STATEMENT OF FACTS

In support of his discrimination claim, and to meet his prima facie case of disparate impact discrimination, Plaintiff submitted a report from Dr. William B. Fairley dated July 15, 2004. See Exhibit 1. Therein, Dr. Fairley concludes that the application of the conviction policy has a disparate impact on African Americans and Hispanics. SEPTA has challenged those findings and a Daubert hearing has been scheduled to consider the admissibility of Dr. Fairley's report and his proposed testimony for March 17, 2005.[1]

In his report Dr. Fairley states that in support of his opinions, he relied upon certain national data sources from the U.S. Bureau of Justice Statistics: Statistical Abstract of the U.S.. See Exhibit 1 at 2. Dr. Fairley also identifies certain data showing conviction statistics from State courts in the U.S. for 1992, 1994, 1996 and 2000, and Federal court crime statistics for 1992, 1994 and 2000. Id. at 5 and 11. The specific tables from the U.S. Bureau of Justice that Dr. Fairley relied upon are delineated
in attachment 2 to his report.

In connection with the report issued by Dr. Fairley, SEPTA requested that Plaintiff produce all documents that he relied upon or reviewed in connection with his report. Plaintiff

---

[1]    The Court has also scheduled Daubert hearings to consider the admissibility of the reports and proposed testimony of two of SEPTA's expert witnesses, Dr. Richard Sobsey and Dr. David Griffin, for March 15, 2005 and March 17, 2005, respectively.

produced thousands of pages of documents in response to this request including over 10,000 pages of data involving crime. As an example, Plaintiff produced the entire SourceBook of Criminal Justice Statistics for the years 1994-2000 and 2002. Each SourceBook contains hundreds of pages of information involving rates of criminal activity, arrest rates, conviction rates, recidivism, parole issues, rates at which criminals are detained in prison, types of crimes and other information. The vast majority of this material was obviously not identified in Dr. Fairley's report nor does it have relevance to this proceeding. However, Plaintiff has refused to identify specifically the information contained in these documents that it will rely upon in the upcoming <u>Daubert</u> hearings. Instead, Plaintiff has taken the position that it has fulfilled its obligations by producing over 10,000 pages of records, largely consisting of irrelevant and extraneous information.

In a recent discussion between counsel, counsel for Plaintiff stated that Plaintiff would rely on certain local, state and national crime statistics to meet his burden of proof. This conversation was memorialized in a letter from SEPTA to Plaintiff dated February 17, 2005. <u>See</u> Exhibit 2. At that time, SEPTA requested that the specific statistics to which Plaintiff referred be produced or, it previously produced, identified. <u>Id</u>. SEPTA also followed up on this initial request. <u>See</u> Exhibit 3. Plaintiff responded each time by stating that all relevant information was produced. <u>Id</u>.

Then, on March 2, 2005, SEPTA again requested identification of the information that Plaintiff would rely on in advance of the <u>Daubert</u> hearings which are scheduled on March 15, 2005 and March 17, 2005. Plaintiff refused again to provide this information. Indeed, on March 3, 2005, Plaintiff stated in a voicemail message that he was taking the position that discovery was

3

closed and he would not produce any records or identify the specific crime statistics to which he referred on February 16, 2005. Instead, Plaintiff again referred SEPTA to the production of documents referred to above.

### III.  ARGUMENT

Simply stated, Plaintiff should be precluded from offering into evidence at the <u>Daubert</u> hearings or at trial any crime statistics that were not specifically identified in the report of Dr. Fairley because of the severe prejudice that would be visited on SEPTA if Plaintiff were permitted to rely on other evidence. Indeed, it is not possible for SEPTA to adequately prepare for the upcoming <u>Daubert</u> hearings unless Plaintiff specifies the information upon which he will rely at these hearings.

Furthermore, Plaintiff's conduct in refusing to identify this information is outrageous. Indeed, Plaintiff cannot possibly explain this conduct. Apparently, Plaintiff would have SEPTA parse through over 10,000 pages of documents that were produced in connection with Dr. Fairley's report and make an educated guess as to what information might be offered at the <u>Daubert</u> hearings. But these kinds of tactics have no place in this proceeding and should not be tolerated by this Court. Plaintiff should be precluded from offering any crime statistics not specifically identified in the Fairley report into evidence at the upcoming <u>Daubert</u> hearings or at trial.

### III. CONCLUSION

For all of the foregoing reasons, SEPTA respectfully requests that its motion be granted and this Court preclude Plaintiff from offering any evidence involving criminal

statistics other than the specific statistics identified by Dr. Fairley in his report dated July 15, 2005 at the <u>Daubert</u> hearings or at trial.

                              Respectfully submitted,

                              _____

                              **SAUL H. KRENZEL, ESQUIRE**
                              **ROBERT J. HAURIN, ESQUIRE**
                              SAUL H. KRENZEL & ASSOCIATES
                              42 South 15th Street, Suite 800
                              Philadelphia, PA 19102
Dated: March 4, 2005             (215) 977-7230